**EXHIBIT A**

1

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                          SUPERIOR COURT DEPARTMENT
                                        CIVIL ACTION NO. 25CV1311

_____
                                        )
MIRAK CHEVROLET, INC.,                  )
            *Plaintiff,*                )
                                        )
v.                                      )
                                        )
GENERAL MOTORS LLC,                     )
            *Defendant,*                )     **RECEIVED**     5/27/25     tc
and                                     )
                                        )
MATTHEW MCGOVERN,                       )
            *Interested Party/Defendant.* )
_____ )

## COMPLAINT

Mirak Chevrolet, Inc., d/b/a Mirak Chevrolet (hereafter, "Mirak"), by way of this

Complaint, alleges as follows against Defendant General Motors LLC ("GM") and Interested

Party/ Defendant, Matthew McGovern (hereafter, "Mr. McGovern").

## INTRODUCTION

1.      This is an action brought pursuant to M.G.L. c. 93B, which is entitled "Regulation

of Business Practices between Motor Vehicle Manufacturers, Distributors and Dealers"

(hereafter, "Chapter 93B"). Chapter 93B protects Massachusetts motor vehicle dealers from

abusive and coercive practiced by manufacturers and distributors. Chapter 93B expressly

prohibits motor vehicle manufacturers and distributors from engaging in unfair methods of

competition and unfair or deceptive acts or practices.

2.     In addition, Chapter 93B allows an existing motor vehicle dealer to protest the
appointment of a new dealer for the same line make when the proposed location of the new
dealer is within the existing dealer's "relevant market area," as that term is defined in the statute.

3.     The purpose of this section of Chapter 93B is to protect the existing dealer's
significant investment (both monetary and non-monetary investments) in its dealership by
preventing the manufacturer or distributor from appointing to many intra-brand dealers into the
same market.

4.     Plaintiff Mirak has exercised its statutory protest rights and it brings this
Complaint seeking to permanently enjoin GM from establishing new Chevrolet dealership
operations from the proposed location which is within Mirak's relevant market area.

**PARTIES**

5.     Plaintiff Mirak is a domestic corporation organized under Massachusetts law,
with a principal place of business within Middlesex County located at 1125 Massachusetts
Avenue, Arlington, Massachusetts 02476.

6.     Mirak is engaged in the business of selling and offering to sell new Chevrolet
brand vehicles and other used vehicles pursuant its Sales and Service Agreement (hereafter, the
"Dealer Agreement") with GM.

7.     Mirak has been an authorized Chevrolet dealer since 1936.

8.     Upon information and belief, Mirak is one of the oldest continuously operating
Chevrolet dealerships in the Commonwealth of Massachusetts.

9.     Defendant GM is a foreign limited liability company organized under Delaware
law and registered to do business within the Commonwealth of Massachusetts.

2

10.     Defendant GM has a principal place of business at 300 Renaissance Center, Detroit, Michigan, 48265, and it does business in the Commonwealth of Massachusetts and within Middlesex County, Massachusetts.

11.     GM is a motor vehicle manufacturer that has an established network of franchised motor vehicle dealers in the Commonwealth of Massachusetts that are authorized to sell and service GM products including, but not limited to, Chevrolet brand vehicles.

12.     Mr. McGovern is a citizen of the Commonwealth of Massachusetts.

13.     Upon information and belief, Mr. McGovern resides in Boston, Massachusetts.

14.     Mr. McGovern has a principal place of business within Middlesex County located at 777 Washington Street, Newton, Massachusetts, 02460.

15.     Mr. McGovern is the "proposed new dealer appointee" in this protest action, as that term is used in M.G.L. c. 93B, § 6(f) (2). As such, he is permitted to participate in this action as a party pursuant to the parameters set forth in M.G.L. c. 93B, § 6(f) (2).

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction pursuant to M.G.L. c. 231A and M.G.L. c. 93B, § 2.

17.     This Court has personal jurisdiction over all parties named in this action because all parties either reside or do business in the Commonwealth of Massachusetts.

18.     Venue in Middlesex County is appropriate pursuant to M.G.L. c. 223, § 1 and M.G.L. c. 93B, § 15(e).

19.     Prior to the initiation of this action, Defendant GM and Mirak met and conferred for the purposes of discussing settlement pursuant to M.G.L. c. 93B, § 15(b).

3

Case 1:25-cv-11756-GAO   Document 1-1   Filed 06/16/25   Page 5 of 142

## FACTUAL ALLEGATIONS

20.     Mirak is an authorized Chevrolet "Dealer" as that term is defined in Chapter 93B,
§ 1.

21.     Defendant GM is a motor vehicle "Manufacturer" as that term is defined in
Chapter 93B, § 1.

22.     Mirak sells and services Chevrolet brand vehicles from its dealership location in
Arlington, Massachusetts, pursuant to its Dealer Agreement with GM.

23.     Mirak has been an authorized Chevrolet dealer for over 90 years.  During that
time, Mirak has made significant and permanent investments to sell and service Chevrolet brand
products.

24.     Mirak is a successful and profitable dealership that currently employees
approximately 107 individuals from its Arlington dealership location.

## GM's NOTICE LETTER TO MIRAK

25.     On February 27, 2025, GM sent Mirak a letter (hereafter, the "Notice Letter")
stating that GM "has made a final decision to approve the establishment of Chevrolet dealership
operations at 34 Bear Hill Road, Waltham, MA 02451" (hereafter, the "Add Point Location").

26.     A copy of the Notice Letter is attached hereto as **Exhibit A**.

27.     The Add Point Location in Waltham is approximately 5.6 miles away (straight
line distance) from all boundaries of Mirak's Chevrolet dealership in Arlington, Massachusetts.

28.     The Add Point Location is within Mirak's relevant market area, or "RMA," as
that term is defined by Chapter 93B, § 1.

29.     The Notice Letter does not identify the name of the dealer who will operate the
proposed new dealership at the Add Point Location.

30.    Upon information and belief, GM sent the Notice Letter with the intention of appointing Matthew McGovern to open the new dealership at the Add Point Location.

31.    In support of the new Add Point Location, GM's Notice Letter improperly relies in part upon comparing Chevrolet's purported brand market share in the metro Boston area to Chevrolet's purported national market share.

32.    GM also improperly relies upon the prior closure of the former Muzi Chevrolet dealership in Needham Heights, Massachusetts, in support of the new Add Point Location in Waltham, Massachusetts.

33.    The Notice Letter fails to demonstrate that GM conducted any reliable analysis of the statutory factors used to establish "good cause" for the appointment of a new dealer as set forth in Chapter 93B, § 6(g) including, but not limited to, any analysis of the retail sales and service business transacted within the relevant market area to be serviced by the newly proposed dealership.

34.    The Notice Letter did not identify what changes, if any, will be made to Mirak's market after the new Chevrolet dealer appointment. For example, the Notice Letter did not identify which census tracts, if any, would be added or removed from Mirak's existing assigned market area after the opening of the new dealership in Waltham, Massachusetts.

35.    However, Mirak's existing market area (as assigned by GM) surrounds (to the west, north and east) the general area in Waltham where the Add Point Location is to be opened.

36.    GM's failure to identify what changes (if any) would occur to Mirak's assigned market area made it purposefully difficult for Mirak to analyze the impact of the proposed new dealer upon Mirak's existing business.

5

37.    Furthermore, GM did not provide Mirak with any market study or other
supporting data to demonstrate that the Add Point Location could sustain a new Chevrolet
dealership without damaging Mirak.

38.    Upon information and belief, GM has failed to undertake a market study to
determine the impact of the Add Point Location on Mirak.

39.    GM's decision to appoint a new Chevrolet dealer at the Add Point Location is not
supported by credible market data.

40.    For example, GM's alleged underperformance in Chevrolet's market share
measurements in the Metro Boston area (as cited by GM in the Notice Letter) is attributable to
factors outside of dealer network control.

41.    The Add Point Location cannot support a new Chevrolet dealership without
negatively impacting the Chevrolet sales and service business of Mirak.

42.    The Notice Letter failed to comply with the statutory requirements of Chapter
93B, § 6, with respect to the appointment of a new dealer by a manufacturer.

43.    For example, GM's Notice Letter failed to show good cause under the statutory
criteria set forth in M.G.L. c. 93B, § 6(g).

44.    GM does not have good cause to establish new Chevrolet dealership operations at
the Add Point Location.

45.    The appointment of a new Chevrolet dealer at the Add Point Location will cause
Mirak irreparable harm and economic damages.

AFSDOCS:302565861.2

## MIRAK'S PROTEST LETTER

46.     On April 9, 2025, Mirak (through its legal counsel) sent GM a letter pursuant to M.G.L. c. 93B, § 6, to protest the establishment of the new Add Point Location (hereafter, the "Protest Letter").

47.     A copy of Mirak's Protest Letter is attached hereto as **Exhibit B**, and is made part of the allegations of this Complaint.

48.     Pursuant to Chapter 93B, §§ 6(a)(1) and 6(d), Mirak has standing to protest GM's establishment of new Chevrolet dealership operation from the proposed Add Point Location because the proposed Add Point Location is within Mirak's RMA.

49.     The Protest Letter lists the specific grounds forming the basis for Mirak's protest based upon the information known to Mirak at the time the Protest Letter was sent, as required by Chapter 93B, § 6(d).

50.     In its Protest Letter, Mirak informed GM that the data relied upon and cited by GM in its Notice Letter does not demonstrate "good cause" to appoint a new Chevrolet dealer at the Add Point Location pursuant to Chapter 93B, § 6.

51.     Local market conditions do not support the addition of a Chevrolet franchise at the Add Point Location.

52.     GM's reliance upon allegedly low Chevrolet brand market share performance in the "metro Boston area" to justify the new add point is misplaced. Any alleged low registration effectiveness in the "metro Boston area" is due to factors not under the control of the local dealer network, and therefore the low registration effectiveness does not provide good case to add a new Chevrolet franchise.

7

53.    The establishment of an additional Chevrolet point is not warranted by economic
and marketing conditions, including future changes.

54.    Mirak is providing adequate competition and convenient customer care for
Chevrolet vehicles owned and operated by residents and persons of business in the relevant
market area to be served by the additional franchise to be operated from the Add Point Location.

55.    In addition, the appointment is not warranted because Mirak and other existing
Chevrolet dealers have been adequately supporting the sale and service of Chevrolet brand
products in the metro Boston market and surrounding area for at least the past three (3) years.

56.    Furthermore, the closing of Muzi Chevrolet in Needham, Massachusetts, does not
provide good cause for the appointment of a new Chevrolet dealership in Waltham,
Massachusetts. Specifically, GM's reliance upon alleged decline in Retail Registration Index
("RRI") within the Needham Heights open point market area is irrelevant to the impact of the
new Add Point Location (which is in Waltham, not Needham Heights).

57.    In addition, GM's contention in its Notice Letter that Mirak and other existing
dealers have failed to take "advantage of the opportunities that exist" in the metro Boston market
is false.

58.    For example, since 2017 through approximately 2023, Mirak invested in
promoting the sale of the Chevrolet Bolt EV (the brand's electric vehicle model). This strategy
made sense considering the demographics in and around the Boston AGSSA.

59.    However, in 2024, Chevrolet made the decision to discontinue sales of the Chevy
Bolt EV. At the time that decision was made, Mirak had over 400 orders for which it had taken
deposits. GM unilaterally cancelled those orders.

8

60.     As a result, Mirak's nationwide Bolt EV sales dropped from a substantial 143 in 2023 to zero in 2024. This negatively impacted Mirak's annual sales and was beyond Mirak's control.

61.     Despite unilaterally cancelling over 400 of Mirak's potential sales of the Bolt EV, GM now improperly cites to Mirak's prior three years of retail sales and service business as a basis in its Notice Letter to appoint a new dealer in the Add Point Location.

62.     The Add Point Location in Waltham cannot sustain a new Chevrolet dealership without impacting and "cannibalizing" upon the business of Mirak.

63.     The appointment of a new Chevrolet dealer at the Add Point Location is not warranted because Mirak and other existing Chevrolet dealerships are providing adequate competition and convenient consumer care for Chevrolet brand products to customers in and around the proposed Add Point Location.

64.     Adding a new dealer to the Add Point Location will create an anti-competitive sales environment in the relevant market area, which in turn will create unfair competition in violation of Chapter 93B.

65.     GM does not have good cause to appoint a new Chevrolet brand dealer at the Add Point Location, and the proposed appointment is arbitrary, in bad faith and/or unconscionable.

## MEET AND CONFER MEETING

66.     Mirak's Protest Letter included an invitation to GM to "meet and confer" pursuant to Chapter 93B, § 15(b), for the purposes of discussing settlement.

67.     On May 9, 2025, Mirak (with legal counsel) and GM (with legal counsel) met and conferred for the purposes of discussing settlement.

68.     To date, Mirak and GM have not settled this dispute.

9

## COUNT I
### VIOLATIONS OF M.G.L . c. 93B, §§ 3(a), 6, and 15(c)
### (Mirak v. GM)

69.     Mirak repeats and realleges the allegations set forth in paragraphs 1 through 68 as if set forth herein.

70.     Mirak is a "motor vehicle dealer" as defined by Chapter 93B, § 1.

71.     GM is a "manufacturer" of new and unused vehicles as defined by Chapter 93B, § 1.

72.     Mr. McGovern, as the proposed new dealer for the Add Point Location, is a necessary party to this dispute pursuant to M.R.C.P. Rule 19 and he has standing to participate in this action pursuant to Chapter 93B, § 6(f)(2).

73.     Chapter 93B, § 3(a) prohibits GM from engaging in "unfair methods of competition and unfair and deceptive acts or practices" against Mirak.

74.     Chapter 93B, § 6(a) states that "it shall be a violation of subsection (a) of section 3 for a manufacturer… without good cause, in bad faith or in an arbitrary or unconscionable manner" to enter into a franchise agreement with a dealer which would permit the new dealership to be opened within the relevant market area of an existing motor vehicle dealer representing the same line make.

75.     All of the boundaries of Mirak's Chevrolet dealership are located in Middlesex County, Massachusetts.

76.     Pursuant to Chapter 93B, § 1, the geographic area of Mirak's "relevant market area" is "the entire land mass encompassed in a circle with a radius of 8 miles from any boundary of the dealership."

77.     The proposed Add Point Location is located within Mirak's relevant market area.

10

78.    Mirak has standing to protest the establishment of new Chevrolet dealership operations at the proposed Add Point Location.

79.    Mirak's written Protest Letter and objection to the establishment of new Chevrolet dealership operations at the Add Point Location was timely because it was served within 45 days after GM's Notice Letter was sent.

80.    Mirak's filing of this protest complaint in Superior Court is timely under Chapter 93B, §6 (e).

81.    Under Chapter 93B, § 6(a) and 6(a)(1), GM cannot appoint a new Chevrolet dealer to operate at the Add Point Location (which is within Mirak's relevant market area) without good cause.

82.    GM also cannot make the appointment of a new Chevrolet dealer to operate at the Add Point Location in bad faith, or in an arbitrary or unconscionable manner.

83.    GM has the burden of establishing "good cause" for the appointment of a new Chevrolet dealer at the Add Point Location under Chapter 93B.

84.    GM does not have good cause to appoint a new Chevrolet dealer to operate at the Add Point Location.

85.    Under Chapter 93B, § 6(a)(1), GM cannot act in an arbitrary or unconscionable manner when appointing a new Chevrolet dealer into Mirak's RMA.

86.    GM has acted in an arbitrary and unconscionable manner when it approved the appointment of a new Chevrolet dealer into Mirak's RMA.

87.    In addition, GM's Notice Letter is not proper notice as required by Chapter 93B, § 6(c).

11

88.     For example, GM has failed to provide Mirak with any specific data to support any "good cause" to support the proposed appointment of a new Chevrolet dealer at the Add Point Location.

89.     Upon information and belief, GM failed to conduct any market studies to determine the impact of the proposed new Chevrolet dealer on the existing dealer network, including Mirak.

90.     GM never shared any market studies with Mirak prior to sending its Notice Letter which would support the appointment of a new Chevrolet dealer at the Add Point Location.

91.     GM did not act in good faith when it approved the appointment of a new Chevrolet dealer to operate at the Add Point Location.

92.     Indeed, in the past, GM (and its predecessor companies) have claimed that a reduction of dealership rooftops would increase sales input for the benefit of the brand. It is now changing course and claiming that adding a new store within Mirak's RMA will increase sales.

93.     As a result of these wrongful acts, GM has violated Chapter 93B, §§ 3(a), 6, and 15.

94.     Under Chapter 93B, § 15(c), Mirak is entitled to reasonable attorneys' fees and costs as a result of GM's bad faith with respect to the new dealership appointment within Mirak's RMA.

95.     Mirak is also entitled to both temporarily and permanently enjoin the appointment of the new proposed Chevrolet within Mirak's RMA.

## COUNT II
## DECLARATORY JUDGMENT PURSUANT TO M.G.L. c. 231A
### (Mirak v. GM and Mr. McGovern)

96.     Mirak repeats and realleges the allegations set forth in paragraphs 1 through 95 as if set forth herein.

97.     Count II is brought by Mirak pursuant to Chapter 231A for a declaratory determination of Mirak's right to permanently enjoin the proposed appointment of Mr. McGovern (or any other proposed dealer) into Mirak's RMA pursuant to Chapter 93B, § 6(e).

98.     Under Chapter 93B, § 6(e), Mirak has standing to protest the appointment of Mr. McGovern (or any other proposed new Chevrolet dealer) in Mirak's RMA.

99.     There exists an actual case and controversy between Mirak, GM and Mr. McGovern.

100.    GM does not have good cause to appoint any new Chevrolet dealer to operate within Mirak's RMA.

101.    Under Chapter 93B, Mirak is entitled to a judgment declaring as follows: (a) that GM acted in violation of Chapter 93B, §§ 3(a), 6, and 15 when it approved the appointment of Mr. McGovern to open a new Chevrolet dealership at a location within Mirak's RMA; (b) that GM acted in bad faith and in an arbitrary or unconscionable manner with respect to the appointment of a new Chevrolet dealer within Mirak's RMA; (c) GM does not have "good cause" to appoint a new Chevrolet dealer within Mirak's RMA; (d) that GM and any proposed dealer (including, but not limited to, Mr. McGovern) are permanently enjoined from appointing and/or operating any new Chevrolet dealership from any point within Mirak's RMA including, but not limited to, the Add Point Location; and (e) Mirak is entitled to its reasonable attorneys' fees and costs associated with this protest action.

13

## COUNT IV
### PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF
### (Mirak v. GM and Mr. McGovern)

102.    Mirak repeats and realleges the allegations set forth in paragraphs 1 through 101 as if set forth herein.

103.    GM's actions described herein against Mirak are in violation of Chapter 93B.

104.    Pursuant to Chapter 93B, §§ 6 and 15, Mirak is entitled to equitable and injunctive relief enjoining GM from appointing a new Chevrolet dealer (including, but not limited to, Mr. McGovern) to operate within Mirak's RMA.

105.    Mirak has a likelihood of success on its claims because, among other reasons: (a) GM does not have "good cause" to support the appointment of a new Chevrolet dealer within Mirak's RMA, as required by Chapter 93B; and (b) GM will not sustain it burden of proof with respect to the statutory criteria set forth in Chapter 93B, § 6(g).

106.    Mirak will suffer irreparable harm and economic damages as a result of GM's wrongful acts.

107.    Mirak's irreparable harm includes, but is not limited to, damage to Mirak's goodwill, violation of its statutory rights to operate a Chevrolet dealership within its RMA without unfair competition, and its ability to retain and attract qualified employees. This irreparable harm threatens the livelihood of Mirak's Chevrolet franchise.

**WHEREFORE**, Mirak respectfully requests that this Honorable Court grant judgment in favor of Mirak on all counts as follows:

A.    As to Count I (violation of M.G.L. c. 93B), this Court finds that GM has violated M.G.L. c. 93B, §§ 3(a), 6, and 15;

14

AFSDOCS:302565861.2

B.      As to Count II (Declaratory Judgment), this Court finds that Mirak is entitled to a

declaration that GM does not have good cause to add Mr. McGovern (or any other a new

Chevrolet dealer) within Mirak's RMA, and that GM acted in bad faith, acted in an arbitrary

and/or unconscionable manner when it made its decision to add a new Chevrolet dealer within

Mirak's RMA;

C.      As to Count III, this Court finds that Mirak is entitled to preliminary and

permanent injunctive relief against GM and Mr. McGovern, thereby prohibiting them from

opening a Chevrolet dealership within Mirak's RMA;

D.      That this Court finds further, pursuant to M.G.L. c. 93B, § 15(c) that the actions

of GM were asserted in bad faith and to award Mirak its reasonable attorneys' fees and costs

related to this action; and

E.      To order and award any other remedies at law which this Court deems just

including, but not limited to, preliminary injunctive relief upon application.

Respectfully submitted,

**PLAINTIFF MIRAK CHEVROLET, INC.,
By its Attorneys,**

*/s/ Sara D. Judge*

Sara D. Judge (BBO #669108)
*sara.judge@afslaw.com*
Paul Marshall Harris (BBO #223500)
*paul.harris@afslaw.com*
Devon C. Bodey (BBO #705146)
*Devon.bodey@afslaw.com*

**ARENTFOX SCHIFF LLP**

Prudential Tower
800 Boylston Street
Boston, MA 02199
Telephone:    617.973.6100
Dated: May 27, 2025            Facsimile:    617.367.2315

15

AFSDOCS:302565861.2

# EXHIBIT A



**FEDERAL EXPRESS: 772369801556**

February 27, 2025

Robert A. Mirak, Dealer Operator
Mirak Chevrolet, Inc.
1125 Massachusetts Ave.
Arlington, MA 02476

Dear Mr. Mirak:

General Motors LLC ("GM") has made a final decision to approve the establishment of Chevrolet dealership operations at 34 Bear Hill Road, Waltham, MA 02451 (the "Location"). Chevrolet dealership operations will not be established at the Location until at least 90 days after you receive this notice.

Based upon information known by GM at the time that this notice is being provided, the specific grounds forming the basis for GM's decision to approve the establishment of Chevrolet dealership operations at the Location are as follows:

1.    There were 15 Chevrolet rooftops in the Metro Boston Chevrolet market in 2008 and there are 10 today. Competing brands such as Ford, Toyota and Honda each have 14 or more dealership rooftops in the metro Boston market.

2.    The 10-year market share high for Chevrolet in the Metro Boston Chevrolet market was 6.4% in 2016. Chevrolet's market share declined to 4.6% in 2021 and remained at 4.6% through September 2024.

3.    For comparison, Chevrolet's national market share continues to grow from 9.1% in 2021 to 10.0% through September 2024.

4.    In 2022, Chevrolet's sales performance in Boston ranked 103rd out of the top 116 metro markets nationally with registration losses exceeding 2,800 and in 2023 Chevrolet's sales performance in Boston ranked 101st out of the top 116 metro markets nationally with registration losses exceeding 3,400 in 2023.

5.    GM does not believe that the existing Chevrolet dealers in the Metro Boston Chevrolet market are taking advantage of the opportunities that exist within the market and that the establishment of a Chevrolet dealership at the Location is warranted by economic and marketing conditions including anticipated future changes.

6.    GM believes that the addition of a Chevrolet dealership at the Location will increase competition and therefore be in the public interest.

7.    Muzi Chevrolet was formerly located in Needham Heights, MA and closed in November 2021. Since Muzi Chevrolet closed, Chevrolet's Retail Registration Index ("RRI") in the Needham Heights open point market area has declined from 77.1 to 60.8 through September 2024.

8.    Mirak Chevrolet is the only existing Chevrolet dealer in the relevant market area to be served by an additional Chevrolet dealership located at the Location. GM believes that the retail sales and service business transacted by Mirak Chevrolet in the three years preceding this notice supports the addition of a new Chevrolet dealership at the Location.

9.    GM does not believe that there is adequate competition and convenient customer care for Chevrolet vehicles in the Metro Boston Chevrolet market and in particular for Chevrolet vehicles owned or operated by residents and persons with places of business in the relevant market area to be served by an additional dealer at the Location.

If Mirak Chevrolet, Inc. objects to the establishment of Chevrolet dealership operations at the Location, any protest should be sent to 30400 Van Dyke Ave., Floor 6, Warren, MI 48093.

This notice is provided pursuant to Mass. Gen. Laws ch. 93B, § 6.

Sincerely,

Natalie A. Taylor
Zone Manager
General Motors LLC

c: Dan Adamcheck, Chevrolet Regional Director
   Dealer Contractual Group

# EXHIBIT B

**FedEx** ®

April 10, 2025

Dear Customer,

The following is the proof-of-delivery for tracking number: 287386143474

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | Residence |
| Signed for by: | Signature not required | Delivery Location: | |
| Service type: | FedEx Standard Overnight | | |
| Special Handling: | Deliver Weekday | | WARREN, MI, |
| | | Delivery date: | Apr 10, 2025 09:22 |

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 287386143474 | Ship Date: | Apr 9, 2025 |
| | | Weight: | 0.5 LB/0.23 KG |

| Recipient: | Shipper: |
|---|---|
| WARREN, MI, US, | Boston, MA, US, |

| Reference | 045921.00006.5691 |
|---|---|

Proof-of-delivery details appear below; however, no signature is available for this FedEx Express shipment because a signature was not required.

Thank you for choosing FedEx

# ArentFox
# Schiff

**ArentFox Schiff LLP**

Prudential Tower
800 Boylston Street
Boston, MA 02199

617.973.6100   **MAIN**
617.367.2315   **FAX**

afslaw.com

**Sara D. Judge**
Partner
617.973.6184   **DIRECT**
Sara.judge@afslaw.com

**Reference Number**
045921.00006

April 9, 2025

**OVERNIGHT DELIVERY**
**FEDERAL EXPRESS**

Ms. Natalie Taylor
Zone Manager
General Motors LLC
30400 Van Dyke Ave., Floor 6
Warren, MI 48093

> Re:   **Mirak Chevrolet, Inc.'s M.G.L. c. 93B, § 6 Protest and**
> **M.G.L. c. 93B, § 15(b) Request for Meet and Confer**

Dear Ms. Taylor:

I am writing on behalf of my client, Mirak Chevrolet, Inc. ("Mirak"), in response to General Motors, LLC's ("GM") February 27, 2025 letter (the "Notice") advising that it has decided to approve the establishment of new Chevrolet dealership operations at 34 Bear Hill Road, Waltham, MA 02451 (the "Location"). In that regard, pursuant to Massachusetts General Laws c. 93B, § 6(d), Mirak is protesting the establishment of a new Chevrolet dealership at the Location for the reasons specified below. Please direct all future correspondence regarding this matter to the undersigned.

As it relates to the protest, GM's Notice is dated February 27, 2025, so Mirak's written notice of protest herein is due on or before April 13, 2025. There is no question that Mirak has timely protested GM's Notice within 45 days thereafter, and Mirak has preserved all protest rights it has pursuant to M.G.L. c. 93B, *et seq.*

As an initial matter, I would like to note that Mirak Chevrolet has been a dealer since the early 1930s. The Mirak family has been a long supporter of GM and Chevrolet and has invested heavily in the Chevrolet brand to perform its obligations under its dealer agreement. Such investments are permanent in nature, as they include real estate and facilities. *See* M.G.L. c. 93B, § 6(g)(3) and (4). Further, there is ample competition in the relevant market area and convenient customer care. *Id.* at § 6(g)(8). For these reasons, among others identified below, Chevrolet lacks good cause to add a franchise at the Location.

Under M.G.L. c. 93B, § 6, GM's Notice was required to list the specific grounds forming the basis for the appointment… based upon information known by the manufacturer at the time the notice is sent. In that regard, GM's Notice identifies limited factors (without supporting data)

AFSDOCS:302136082.1

**Smart In**
**Your World®**



Natalie Taylor
April 9, 2025
Page 2

that GM relies upon to support its position that an additional franchise at the Location is warranted, including: (i) a reduced number of rooftops in the Metro Boston market; (ii) low market share and sales performance at the brand level in the Metro Boston market; (iii) a need for dealers to seize opportunities within the market and for competition; (iv) the closure of a former Chevrolet dealership in Needham Heights, MA; (v) Mirak's retail sales and service business transacted in the three years preceding the Notice; and (vi) GM's belief that there is inadequate competition and a lack of convenient customer care for those located in the relevant market area. Mirak disputes that the factors identified by GM in its Notice support good cause for the new add point. Furthermore, GM's Notice fails to show good cause under the statutory criteria set forth in M.G.L. c. 93B, § 6 (g).

Mirak is protesting the addition of a Chevrolet franchise at the Location, which is within Mirak's relevant market area ("RMA"), *i.e.*, within 8 miles from the boundary of the dealership. M.G.L. c. 93B, § 1(1). GM lacks good cause based on the factors it relies upon to grant or enter into an additional franchise agreement at the Location. Further, the granting or entering into an additional franchise agreement at the Location would be in bad faith or is arbitrary or unconscionable, in violation of Massachusetts law. In that regard, Mirak protests GM's granting or entering into a franchise agreement for Chevrolet dealership operations at the Location because based on local demographic and market conditions, there is strong empirical support that any "underperformance" in Chevrolet's market share measurement is a result of factors outside of dealer network control and will not be remedied by adding a franchise at the Location. M.G.L. c. 93B, § 6 (g)(1). Further, upon review, Mirak has determined that there would be a material, negative impact on it if the additional franchise were put in place at the Location.

To evaluate the proposed add point, Mirak analyzed Chevrolet's brand market share as compared to state average. Then, Mirak evaluated local demographic and market factors to determine if any market share deficit is attributable to factors outside the control of the dealer network and/or GM/Chevrolet. Mirak also evaluated the potential impact on it if a franchise is established at the Location, as well as the difference in the flow-of-trade based on the Location as compared to Mirak's location. Finally, Mirak evaluated the impact GM's discontinuance of the Chevrolet Bolt, and its reduction of Chevrolet dealerships and declining Chevrolet sales nationwide to determine their impact on Chevrolet's market share, particularly in Mirak's RMA. After evaluating these factors, as described in further detail below, Mirak finds that local market conditions do not support the addition of a Chevrolet franchise at the Location, and that the proposed addition of a franchise at the Location will have a material negative impact on the market size and sales of Mirak Chevrolet. As such, Chevrolet does not have good cause to enter into a franchise agreement at the Location, and entering into such an agreement would be in bad faith or arbitrary or unconscionable.

**ArentFox**
**Schiff**

Natalie Taylor
April 9, 2025
Page 3

GM's reliance upon alleged poor market share performance to justify this add point is misplaced. Although initial analysis implies that Chevrolet brand market share is low in the local area, such low registration effectiveness is due to factors not under the control of the local dealer network and/or manufacturer, and therefore the low registration effectiveness does not provide good cause to add a franchise at the Location. Various demographic and market variables provide statistical support for this position. By adjusting registration effectiveness based on such variables, Chevrolet is above 100% in all areas, other than that of the proposed Location. As such, the addition of a Franchise at the Location is not necessary based on such analysis.

Simply stated, the establishment of an additional Chevrolet point is not warranted by economic and marketing conditions within the RMA. This is especially true during the current uncertain market, where consumers are berated with news of proposed tariffs and threats of recession. Any supposed "brand expansion" that GM thinks will arise from an additional point will not offset the harm to the existing dealer network.

GM also points to the fact that there was a dealer formerly at Needham Heights as a basis to support the addition of a franchise at the Location. However, according to M.G.L. c. 93B, § 6(b)(2), GM is prohibited from appointing a successor motor vehicle dealer on these grounds because the Location is more than 2 miles away from Muzi Chevrolet's location, and it has been more than one year since Muzi Chevrolet ceased operations. The closure of Muzi Chevrolet does not provide a basis to add a franchise at the Location.

In addition to these market factors and the cessation of operations at Muzi Chevrolet not providing bases for the add-point, the impact of the proposed franchise on Mirak also supports this conclusion. By analyzing change in brand registrations in the local area (based upon drive distance and S&P segmentation), Mirak has determined that it could see a reduction of approximately 29% resulting from the proposed additional franchise. By employing a gravity model, Mirak has determined that it could see a reduction of approximately 14%. In either event, such a reduction in the size of the market facing Mirak would have a materially adverse impact on Mirak.[1] When translated to estimated lost sales opportunities, Mirak estimates a loss of sales and profit contribution totaling 10% or more, which would cause an even larger reduction in Mirak's net profit. Such a result does not support good cause, but rather, would constitute bad faith and is unconscionable, in direct violation of M.G.L. c. 93B, § 6.

---

[1] We estimate that Mirak's AGSSA will be reduced by approximately 29% based a method very similar to GM's methods. If GM were adding those tracts, it would ideologically assume, under RSI, that Mirak's sales should increase proportionately with the AGSSA increase. However, here, we know from dozens of add point litigations that GM will likely now assert that the proposed add point would not lead to an expectation that Mirak will lose sales. GM has presented and Mirak is aware of no sound basis to expect that the add point would be anything other than materially detrimental to Mirak's sales, profitability, and investment.

AFSDOCS:302136082.1

**ArentFox
Schiff**

In addition to evaluating market factors and the potential impact on Mirak if the proposed franchise were allowed at the Location, Mirak also evaluated other issues that factor into Mirak's performance over the past three years. For one, Chevrolet made the decision to discontinue sales of the Chevy Bolt. At the time that occurred, Mirak had over 400 orders for which it had taken deposits. GM unilaterally cancelled those orders. As a result, Mirak's Nationwide Bolt sales dropped from a substantial 143 in 2023 to 0 in 2024. This is clearly a GM-caused issue, not a Mirak, or dealer network issue. These lost sales would be coupled with losses Mirak would feel by the addition of a franchise at the Location. Such a result is unacceptable to Mirak and a violation of M.G.L. c. 93B.

Beyond discontinuing a popular model vehicle for the RMA and unilaterally cancelling orders for same, GM's reliance on a lack of franchises in Massachusetts as grounds to put a new franchise at the Location is not credible . It was GM that took it upon itself in 2008/2009 to reduce the number of Chevrolet franchises in the state. At that time, GM insisted that a reduction in Chevrolet franchises was needed to boost throughput. During its bankruptcy proceedings, GM justified its decision to take millions of dollars in loans from the Federal government based upon promises that a more consolidated dealer network would improve profitability for the remaining dealers, thereby increasing each dealer's ability to perform more effective marketing. GM claimed that a reduction of rooftops would result in a stronger dealer network, especially in metro markets. GM knows full well that adding another dealer into this metro market will negatively impact Mirak's new vehicle sales and its profitability.

Now, GM is attempting to rely on a lack of franchises to support adding one at the Location. GM cannot have it both ways. The simple fact of the matter is that Chevrolet, as a brand, simply has not returned to pre-2009 levels that GM targeted. This is not a Mirak issue, or dealer-level issue, and does not support the addition of a franchise at the Location.

Mirak is confident that its preliminary analysis of this issue supports its position that market conditions do not support the addition of a Chevrolet franchise at the Location. Furthermore, the addition of a Chevrolet franchise at the Location will have a material negative impact on the market size and Mirak's sales, also in violation of M.G.L. c. 93B. As such, GM does not have good cause to establish Chevrolet dealership operations at the Location, and any such establishment of a dealership thereon will be done in bad faith or will be arbitrary or unconscionable.

**Mirak hereby demands that GM withdraw its Notice dated February 27, 2025 and further confirm in writing that it will not proceed with this proposed add-point. If GM intends to proceed with establishing Chevrolet dealership operations at the Location in spite of this protest, Mirak hereby demands a meet and confer in accordance with M.G.L. c. 93B, § 15(b) on or before April 25, 2025.**

AFSDOCS:302136082.1



Natalie Taylor
April 9, 2025
Page 5

This Protest is based upon information known and available to Mirak at this time, in light of the grounds set forth in GM's Notice.  Nothing herein shall be construed to limit Mirak's ability to raise additional grounds for protest should addition information become available.  Mirak reserves all rights, claims, and defenses.

We look forward to your response to this protest.

Very truly yours,

Sara D. Judge



**null / ALL**
**Transmittal Number: 31574282**
**Date Processed: 06/06/2025**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Katlin Curry<br>General Motors LLC<br>300 Renaissance Ctr<br>Detroit, MI 48243-0001 |

| | |
|---|---|
| **Entity:** | General Motors LLC<br>Entity ID Number  3113523 |
| **Entity Served:** | General Motors LLC |
| **Title of Action:** | Mirak Chevrolet Inc vs. General Motors LLC; McGovern, Matthew |
| **Matter Name/ID:** | Mirak Chevrolet Inc vs. General Motors LLC; McGovern, Matthew (17429638) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Middlesex County Superior Court, MA |
| **Case/Reference No:** | 2581CV01311 |
| **Jurisdiction Served:** | Massachusetts |
| **Date Served on CSC:** | 06/05/2025 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Arentfox Schiff LLP (Boston, MA)<br>617-973-6100 |
| **Client Requested Information:** | Year:<br>Make:<br>Model:<br>VIN: |

| | |
|---|---|
| **Notes:** | Document filed in court on: 05/27/2025 |
| | Arentfox Schiff LLP, Prudential Tower 800 Boylston Street Boston, MA 02199 |
| | CSC Location Document Was Served: Corporation Service Company, 84 State Street, Boston, MA 02109 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

9

| **SUMMONS AND ORDER OF NOTICE** | DOCKET NUMBER<br>2581CV01311 | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|

| CASE NAME:<br>**Mirak Chevrolet, Inc. vs. General Motors LLC et al** | Michael A. Sullivan, Clerk of Court<br>Middlesex County |
|---|---|

| To:<br>**General Motors LLC** | COURT NAME & ADDRESS<br>Middlesex County Superior Court – Woburn<br>200 Trade Center<br>Woburn, MA 01801 |
|---|---|

To the above named defendant(s):

You are hereby summoned and required to serve upon:

**Paul Marshall Harris, Esq.**
**ArentFox Schiff**
**800 Boylston St**
**32nd Floor**
**Boston, MA 02199**

an answer to the complaint which is herewith served upon you. This must be done within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, Judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this Court at Woburn either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

**WE ALSO NOTIFY YOU** that application for a Preliminary Injunction has been made in said action, as it appears in the complaint. A hearing on this matter has been scheduled for:

Date: 06/18/2025

Time: 02:00 PM

Event Type: In Person

**Session/ Courtroom Location:**

**Courtroom 740**

at which time you may appear and show cause why such application should not be granted.

| DATE ISSUED<br>05/29/2025 | CHIEF JUSTICE OF THE SUPERIOR COURT<br>Witness:<br>**Hon. Michael D Ricciuti** | ASSOCIATE JUSTICE<br>**Hon. Adam Sisitsky** | ASSISTANT CLERK<br>X |
|---|---|---|---|

**RETURN OF SERVICE**

I hereby certify and return that on _____, I served a copy of this summons, together with a copy of the Complaint.

6/5/2025   A TRUE COPY ATTEST

PARTY NAME:

X

Date/Time Printed: 05-29-2025 12:43:58

Process Server & Disinterested Person

SCV027I 09/2024

1

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                                  SUPERIOR COURT DEPARTMENT
                                                CIVIL ACTION NO. _____

| | |
|---|---|
| MIRAK CHEVROLET, INC., | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | ) |
| GENERAL MOTORS LLC, | ) |
| *Defendant,* | ) **RECEIVED**    5/27/25    tc |
| and | ) |
| | ) |
| MATTHEW MCGOVERN, | ) |
| *Interested Party/Defendant.* | ) |

## COMPLAINT

Mirak Chevrolet, Inc., d/b/a Mirak Chevrolet (hereafter, "Mirak"), by way of this

Complaint, alleges as follows against Defendant General Motors LLC ("GM") and Interested

Party/ Defendant, Matthew McGovern (hereafter, "Mr. McGovern").

## INTRODUCTION

1.      This is an action brought pursuant to M.G.L. c. 93B, which is entitled "Regulation

of Business Practices between Motor Vehicle Manufacturers, Distributors and Dealers"

(hereafter, "Chapter 93B").  Chapter 93B protects Massachusetts motor vehicle dealers from

abusive and coercive practiced by manufacturers and distributors.  Chapter 93B expressly

prohibits motor vehicle manufacturers and distributors from engaging in unfair methods of

competition and unfair or deceptive acts or practices.

2.      In addition, Chapter 93B allows an existing motor vehicle dealer to protest the appointment of a new dealer for the same line make when the proposed location of the new dealer is within the existing dealer's "relevant market area," as that term is defined in the statute.

3.      The purpose of this section of Chapter 93B is to protect the existing dealer's significant investment (both monetary and non-monetary investments) in its dealership by preventing the manufacturer or distributor from appointing to many intra-brand dealers into the same market.

4.      Plaintiff Mirak has exercised its statutory protest rights and it brings this Complaint seeking to permanently enjoin GM from establishing new Chevrolet dealership operations from the proposed location which is within Mirak's relevant market area.

## PARTIES

5.      Plaintiff Mirak is a domestic corporation organized under Massachusetts law, with a principal place of business within Middlesex County located at 1125 Massachusetts Avenue, Arlington, Massachusetts 02476.

6.      Mirak is engaged in the business of selling and offering to sell new Chevrolet brand vehicles and other used vehicles pursuant its Sales and Service Agreement (hereafter, the "Dealer Agreement") with GM.

7.      Mirak has been an authorized Chevrolet dealer since 1936.

8.      Upon information and belief, Mirak is one of the oldest continuously operating Chevrolet dealerships in the Commonwealth of Massachusetts.

9.      Defendant GM is a foreign limited liability company organized under Delaware law and registered to do business within the Commonwealth of Massachusetts.

2

AFSDOCS:302565861.2

10.     Defendant GM has a principal place of business at 300 Renaissance Center, Detroit, Michigan, 48265, and it does business in the Commonwealth of Massachusetts and within Middlesex County, Massachusetts.

11.     GM is a motor vehicle manufacturer that has an established network of franchised motor vehicle dealers in the Commonwealth of Massachusetts that are authorized to sell and service GM products including, but not limited to, Chevrolet brand vehicles.

12.     Mr. McGovern is a citizen of the Commonwealth of Massachusetts.

13.     Upon information and belief, Mr. McGovern resides in Boston, Massachusetts.

14.     Mr. McGovern has a principal place of business within Middlesex County located at 777 Washington Street, Newton, Massachusetts, 02460.

15.     Mr. McGovern is the "proposed new dealer appointee" in this protest action, as that term is used in M.G.L. c. 93B, § 6(f) (2).  As such, he is permitted to participate in this action as a party pursuant to the parameters set forth in M.G.L. c. 93B, § 6(f) (2).

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction pursuant to M.G.L. c. 231A and M.G.L. c. 93B, § 2.

17.     This Court has personal jurisdiction over all parties named in this action because all parties either reside or do business in the Commonwealth of Massachusetts.

18.     Venue in Middlesex County is appropriate pursuant to M.G.L. c. 223, § 1 and M.G.L. c. 93B, § 15(e).

19.     Prior to the initiation of this action, Defendant GM and Mirak met and conferred for the purposes of discussing settlement pursuant to M.G.L. c. 93B, § 15(b).

AFSDOCS:302565861.2

## FACTUAL ALLEGATIONS

20.    Mirak is an authorized Chevrolet "Dealer" as that term is defined in Chapter 93B, § 1.

21.    Defendant GM is a motor vehicle "Manufacturer" as that term is defined in Chapter 93B, § 1.

22.    Mirak sells and services Chevrolet brand vehicles from its dealership location in Arlington, Massachusetts, pursuant to its Dealer Agreement with GM.

23.    Mirak has been an authorized Chevrolet dealer for over 90 years.  During that time, Mirak has made significant and permanent investments to sell and service Chevrolet brand products.

24.    Mirak is a successful and profitable dealership that currently employees approximately 107 individuals from its Arlington dealership location.

### GM's NOTICE LETTER TO MIRAK

25.    On February 27, 2025, GM sent Mirak a letter (hereafter, the "Notice Letter") stating that GM "has made a final decision to approve the establishment of Chevrolet dealership operations at 34 Bear Hill Road, Waltham, MA 02451" (hereafter, the "Add Point Location").

26.    A copy of the Notice Letter is attached hereto as **Exhibit A**.

27.    The Add Point Location in Waltham is approximately 5.6 miles away (straight line distance) from all boundaries of Mirak's Chevrolet dealership in Arlington, Massachusetts.

28.    The Add Point Location is within Mirak's relevant market area, or "RMA," as that term is defined by Chapter 93B, § 1.

29.    The Notice Letter does not identify the name of the dealer who will operate the proposed new dealership at the Add Point Location.

4

Date Filed 5/27/2025 5:06 PM
Superior Court - Middlesex
Docket Number

30.     Upon information and belief, GM sent the Notice Letter with the intention of appointing Matthew McGovern to open the new dealership at the Add Point Location.

31.     In support of the new Add Point Location, GM's Notice Letter improperly relies in part upon comparing Chevrolet's purported brand market share in the metro Boston area to Chevrolet's purported national market share.

32.     GM also improperly relies upon the prior closure of the former Muzi Chevrolet dealership in Needham Heights, Massachusetts, in support of the new Add Point Location in Waltham, Massachusetts.

33.     The Notice Letter fails to demonstrate that GM conducted any reliable analysis of the statutory factors used to establish "good cause" for the appointment of a new dealer as set forth in Chapter 93B, § 6(g) including, but not limited to, any analysis of the retail sales and service business transacted within the relevant market area to be serviced by the newly proposed dealership.

34.     The Notice Letter did not identify what changes, if any, will be made to Mirak's market after the new Chevrolet dealer appointment.  For example, the Notice Letter did not identify which census tracts, if any, would be added or removed from Mirak's existing assigned market area after the opening of the new dealership in Waltham, Massachusetts.

35.     However, Mirak's existing market area (as assigned by GM) surrounds (to the west, north and east) the general area in Waltham where the Add Point Location is to be opened.

36.     GM's failure to identify what changes (if any) would occur to Mirak's assigned market area made it purposefully difficult for Mirak to analyze the impact of the proposed new dealer upon Mirak's existing business.

5

Date Filed 5/27/2025 5:06 PM
Superior Court - Middlesex
Docket Number

37.     Furthermore, GM did not provide Mirak with any market study or other supporting data to demonstrate that the Add Point Location could sustain a new Chevrolet dealership without damaging Mirak.

38.     Upon information and belief, GM has failed to undertake a market study to determine the impact of the Add Point Location on Mirak.

39.     GM's decision to appoint a new Chevrolet dealer at the Add Point Location is not supported by credible market data.

40.     For example, GM's alleged underperformance in Chevrolet's market share measurements in the Metro Boston area (as cited by GM in the Notice Letter) is attributable to factors outside of dealer network control.

41.     The Add Point Location cannot support a new Chevrolet dealership without negatively impacting the Chevrolet sales and service business of Mirak.

42.     The Notice Letter failed to comply with the statutory requirements of Chapter 93B, § 6, with respect to the appointment of a new dealer by a manufacturer.

43.     For example, GM's Notice Letter failed to show good cause under the statutory criteria set forth in M.G.L. c. 93B, § 6(g).

44.     GM does not have good cause to establish new Chevrolet dealership operations at the Add Point Location.

45.     The appointment of a new Chevrolet dealer at the Add Point Location will cause Mirak irreparable harm and economic damages.

AFSDOCS:302565861.2

## MIRAK'S PROTEST LETTER

46.     On April 9, 2025, Mirak (through its legal counsel) sent GM a letter pursuant to

M.G.L. c. 93B, § 6, to protest the establishment of the new Add Point Location (hereafter, the

"Protest Letter").

47.     A copy of Mirak's Protest Letter is attached hereto as **Exhibit B**, and is made part

of the allegations of this Complaint.

48.     Pursuant to Chapter 93B, §§ 6(a)(1) and 6(d), Mirak has standing to protest GM's

establishment of new Chevrolet dealership operation from the proposed Add Point Location

because the proposed Add Point Location is within Mirak's RMA.

49.     The Protest Letter lists the specific grounds forming the basis for Mirak's protest

based upon the information known to Mirak at the time the Protest Letter was sent, as required

by Chapter 93B, § 6(d).

50.     In its Protest Letter, Mirak informed GM that the data relied upon and cited by

GM in its Notice Letter does not demonstrate "good cause" to appoint a new Chevrolet dealer at

the Add Point Location pursuant to Chapter 93B, § 6.

51.     Local market conditions do not support the addition of a Chevrolet franchise at

the Add Point Location.

52.     GM's reliance upon allegedly low Chevrolet brand market share performance in

the "metro Boston area" to justify the new add point is misplaced.  Any alleged low registration

effectiveness in the "metro Boston area" is due to factors not under the control of the local dealer

network, and therefore the low registration effectiveness does not provide good case to add a

new Chevrolet franchise.

7

Date Filed 5/27/2025 5:06 PM
Superior Court - Middlesex
Docket Number

53.    The establishment of an additional Chevrolet point is not warranted by economic and marketing conditions, including future changes.

54.    Mirak is providing adequate competition and convenient customer care for Chevrolet vehicles owned and operated by residents and persons of business in the relevant market area to be served by the additional franchise to be operated from the Add Point Location.

55.    In addition, the appointment is not warranted because Mirak and other existing Chevrolet dealers have been adequately supporting the sale and service of Chevrolet brand products in the metro Boston market and surrounding area for at least the past three (3) years.

56.    Furthermore, the closing of Muzi Chevrolet in Needham, Massachusetts, does not provide good cause for the appointment of a new Chevrolet dealership in Waltham, Massachusetts.  Specifically, GM's reliance upon alleged decline in Retail Registration Index ("RRI") within the Needham Heights open point market area is irrelevant to the impact of the new Add Point Location (which is in Waltham, not Needham Heights).

57.    In addition, GM's contention in its Notice Letter that Mirak and other existing dealers have failed to take "advantage of the opportunities that exist" in the metro Boston market is false.

58.    For example, since 2017 through approximately 2023, Mirak invested in promoting the sale of the Chevrolet Bolt EV (the brand's electric vehicle model).  This strategy made sense considering the demographics in and around the Boston AGSSA.

59.    However, in 2024, Chevrolet made the decision to discontinue sales of the Chevy Bolt EV.  At the time that decision was made, Mirak had over 400 orders for which it had taken deposits.  GM unilaterally cancelled those orders.

8

60.    As a result, Mirak's nationwide Bolt EV sales dropped from a substantial 143 in 2023 to zero in 2024.  This negatively impacted Mirak's annual sales and was beyond Mirak's control.

61.    Despite unilaterally cancelling over 400 of Mirak's potential sales of the Bolt EV, GM now improperly cites to Mirak's prior three years of retail sales and service business as a basis in its Notice Letter to appoint a new dealer in the Add Point Location.

62.    The Add Point Location in Waltham cannot sustain a new Chevrolet dealership without impacting and "cannibalizing" upon the business of Mirak.

63.    The appointment of a new Chevrolet dealer at the Add Point Location is not warranted because Mirak and other existing Chevrolet dealerships are providing adequate competition and convenient consumer care for Chevrolet brand products to customers in and around the proposed Add Point Location.

64.    Adding a new dealer to the Add Point Location will create an anti-competitive sales environment in the relevant market area, which in turn will create unfair competition in violation of Chapter 93B.

65.    GM does not have good cause to appoint a new Chevrolet brand dealer at the Add Point Location, and the proposed appointment is arbitrary, in bad faith and/or unconscionable.

## MEET AND CONFER MEETING

66.    Mirak's Protest Letter included an invitation to GM to "meet and confer" pursuant to Chapter 93B, § 15(b), for the purposes of discussing settlement.

67.    On May 9, 2025, Mirak (with legal counsel) and GM (with legal counsel) met and conferred for the purposes of discussing settlement.

68.    To date, Mirak and GM have not settled this dispute.

9

## COUNT I
### VIOLATIONS OF M.G.L . c. 93B, §§ 3(a), 6, and 15(c)
### (Mirak v. GM)

69.    Mirak repeats and realleges the allegations set forth in paragraphs 1 through 68 as if set forth herein.

70.    Mirak is a "motor vehicle dealer" as defined by Chapter 93B, § 1.

71.    GM is a "manufacturer" of new and unused vehicles as defined by Chapter 93B, § 1.

72.    Mr. McGovern, as the proposed new dealer for the Add Point Location, is a necessary party to this dispute pursuant to M.R.C.P. Rule 19 and he has standing to participate in this action pursuant to Chapter 93B, § 6(f)(2).

73.    Chapter 93B, § 3(a) prohibits GM from engaging in "unfair methods of competition and unfair and deceptive acts or practices" against Mirak.

74.    Chapter 93B, § 6(a) states that "it shall be a violation of subsection (a) of section 3 for a manufacturer… without good cause, in bad faith or in an arbitrary or unconscionable manner" to enter into a franchise agreement with a dealer which would permit the new dealership to be opened within the relevant market area of an existing motor vehicle dealer representing the same line make.

75.    All of the boundaries of Mirak's Chevrolet dealership are located in Middlesex County, Massachusetts.

76.    Pursuant to Chapter 93B, § 1, the geographic area of Mirak's "relevant market area" is "the entire land mass encompassed in a circle with a radius of 8 miles from any boundary of the dealership."

77.    The proposed Add Point Location is located within Mirak's relevant market area.

10

78.    Mirak has standing to protest the establishment of new Chevrolet dealership operations at the proposed Add Point Location.

79.    Mirak's written Protest Letter and objection to the establishment of new Chevrolet dealership operations at the Add Point Location was timely because it was served within 45 days after GM's Notice Letter was sent.

80.    Mirak's filing of this protest complaint in Superior Court is timely under Chapter 93B, §6 (e).

81.    Under Chapter 93B, § 6(a) and 6(a)(1), GM cannot appoint a new Chevrolet dealer to operate at the Add Point Location (which is within Mirak's relevant market area) without good cause.

82.    GM also cannot make the appointment of a new Chevrolet dealer to operate at the Add Point Location in bad faith, or in an arbitrary or unconscionable manner.

83.    GM has the burden of establishing "good cause" for the appointment of a new Chevrolet dealer at the Add Point Location under Chapter 93B.

84.    GM does not have good cause to appoint a new Chevrolet dealer to operate at the Add Point Location.

85.    Under Chapter 93B, § 6(a)(1), GM cannot act in an arbitrary or unconscionable manner when appointing a new Chevrolet dealer into Mirak's RMA.

86.    GM has acted in an arbitrary and unconscionable manner when it approved the appointment of a new Chevrolet dealer into Mirak's RMA.

87.    In addition, GM's Notice Letter is not proper notice as required by Chapter 93B, § 6(c).

11

88.     For example, GM has failed to provide Mirak with any specific data to support any "good cause" to support the proposed appointment of a new Chevrolet dealer at the Add Point Location.

89.     Upon information and belief, GM failed to conduct any market studies to determine the impact of the proposed new Chevrolet dealer on the existing dealer network, including Mirak.

90.     GM never shared any market studies with Mirak prior to sending its Notice Letter which would support the appointment of a new Chevrolet dealer at the Add Point Location.

91.     GM did not act in good faith when it approved the appointment of a new Chevrolet dealer to operate at the Add Point Location.

92.     Indeed, in the past, GM (and its predecessor companies) have claimed that a reduction of dealership rooftops would increase sales input for the benefit of the brand.  It is now changing course and claiming that adding a new store within Mirak's RMA will increase sales.

93.     As a result of these wrongful acts, GM has violated Chapter 93B, §§ 3(a), 6, and 15.

94.     Under Chapter 93B, § 15(c), Mirak is entitled to reasonable attorneys' fees and costs as a result of GM's bad faith with respect to the new dealership appointment within Mirak's RMA.

95.     Mirak is also entitled to both temporarily and permanently enjoin the appointment of the new proposed Chevrolet within Mirak's RMA.

12

AFSDOCS:302565861.2

## COUNT II
## DECLARATORY JUDGMENT PURSUANT TO M.G.L. c. 231A
### (Mirak v. GM and Mr. McGovern)

96.     Mirak repeats and realleges the allegations set forth in paragraphs 1 through 95 as
if set forth herein.

97.     Count II is brought by Mirak pursuant to Chapter 231A for a declaratory
determination of Mirak's right to permanently enjoin the proposed appointment of Mr.
McGovern (or any other proposed dealer) into Mirak's RMA pursuant to Chapter 93B, § 6(e).

98.     Under Chapter 93B, § 6(e), Mirak has standing to protest the appointment of
Mr. McGovern (or any other proposed new Chevrolet dealer) in Mirak's RMA.

99.     There exists an actual case and controversy between Mirak, GM and
Mr. McGovern.

100.    GM does not have good cause to appoint any new Chevrolet dealer to operate
within Mirak's RMA.

101.    Under Chapter 93B, Mirak is entitled to a judgment declaring as follows: (a) that
GM acted in violation of Chapter 93B, §§ 3(a), 6, and 15 when it approved the appointment of
Mr. McGovern to open a new Chevrolet dealership at a location within Mirak's RMA; (b) that
GM acted in bad faith and in an arbitrary or unconscionable manner with respect to the
appointment of a new Chevrolet dealer within Mirak's RMA; (c) GM does not have "good
cause" to appoint a new Chevrolet dealer within Mirak's RMA; (d) that GM and any proposed
dealer (including, but not limited to, Mr. McGovern) are permanently enjoined from appointing
and/or operating any new Chevrolet dealership from any point within Mirak's RMA including,
but not limited to, the Add Point Location; and (e) Mirak is entitled to its reasonable attorneys'
fees and costs associated with this protest action.

Date Filed 5/27/2025 5:06 PM
Superior Court - Middlesex
Docket Number

## COUNT IV
## PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF
### (Mirak v. GM and Mr. McGovern)

102.    Mirak repeats and realleges the allegations set forth in paragraphs 1 through 101 as if set forth herein.

103.    GM's actions described herein against Mirak are in violation of Chapter 93B.

104.    Pursuant to Chapter 93B, §§ 6 and 15, Mirak is entitled to equitable and injunctive relief enjoining GM from appointing a new Chevrolet dealer (including, but not limited to, Mr. McGovern) to operate within Mirak's RMA.

105.    Mirak has a likelihood of success on its claims because, among other reasons: (a) GM does not have "good cause" to support the appointment of a new Chevrolet dealer within Mirak's RMA, as required by Chapter 93B; and (b) GM will not sustain it burden of proof with respect to the statutory criteria set forth in Chapter 93B, § 6(g).

106.    Mirak will suffer irreparable harm and economic damages as a result of GM's wrongful acts.

107.    Mirak's irreparable harm includes, but is not limited to, damage to Mirak's goodwill, violation of its statutory rights to operate a Chevrolet dealership within its RMA without unfair competition, and its ability to retain and attract qualified employees. This irreparable harm threatens the livelihood of Mirak's Chevrolet franchise.

**WHEREFORE,** Mirak respectfully requests that this Honorable Court grant judgment in favor of Mirak on all counts as follows:

A.    As to Count I (violation of M.G.L. c. 93B), this Court finds that GM has violated M.G.L. c. 93B, §§ 3(a), 6, and 15;

14

B.     As to Count II (Declaratory Judgment), this Court finds that Mirak is entitled to a

declaration that GM does not have good cause to add Mr. McGovern (or any other a new

Chevrolet dealer) within Mirak's RMA, and that GM acted in bad faith, acted in an arbitrary

and/or unconscionable manner when it made its decision to add a new Chevrolet dealer within

Mirak's RMA;

C.     As to Count III, this Court finds that Mirak is entitled to preliminary and

permanent injunctive relief against GM and Mr. McGovern, thereby prohibiting them from

opening a Chevrolet dealership within Mirak's RMA;

D.     That this Court finds further, pursuant to M.G.L. c. 93B, § 15(c) that the actions

of GM were asserted in bad faith and to award Mirak its reasonable attorneys' fees and costs

related to this action; and

E.     To order and award any other remedies at law which this Court deems just

including, but not limited to, preliminary injunctive relief upon application.

Respectfully submitted,

**PLAINTIFF MIRAK CHEVROLET, INC.,**
**By its Attorneys,**

*/s/ Sara D. Judge*
Sara D. Judge (BBO #669108)
*sara.judge@afslaw.com*
Paul Marshall Harris (BBO #223500)
*paul.harris@afslaw.com*
Devon C. Bodey (BBO #705146)
*Devon.bodey@afslaw.com*

**ARENTFOX SCHIFF LLP**
Prudential Tower
800 Boylston Street
Boston, MA  02199
Telephone:     617.973.6100
Facsimile:     617.367.2315

Dated:  May 27, 2025

AFSDOCS:302565861.2

Date Filed 5/27/2025 5:05 PM
Superior Court - Middlesex
Docket Number

# EXHIBIT A

Date Filed 5/27/2025 5:06 PM
Superior Court - Middlesex
Docket Number

Mar  3 2025 03:05pm      P001/002



**FEDERAL EXPRESS: 772369801556**

February 27, 2025

Robert A. Mirak, Dealer Operator
Mirak Chevrolet, Inc.
1125 Massachusetts Ave.
Arlington, MA 02476

Dear Mr. Mirak:

General Motors LLC ("GM") has made a final decision to approve the establishment of Chevrolet dealership operations at 34 Bear Hill Road, Waltham, MA 02451 (the "Location"). Chevrolet dealership operations will not be established at the Location until at least 90 days after you receive this notice.

Based upon information known by GM at the time that this notice is being provided, the specific grounds forming the basis for GM's decision to approve the establishment of Chevrolet dealership operations at the Location are as follows:

1.  There were 15 Chevrolet rooftops in the Metro Boston Chevrolet market in 2008 and there are 10 today. Competing brands such as Ford, Toyota and Honda each have 14 or more dealership rooftops in the metro Boston market.

2.  The 10-year market share high for Chevrolet in the Metro Boston Chevrolet market was 6.4% in 2016. Chevrolet's market share declined to 4.6% in 2021 and remained at 4.6% through September 2024.

3.  For comparison, Chevrolet's national market share continues to grow from 9.1% in 2021 to 10.0% through September 2024.

4.  In 2022, Chevrolet's sales performance in Boston ranked 103rd out of the top 116 metro markets nationally with registration losses exceeding 2,800 and in 2023 Chevrolet's sales performance in Boston ranked 101st out of the top 116 metro markets nationally with registration losses exceeding 3,400 in 2023.

5.  GM does not believe that the existing Chevrolet dealers in the Metro Boston Chevrolet market are taking advantage of the opportunities that exist within the market and that the establishment of a Chevrolet dealership at the Location is warranted by economic and marketing conditions including anticipated future changes.

6.  GM believes that the addition of a Chevrolet dealership at the Location will increase competition and therefore be in the public interest.

7.  Muzi Chevrolet was formerly located in Needham Heights, MA and closed in November 2021. Since Muzi Chevrolet closed, Chevrolet's Retail Registration Index ("RRI") in the Needham Heights open point market area has declined from 77.1 to 60.8 through September 2024.

8.  Mirak Chevrolet is the only existing Chevrolet dealer in the relevant market area to be served by an additional Chevrolet dealership located at the Location. GM believes that the retail sales and service business transacted by Mirak Chevrolet in the three years preceding this notice supports the addition of a new Chevrolet dealership at the Location.

---

**general motors**

GM Cadillac Tower / 30400 Van Dyke Ave, Floor 06 / Warren, MI 48093 / www.gm.com

9.    GM does not believe that there is adequate competition and convenient customer care for Chevrolet vehicles in the Metro Boston Chevrolet market and in particular for Chevrolet vehicles owned or operated by residents and persons with places of business in the relevant market area to be served by an additional dealer at the Location.

If Mirak Chevrolet, Inc. objects to the establishment of Chevrolet dealership operations at the Location, any protest should be sent to 30400 Van Dyke Ave., Floor 6, Warren, MI 48093.

This notice is provided pursuant to Mass. Gen. Laws ch. 93B, § 6.

Sincerely,

Natalie Taylor
Zone Manager
General Motors LLC

c: Dan Adamcheck, Chevrolet Regional Director
    Dealer Contractual Group

Date Filed 5/27/2025 5:06 PM
Superior Court - Middlesex
Docket Number

# EXHIBIT B

**FedEx**

April 10, 2025

Dear Customer,

The following is the proof-of-delivery for tracking number: 287386143474

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | Residence |
| Signed for by: | Signature not required | Delivery Location: | |
| Service type: | FedEx Standard Overnight | | |
| Special Handling: | Deliver Weekday | | WARREN, MI, |
| | | Delivery date: | Apr 10, 2025 09:22 |

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 287386143474 | Ship Date: | Apr 9, 2025 |
| | | Weight: | 0.5 LB/0.23 KG |
| Recipient: | | Shipper: | |
| WARREN, MI, US, | | Boston, MA, US, | |

Reference          045921.00006.5691

Proof-of-delivery details appear below; however, no signature is available for this FedEx Express shipment because a signature was not required.

Thank you for choosing FedEx

# ArentFox
# Schiff

**ArentFox Schiff LLP**
Prudential Tower
800 Boylston Street
Boston, MA  02199

---

617.973.6100    **MAIN**
617.367.2315    **FAX**

---

afslaw.com

April 9, 2025

**Sara D. Judge**
Partner
617.973.6184    **DIRECT**
Sara.judge@afslaw.com

**OVERNIGHT DELIVERY**
**FEDERAL EXPRESS**

Ms. Natalie Taylor
Zone Manager
General Motors LLC
30400 Van Dyke Ave., Floor 6
Warren, MI 48093

**Reference Number**
045921.00006

> **Re:    Mirak Chevrolet, Inc.'s M.G.L. c. 93B, § 6 Protest and**
> **M.G.L. c. 93B, § 15(b) Request for Meet and Confer**

Dear Ms. Taylor:

I am writing on behalf of my client, Mirak Chevrolet, Inc. ("Mirak"), in response to General Motors, LLC's ("GM") February 27, 2025 letter (the "Notice") advising that it has decided to approve the establishment of new Chevrolet dealership operations at 34 Bear Hill Road, Waltham, MA 02451 (the "Location"). In that regard, pursuant to Massachusetts General Laws c. 93B, § 6(d), Mirak is protesting the establishment of a new Chevrolet dealership at the Location for the reasons specified below. Please direct all future correspondence regarding this matter to the undersigned.

As it relates to the protest, GM's Notice is dated February 27, 2025, so Mirak's written notice of protest herein is due on or before April 13, 2025. There is no question that Mirak has timely protested GM's Notice within 45 days thereafter, and Mirak has preserved all protest rights it has pursuant to M.G.L. c. 93B, *et seq.*

As an initial matter, I would like to note that Mirak Chevrolet has been a dealer since the early 1930s. The Mirak family has been a long supporter of GM and Chevrolet and has invested heavily in the Chevrolet brand to perform its obligations under its dealer agreement. Such investments are permanent in nature, as they include real estate and facilities. *See* M.G.L. c. 93B, § 6(g)(3) and (4). Further, there is ample competition in the relevant market area and convenient customer care. *Id.* at § 6(g)(8).  For these reasons, among others identified below, Chevrolet lacks good cause to add a franchise at the Location.

Under M.G.L. c. 93B, § 6, GM's Notice was required to list the specific grounds forming the basis for the appointment… based upon information known by the manufacturer at the time the notice is sent.  In that regard, GM's Notice identifies limited factors (without supporting data)

AFSDOCS:302136082.1

**Smart In**
**Your World®**

# ArentFox
# Schiff

that GM relies upon to support its position that an additional franchise at the Location is warranted, including: (i) a reduced number of rooftops in the Metro Boston market; (ii) low market share and sales performance at the brand level in the Metro Boston market; (iii) a need for dealers to seize opportunities within the market and for competition; (iv) the closure of a former Chevrolet dealership in Needham Heights, MA; (v) Mirak's retail sales and service business transacted in the three years preceding the Notice; and (vi) GM's belief that there is inadequate competition and a lack of convenient customer care for those located in the relevant market area. Mirak disputes that the factors identified by GM in its Notice support good cause for the new add point. Furthermore, GM's Notice fails to show good cause under the statutory criteria set forth in M.G.L. c. 93B, § 6 (g).

Mirak is protesting the addition of a Chevrolet franchise at the Location, which is within Mirak's relevant market area ("RMA"), i.e., within 8 miles from the boundary of the dealership. M.G.L. c. 93B, § 1(1). GM lacks good cause based on the factors it relies upon to grant or enter into an additional franchise agreement at the Location. Further, the granting or entering into an additional franchise agreement at the Location would be in bad faith or is arbitrary or unconscionable, in violation of Massachusetts law. In that regard, Mirak protests GM's granting or entering into a franchise agreement for Chevrolet dealership operations at the Location because based on local demographic and market conditions, there is strong empirical support that any "underperformance" in Chevrolet's market share measurement is a result of factors outside of dealer network control and will not be remedied by adding a franchise at the Location. M.G.L. c. 93B, § 6 (g)(1). Further, upon review, Mirak has determined that there would be a material, negative impact on it if the additional franchise were put in place at the Location.

To evaluate the proposed add point, Mirak analyzed Chevrolet's brand market share as compared to state average. Then, Mirak evaluated local demographic and market factors to determine if any market share deficit is attributable to factors outside the control of the dealer network and/or GM/Chevrolet. Mirak also evaluated the potential impact on it if a franchise is established at the Location, as well as the difference in the flow-of-trade based on the Location as compared to Mirak's location. Finally, Mirak evaluated the impact GM's discontinuance of the Chevrolet Bolt, and its reduction of Chevrolet dealerships and declining Chevrolet sales nationwide to determine their impact on Chevrolet's market share, particularly in Mirak's RMA. After evaluating these factors, as described in further detail below, Mirak finds that local market conditions do not support the addition of a Chevrolet franchise at the Location, and that the proposed addition of a franchise at the Location will have a material negative impact on the market size and sales of Mirak Chevrolet. As such, Chevrolet does not have good cause to enter into a franchise agreement at the Location, and entering into such an agreement would be in bad faith or arbitrary or unconscionable.

AFSDOCS:302136082.1

Date Filed 5/27/2025 5:06 PM
Superior Court - Middlesex
Docket Number

# ArentFox
# Schiff

Natalie Taylor
April 9, 2025
Page 3

GM's reliance upon alleged poor market share performance to justify this add point is misplaced. Although initial analysis implies that Chevrolet brand market share is low in the local area, such low registration effectiveness is due to factors not under the control of the local dealer network and/or manufacturer, and therefore the low registration effectiveness does not provide good cause to add a franchise at the Location. Various demographic and market variables provide statistical support for this position. By adjusting registration effectiveness based on such variables, Chevrolet is above 100% in all areas, other than that of the proposed Location. As such, the addition of a Franchise at the Location is not necessary based on such analysis.

Simply stated, the establishment of an additional Chevrolet point is not warranted by economic and marketing conditions within the RMA. This is especially true during the current uncertain market, where consumers are berated with news of proposed tariffs and threats of recession. Any supposed "brand expansion" that GM thinks will arise from an additional point will not offset the harm to the existing dealer network.

GM also points to the fact that there was a dealer formerly at Needham Heights as a basis to support the addition of a franchise at the Location. However, according to M.G.L. c. 93B, § 6(b)(2), GM is prohibited from appointing a successor motor vehicle dealer on these grounds because the Location is more than 2 miles away from Muzi Chevrolet's location, and it has been more than one year since Muzi Chevrolet ceased operations. The closure of Muzi Chevrolet does not provide a basis to add a franchise at the Location.

In addition to these market factors and the cessation of operations at Muzi Chevrolet not providing bases for the add-point, the impact of the proposed franchise on Mirak also supports this conclusion. By analyzing change in brand registrations in the local area (based upon drive distance and S&P segmentation), Mirak has determined that it could see a reduction of approximately 29% resulting from the proposed additional franchise. By employing a gravity model, Mirak has determined that it could see a reduction of approximately 14%. In either event, such a reduction in the size of the market facing Mirak would have a materially adverse impact on Mirak.[1] When translated to estimated lost sales opportunities, Mirak estimates a loss of sales and profit contribution totaling 10% or more, which would cause an even larger reduction in Mirak's net profit. Such a result does not support good cause, but rather, would constitute bad faith and is unconscionable, in direct violation of M.G.L. c. 93B, § 6.

---

[1] We estimate that Mirak's AGSSA will be reduced by approximately 29% based a method very similar to GM's methods. If GM were adding those tracts, it would ideologically assume, under RSI, that Mirak's sales should increase proportionally with the AGSSA increase. However, here, we know from dozens of add point litigations that GM will likely now assert that the proposed add point would not lead to an expectation that Mirak will lose sales. GM has presented and Mirak is aware of no sound basis to expect that the add point would be anything other than materially detrimental to Mirak's sales, profitability, and investment.

AFSDOCS:302136082.1

# ArentFox
# Schiff

Natalie Taylor<br>
April 9, 2025<br>
Page 4

In addition to evaluating market factors and the potential impact on Mirak if the proposed franchise were allowed at the Location, Mirak also evaluated other issues that factor into Mirak's performance over the past three years. For one, Chevrolet made the decision to discontinue sales of the Chevy Bolt. At the time that occurred, Mirak had over 400 orders for which it had taken deposits. GM unilaterally cancelled those orders. As a result, Mirak's Nationwide Bolt sales dropped from a substantial 143 in 2023 to 0 in 2024. This is clearly a GM-caused issue, not a Mirak, or dealer network issue. These lost sales would be coupled with losses Mirak would feel by the addition of a franchise at the Location. Such a result is unacceptable to Mirak and a violation of M.G.L. c. 93B.

Beyond discontinuing a popular model vehicle for the RMA and unilaterally cancelling orders for same, GM's reliance on a lack of franchises in Massachusetts as grounds to put a new franchise at the Location is not credible . It was GM that took it upon itself in 2008/2009 to reduce the number of Chevrolet franchises in the state. At that time, GM insisted that a reduction in Chevrolet franchises was needed to boost throughput. During its bankruptcy proceedings, GM justified its decision to take millions of dollars in loans from the Federal government based upon promises that a more consolidated dealer network would improve profitability for the remaining dealers, thereby increasing each dealer's ability to perform more effective marketing. GM claimed that a reduction of rooftops would result in a stronger dealer network, especially in metro markets. GM knows full well that adding another dealer into this metro market will negatively impact Mirak's new vehicle sales and its profitability.

Now, GM is attempting to rely on a lack of franchises to support adding one at the Location. GM cannot have it both ways. The simple fact of the matter is that Chevrolet, as a brand, simply has not returned to pre-2009 levels that GM targeted. This is not a Mirak issue, or dealer-level issue, and does not support the addition of a franchise at the Location.

Mirak is confident that its preliminary analysis of this issue supports its position that market conditions do not support the addition of a Chevrolet franchise at the Location. Furthermore, the addition of a Chevrolet franchise at the Location will have a material negative impact on the market size and Mirak's sales, also in violation of M.G.L. c. 93B. As such, GM does not have good cause to establish Chevrolet dealership operations at the Location, and any such establishment of a dealership thereon will be done in bad faith or will be arbitrary or unconscionable.

**Mirak hereby demands that GM withdraw its Notice dated February 27, 2025 and further confirm in writing that it will not proceed with this proposed add-point. If GM intends to proceed with establishing Chevrolet dealership operations at the Location in spite of this protest, Mirak hereby demands a meet and confer in accordance with M.G.L. c. 93B, § 15(b) on or before April 25, 2025.**

AFSDOCS:302136082.1

Date Filed 5/27/2025 5:06 PM
Superior Court - Middlesex
Docket Number

# ArentFox
# Schiff

Natalie Taylor
April 9, 2025
Page 5

This Protest is based upon information known and available to Mirak at this time, in light of the grounds set forth in GM's Notice. Nothing herein shall be construed to limit Mirak's ability to raise additional grounds for protest should addition information become available. Mirak reserves all rights, claims, and defenses.

We look forward to your response to this protest.

Very truly yours,

Sara D. Judge

AFSDOCS:302136082.1

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Massachusetts Trial Court<br>Superior Court |
|---|---|---|

**COUNTY** Middlesex Superior Court (Woburn)

| Plaintiff | Mirak Chevrolet, Inc. | Defendant: | General Motors, LLC |
|---|---|---|---|
| ADDRESS: | 1125 Massachusetts Ave., Arlington, MA 02476 | ADDRESS: | 300 Renaissance Center, Detroit, MI 48265 |
| | | | |
| | | | |

| Plaintiff Attorney: | Sara D. Judge, Esquire | Defendant: | Matthew McGovern |
|---|---|---|---|
| ADDRESS: | ArentFox Schiff LLP | ADDRESS: | 777 Washington Street, Newton, MA 02460 |
| 800 Boylston Street - 32nd Floor | | Principal Place of Business: 777 Washington Street, Newton, MA 02460 | |
| Boston, MA 02199 | | | |
| BBO: | 669104 | | |

**TYPE OF ACTION AND TRACK DESIGNATION (see instructions section on next page)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| BH1 | Violation of MGL c. 93B | A | ☐ YES    ☒ NO |

*If "Other" please describe:    (Dealer Statute)

|  Is there a claim under G.L. c. 93A?  |  Is there a class action under Mass. R. Civ. P. 23?  |
|---|---|
| ☐ YES    ☒ NO | ☐ YES    ☒ NO |

**STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A**

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages.
(Note to plaintiff: for this form, do not state double or treble damages; indicate single damages only.)

**TORT CLAIMS**

A. Documented medical expenses to date

   1. Total hospital expenses

   2. Total doctor expenses        **RECEIVED**  5/27/25   tc

   3. Total chiropractic expenses

   4. Total physical therapy expenses

   5. Total other expenses (describe below)

                                          Subtotal (1-5):   $0.00

B. Documented lost wages and compensation to date

C. Documented property damages to date

D. Reasonably anticipated future medical and hospital expenses

E. Reasonably anticipated lost wages

F. Other documented items of damages (describe below)

                                          TOTAL (A-F):   $0.00

G. Briefly describe plaintiff's injury, including the nature and extent of the injury:

**CONTRACT CLAIMS**

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | Plaintiff motor vehicle dealer seeks to enjoin new franchise appointment under M.G.L. c. 93B | $6,400,000.00 |
| | Total | $6,400,000.00 |

| Signature of Attorney/Self-Represented Plaintiff: X | Date: | May 27, 2025 |
|---|---|---|

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

**CERTIFICATION UNDER S.J.C. RULE 1:18(5)**

I hereby certify that I have complied with requirements of Rule 5 of Supreme Judicial Court Rule 1:18: Uniform Rules on Dispute Resolution, requiring that I inform my clients about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

| Signature of Attorney: X | Date: | May 27, 2025 |
|---|---|---|

SC0001: 02/24              www.mass.gov/courts            Date/Time Printed:05-27-2025 14:42:37

Date Filed 5/27/2025 5:06 PM
Superior Court - Middlesex
Docket Number

# CIVIL ACTION COVER SHEET INSTRUCTIONS —
## SELECT A CATEGORY THAT BEST DESCRIBES YOUR CASE*

### AC Actions Involving the State/Municipality†*

| | |
|---|---|
| AA1 Contract Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AB1 Tortious Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AC1 Real Property Action involving Commonwealth, Municipality, MBTA etc. | (A) |
| AD1 Equity Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AE1 Administrative Action involving Commonwealth, Municipality, MBTA,etc. | (A) |

### CN Contract/Business Cases

| | |
|---|---|
| A01 Services, Labor, and Materials | (F) |
| A02 Goods Sold and Delivered | (F) |
| A03 Commercial Paper | (F) |
| A04 Employment Contract | (F) |
| A05 Consumer Revolving Credit - M.R.C.P. 8.1 | (F) |
| A06 Insurance Contract | (F) |
| A08 Sale or Lease of Real Estate | (F) |
| A12 Construction Dispute | (A) |
| A14 Interpleader | (F) |
| BA1 Governance, Conduct, Internal Affairs of Entities | (A) |
| BA3 Liability of Shareholders, Directors, Officers, Partners, etc. | (A) |
| BB1 Shareholder Derivative | (A) |
| BB2 Securities Transactions | (A) |
| BC1 Mergers, Consolidations, Sales of Assets, Issuance of Debt, Equity, etc. | (A) |
| BD1 Intellectual Property | (A) |
| BD2 Proprietary Information or Trade Secrets | (A) |
| BG1 Financial Institutions/Funds | (A) |
| BH1 Violation of Antitrust or Trade Regulation Laws | (A) |
| A99 Other Contract/Business Action - Specify | (F) |

* See Superior Court Standing Order 1-88 for an explanation of the tracking deadlines for each track designation: F, A, and X. On this page, the track designation for each case type is noted in parentheses.

†* Choose this case type if ANY party is the Commonwealth, a municipality, the MBTA, or any other governmental entity UNLESS your case is a case type listed under Administrative Civil Actions (AA).

‡ Choose this case type if ANY party is an incarcerated party, UNLESS your case is a case type listed under Administrative Civil Actions (AA) or is a Prisoner Habeas Corpus case (E97).

### ER Equitable Remedies

| | |
|---|---|
| D01 Specific Performance of a Contract | (A) |
| D02 Reach and Apply | (F) |
| D03 Injunction | (F) |
| D04 Reform/ Cancel Instrument | (F) |
| D05 Equitable Replevin | (F) |
| D06 Contribution or Indemnification | (F) |
| D07 Imposition of a Trust | (A) |
| D08 Minority Shareholder's Suit | (A) |
| D09 Interference in Contractual Relationship | (F) |
| D10 Accounting | (A) |
| D11 Enforcement of Restrictive Covenant | (F) |
| D12 Dissolution of a Partnership | (F) |
| D13 Declaratory Judgment, G.L. c. 231A | (A) |
| D14 Dissolution of a Corporation | (F) |
| D99 Other Equity Action | (F) |

### PA Civil Actions Involving Incarcerated Party ‡

| | |
|---|---|
| PA1 Contract Action involving an Incarcerated Party | (A) |
| PB1 Tortious Action involving an Incarcerated Party | (A) |
| PC1 Real Property Action involving an Incarcerated Party | (F) |
| PD1 Equity Action involving an Incarcerated Party | (F) |
| PE1 Administrative Action involving an Incarcerated Party | (F) |

### TR Torts

| | |
|---|---|
| B03 Motor Vehicle Negligence - Personal Injury/Property Damage | (F) |
| B04 Other Negligence - Personal Injury/Property  Damage | (F) |
| B05 Products Liability | (A) |
| B06 Malpractice - Medical | (A) |
| B07 Malpractice - Other | (A) |
| B08 Wrongful Death - Non-medical | (A) |
| B15 Defamation | (A) |
| B19 Asbestos | (A) |
| B20 Personal Injury - Slip & Fall | (F) |
| B21 Environmental | (F) |
| B22 Employment Discrimination | (F) |
| BE1 Fraud, Business Torts, etc. | (A) |
| B99 Other Tortious Action | (F) |

### RP Summary Process (Real Property)

| | |
|---|---|
| S01 Summary Process - Residential | (X) |
| S02 Summary Process - Commercial/ Non-residential | (F) |

### RP Real Property

| | |
|---|---|
| C01 Land Taking | (F) |
| C02 Zoning Appeal, G.L. c. 40A | (F) |
| C03 Dispute Concerning Title | (F) |
| C04 Foreclosure of a Mortgage | (X) |
| C05 Condominium Lien & Charges | (X) |
| C99 Other Real Property Action | (F) |

### MC Miscellaneous Civil Actions

| | |
|---|---|
| E18 Foreign Discovery Proceeding | (X) |
| E97 Prisoner Habeas Corpus | (X) |
| E22 Lottery Assignment, G.L. c. 10, § 28 | (X) |

### AB Abuse/Harassment Prevention

| | |
|---|---|
| E15 Abuse Prevention Petition, G.L. c. 209A | (X) |
| E21 Protection from Harassment, G.L. c. 258E | (X) |

### AA Administrative Civil Actions

| | |
|---|---|
| E02 Appeal from Administrative Agency, G.L. c. 30A | (X) |
| E03 Certiorari Action, G.L. c. 249, § 4 | (X) |
| E05 Confirmation of Arbitration Awards | (X) |
| E06 Mass Antitrust Act, G.L. c. 93, § 9 | (A) |
| E07 Mass Antitrust Act, G.L. c. 93, § 8 | (X) |
| E08 Appointment of a Receiver | (X) |
| E09 Construction Surety Bond, G.L. c. 149, §§ 29, 29A | (A) |
| E10 Summary Process Appeal | (X) |
| E11 Worker's Compensation | (X) |
| E16 Auto Surcharge Appeal | (X) |
| E17 Civil Rights Act, G.L. c.12, § 11H | (X) |
| E24 Appeal from District Court Commitment, G.L. c.123, § 9(b) | (X) |
| E94 Forfeiture, G.L. c. 265, § 56 | (X) |
| E95 Forfeiture, G.L. c. 94C, § 47 | (F) |
| E99 Other Administrative Action | (X) |
| Z01 Medical Malpractice - Tribunal only, G.L. c. 231, § 60B | (F) |
| Z02 Appeal Bond Denial | (X) |

### SO Sex Offender Review

| | |
|---|---|
| E12 SDP Commitment, G.L. c. 123A, § 12 | (X) |
| E14 SDP Petition, G.L. c. 123A, § 9(b) | (X) |

### RC Restricted Civil Actions

| | |
|---|---|
| E19 Sex Offender Registry, G.L. c. 6, § 178M | (X) |
| E27 Minor Seeking Consent, G.L. c.112, § 12S | (X) |

**TRANSFER YOUR SELECTION TO THE FACE SHEET**

**EXAMPLE:**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | F | ☒ YES   ☐ NO |

## STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF** — On the face of the Civil Action Cover Sheet (or on attached additional sheets, if necessary), the plaintiff shall state the facts on which the plaintiff relies to determine money damages. A copy of the completed Civil Action Cover Sheet, including the statement concerning damages, shall be served with the complaint. **A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or self-represented litigant.**

**DUTY OF THE DEFENDANT** — If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with the defendant's answer a statement specifying the potential damages which may result if the plaintiff prevails.

## A CIVIL ACTION COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
## IF THIS COVER SHEET IS NOT FILLED OUT THOROUGHLY AND
## ACCURATELY, THE CASE MAY BE DISMISSED.

3

# COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                                    SUPERIOR COURT DEPARTMENT
                                                  CIVIL ACTION NO. ____ _____

```
                                              )
MIRAK CHEVROLET, INC.,                        )
            Plaintiff,                        )
                                              )
v.                                            )
                                              )
GENERAL MOTORS LLC,                           )
            Defendant,                        )      RECEIVED   5/27/25    tc
and                                           )
                                              )
MATTHEW MCGOVERN,                             )
     Interested Party/Defendant.              )
                                              )
```

## MOTION OF THE PLAINTIFF FOR SERVICE OF PROCESS
## OTHER THAN BY A SHERIFF OR HIS DEPUTY

Pursuant to the provisions of Rule 4(c) of the Massachusetts Rules of Civil Procedure, the

plaintiff Mirak Chevrolet, Inc. ("Mirak") respectfully moves that this Court authorize service of the

Summons, Civil Action Cover Sheet, Complaint, Motion for Preliminary Injunction (and all related

motion papers, including any orders for short notice) be made upon the Defendants other than by a

Sheriff or his Deputy, and to permit said service to be made by **Dewsnap & Associates, LLC, of**

**92 State Street, Boston, MA 02109,** who are above the age of 19, experienced in the service of

process, and have no interest in this case.

As grounds for this motion, Plaintiff Mirak states that service in this manner would appear to

be the most efficient and effective means of facilitating the giving of notice to the Defendants.

1

Respectfully submitted,

**PLAINTIFF MIRAK CHEVROLET, INC.,**
**By its Attorneys,**

*/s/ Sara D. Judge*
Sara D. Judge (BBO #669108)
*sara.judge@afslaw.com*
Paul Marshall Harris (BBO #223500)
*paul.harris@afslaw.com*
Devon C. Bodey (BBO #705146)
*Devon.bodey@afslaw.com*

**ARENTFOX SCHIFF LLP**
Prudential Tower
800 Boylston Street
Boston, MA 02199
Telephone:    617.973.6100
Facsimile:    617.367.2315

Dated: May 27, 2025

2

Date Filed 5/27/2025 5:06 PM
Superior Court - Middlesex
Docket Number

4

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                                SUPERIOR COURT DEPARTMENT
                                              CIVIL ACTION NO. _____

|  |  |
|---|---|
| MIRAK CHEVROLET, INC., *Plaintiff,* | ) ) ) ) |
| v. | ) ) |
| GENERAL MOTORS LLC, *Defendant,* and | ) ) ) ) |
| MATTHEW MCGOVERN, *Interested Party/Defendant.* | ) ) ) ) ) |

**RECEIVED**    5/27/25    tc

## PLAINTIFF MIRAK'S MOTION FOR PRELIMINARY INJUNCTION

Mirak Chevrolet, Inc., d/b/a Mirak Chevrolet (hereafter, "Mirak"), respectfully submits this Motion for Preliminary Injunction against Defendant General Motors LLC ("GM") and Interested Party/Defendant, Matthew McGovern (hereafter, "Mr. McGovern"), which seeks an Order temporarily staying the appointment of any new Chevrolet brand authorized motor vehicle dealer at 34 Bear Hill Road, Waltham, Massachusetts, (hereafter, the "Add Point Location") pending a final judgment of this matter (or agreed upon settlement / dismissal with prejudice by the parties.

Mirak is a duly authorized Chevrolet dealer which operates pursuant to its Dealer Sales and Service Agreement with Defendant GM. GM has given written notice to Mirak that it intends to appoint a new franchised Chevrolet dealer within Mirak's relevant market area. The Massachusetts dealer protection statute expressly allows Mirak to protest this new appointment. In addition, the statute allows this Court to issue an injunction to temporarily stay the appointment until trial of a protest action may be heard on the merits. M.G.L. c. 93B, §§ 6(a) and 15(a).

1

In support of its Motion for Preliminary Injunction, Mirak refers this Court and incorporates the arguments set forth in the accompanying Memorandum of Law in Support of Motion for Preliminary Injunction, filed herewith. As set forth in the Memorandum of Law, Mirak is entitled to injunctive relief because (a) it has a likelihood of success on its claims; (b) without an injunction, it will suffer irreparable harm; (c) the balance of the harm to Mirak exceeds any purported harm to Defendants; and (d) it is in public interest to temporarily stay the appointment pending the outcome of the protest action.

WHEREFORE, Plaintiff Mirak respectfully requests that this Court grant its Motion for Preliminary Injunction.

Respectfully submitted,

PLAINTIFF MIRAK CHEVROLET, INC.,
By its Attorneys,

*/s/ Sara D. Judge*
Sara D. Judge (BBO #669108)
*sara.judge@afslaw.com*
Paul Marshall Harris (BBO #223500)
*paul.harris@afslaw.com*
Devon C. Bodey (BBO #705146)
*Devon.bodey@afslaw.com*

**ARENTFOX SCHIFF LLP**
Prudential Tower
800 Boylston Street
Boston, MA 02199
Telephone:    617.973.6100
Facsimile:    617.367.2315

Dated: May 27, 2025

5

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                                SUPERIOR COURT DEPARTMENT
                                              CIVIL ACTION NO. _____

|  |  |
|---|---|
| MIRAK CHEVROLET, INC., | ) |
| *Plaintiff,* | ) |
|  | ) |
| v. | ) |
|  | ) |
| GENERAL MOTORS LLC, | ) |
| *Defendant,* | ) |
| and | ) |
|  | ) |
| MATTHEW MCGOVERN, | ) |
| *Interested Party/Defendant.* | ) |
|  | ) |

**RECEIVED**    5/27/25    tc

## EMERGENCY EX PARTE MOTION BY PLAINTIFF
## FOR SHORT ORDER OF NOTICE

Plaintiff Mirak Chevrolet, Inc. ("Mirak") hereby requests that this Court grant an Emergency Ex Parte Motion for Short Order of Notice for an expedited hearing on Mirak's Motion for Preliminary Injunction. As grounds therefor, Mirak states that Defendant General Motors LLC ("GM") has given written notice to Mirak of GM's intention to appoint a new franchise dealership conducting Chevrolet sales and service operations at a location that is within Mirak's relevant market area. Co-Defendant Matthew McGovern is the proposed dealer appointee. Under M.G.L. c. 93B, §§ 6 and 15, Mirak has standing to protest this appointment and may seek an order both temporarily and permanently enjoining the new dealer appointment.

The Short Order of Notice is sought to minimize any delay in having the Motion for Preliminary Injunction heard by this Court. It is important for Mirak's Motion for Preliminary Injunction to be heard as soon as possible because there is a risk that GM will sign a new dealer

1

agreement with Co-Defendant Matthew McGovern, which if allowed to proceed, will cause Mirak irreparable harm.

WHEREFORE, for the foregoing reasons, Plaintiff Mirak requests that this Court grant its Emergency Ex-Parte Motion for Short Order of Notice.

Respectfully submitted,

**PLAINTIFF MIRAK CHEVROLET, INC.,**
**By its Attorneys,**

*/s/ Sara D. Judge*
Sara D. Judge (BBO #669104)
*sara.judge@afslaw.com*
Paul Marshall Harris (BBO #223500)
*paul.harris@afslaw.com*
Devon C. Bodey (BBO #705146)
*Devon.bodey@afslaw.com*
**ARENTFOX SCHIFF LLP**
Prudential Tower
800 Boylston Street
Boston, MA 02199
Telephone:    617.973.6100
Facsimile:    617.367.2315

Dated:  May 27, 2025

2

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                          SUPERIOR COURT DEPARTMENT
                                        CIVIL ACTION NO. _____

|  |  |
|---|---|
| MIRAK CHEVROLET, INC., *Plaintiff*, | ) ) ) ) |
| v. | ) ) |
| GENERAL MOTORS LLC, *Defendant*, and | ) ) ) ) |
| MATTHEW MCGOVERN, *Interested Party/Defendant*. | ) ) ) ) |

**RECEIVED**    5/27/25    tc

## PLAINTIFF MIRAK'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION

Mirak Chevrolet, Inc., d/b/a Mirak Chevrolet (hereafter, "Mirak"), submits this Memorandum of Law in support of its Motion for Preliminary Injunction against Defendant General Motors LLC ("GM") and Interested Party/Defendant, Matthew McGovern (hereafter, "Mr. McGovern"), which seeks an Order temporarily staying the appointment of any new Chevrolet brand authorized motor vehicle dealer at 34 Bear Hill Road, Waltham, Massachusetts, (hereafter, the "Add Point Location") pending a final judgment of this matter (or agreed upon settlement / dismissal with prejudice by the parties).

## INTRODUCTION TO DEALER PROTEST RIGHTS

In Massachusetts, franchised motor vehicle dealers have statutory protest rights to protect them from unfair competition within their "relevant market areas," which is a geographic area defined by statute. M.G.L. c. 93B, §§ 1 and 6. A motor vehicle dealer is allowed to protest (*i.e.*, file litigation to enjoin the new appointment) when its franchise manufacturer seeks to grant or

1

enter into a franchise agreement that would "permit a new dealer to conduct its dealership operations from a site any boundary of which is situated within the relevant market area of an existing motor vehicle dealer representing the same line make." M.G.L. c. 93B, § 6(a)(1). For dealerships with property boundaries located within Middlesex County, the relevant market area is "the entire land mass encompassed in a circle with a radius of 8 miles from any boundary of the dealership." *See id.* at § 1 (definition of "relevant market area," or "RMA").[1] Any manufacturer which intends to enter into an additional franchise agreement shall, at least 90 days before granting the additional franchise, "send written notice of its intention to do so to each motor vehicle dealer with a franchise agreement covering the same line make into whose relevant market area the proposed new franchise will be located." M.G.L. c. 93B, § 6(c).

Within 45 days of receiving such written notice, the protesting dealer may object to the appointment of the new dealer by sending a protest in writing to the manufacturer. *Id.* at § 6(d). Once that written protest is sent, the dealer may file a complaint (within 90 days of receipt of the manufacturer's notice) to enjoin the proposed appointment. *Id.* at § 6(e). Under the statute, the manufacturer has the "burden to establish that a proposed appointment ... is for good cause...." *Id.* at § 6(h). It is within this legal framework that Mirak brings this action to protest the appointment of a new Chevrolet dealership within Mirak's RMA. As set forth below, this Court should issue a preliminary injunction temporarily enjoining the appointment of any new Chevrolet dealership operations from the Add Point Location because GM does not have "good cause" to add another intra-brand Chevrolet store into Mirak's RMA, and the appointment of such a dealership will cause Mirak irreparable harm.

---

[1] The relevant market area is an 8-mile radius for dealerships located within the counties of Bristol, Essex, Hampden, Middlesex, Norfolk, Plymouth and Suffolk. M.G.L. c. 93B, § 1 (definition of "relevant market area").

## MIRAK'S PROTEST OF GM'S NEW ADD POINT

Mirak has been an authorized Chevrolet dealership since 1936. *See* accompanying Affidavit of Robert A. Mirak, ¶ 2 (hereafter, the "Mirak Aff.")  Mirak is a family-owned business owned by the Mirak family who have operated the Chevrolet dealership in Arlington for eighty-nine (89) years. *Id.* at ¶ 8. Mirak is one of the oldest continuously operating Chevrolet dealerships in Massachusetts. In fact, Mirak has been the "face" of the Chevrolet brand in its relevant market area for eighty-nine (89) years. *Id.* at ¶ 3.

Mr. Robert Mirak, a third-generation dealer, currently oversees the dealership's operations as the "Dealer Operator" of the dealership. *Id.* at ¶¶ 6, 7. Mirak operates its Chevrolet dealership pursuant to a Dealer Sales and Service Agreement ("Dealer Agreement") with General Motors LLC ("GM"). *Id.* at ¶ 4. Mirak's Chevrolet dealership is located at 1125 Massachusetts Avenue, in Arlington, Massachusetts. *Id.* at ¶ 2. It currently employes 107 employees. *Id.* at ¶ 5.

On or about February 27, 2025, Mirak received a notice letter from Ms. Natalie Taylor, who is the current Zone Manger at GM for the dealership (hereafter, the "Notice Letter"). Mirak Aff., ¶ 18. A copy of the Notice Letter is attached as Exhibit 1 attached to the Mirak Aff.[2]  The Notice Letter informed Mirak that GM had made a "final decision to approve the establishment of Chevrolet operations" at 34 Bear Hill Road, in Waltham, Massachusetts (hereafter, the "Add Point Location"). *See* Exhibit 1. GM's Notice Letter informed Mirak that it would be appointing a new intra-brand competitor into Mirak's relevant market area. Mirak Aff., ¶ 21. Specifically, the proposed new Chevrolet store will be located approximately 5.6 miles away from Mirak's Chevrolet store as measured by air distance. *Id.* at ¶ 20. Although the Notice Letter does not

---

[2] Unless otherwise stated, all references to Exhibits herein refer to the Exhibits attached to the Mirak Aff.

AFSDOCS:302654921.2

specifically identify the name of the proposed new dealer, based upon ownership of the real estate, Mirak understands that Defendant Matthew McGovern is GM's dealer candidate for the add point.

To best respond to the Notice Letter, Mirak retained Mr. Edward Stockton, who is an economist from the Fontana Group. *Id.* at ¶ 25. Mr. Stockton is a retail automotive industry expert who is experienced at studying the impact of changes in dealer networks. *See* Affidavit of Edward M. Stockton in Support of Motion for Preliminary Injunction, filed herewith (hereafter, the "Stockton Aff.") Mr. Stockton's preliminary analysis concluded that local market conditions do not reliably support the addition of a new Chevrolet franchise within Mirak's relevant market area. *Id.* On April 9, 2025, Mirak (through its legal counsel) sent a letter to GM to protest the establishment of new Chevrolet dealership operations at the Add Point Location (hereafter, the "Protest Letter.") *Id.* at ¶ 24. A copy of Mirak's Protest Letter is attached as <u>Exhibit 2</u>. The parties have been unable to resolve this dispute and this protest action followed.

## **LEGAL ARGUMENT**

### I.    **APPLICABLE LEGAL STANDARDS IN DEALER ADD POINT DISPUTES**

To preserve a healthy level of competition in the market, and to protect consumers, the Massachusetts dealer protection statute, M.G.L. c. 93B, specifically allows for a franchised motor vehicle dealer to bring an action to enjoin the appointment of any new "same line make" (i.e., same vehicle brand) dealer into its RMA. M.G.L. c. 93B, § 6. Both the Legislature (in passing the dealer protection statute) and the Supreme Judicial Court (with its interpretation of the statute) have long recognized the importance of protecting a dealership's sales and service territory. For example, in *Tober Foreign Motors, Inc. v. Reiter Oldsmobile, Inc.*, 376 Mass. 313, 321 (1978), the Supreme Judicial court noted:

> Yet another technique with potentialities of unfairness is the granting of new franchises near established ones: having invested in his dealership, a dealer who has displeased the manufacturer, or who simply appears to be dispensable, finds his business turned into a losing venture overnight by the award of a new franchise around the corner, and, it may be, without any practical benefit to, or, indeed, with negative effects on, the buying public. In the attempt to regulate the granting of dealerships in territory already served, our statute .... finds some echo in the legislation of a number of other States.

*See id.* (describing the history of unfair acts and practices by vehicle manufacturers and upholding the constitutionality of Chapter 93B). The function of dealer protest rights is "to give manufacturers and dealers an opportunity to test, before capital is expended or damage done, the question whether a proposed new dealership unfairly poaches on an existing dealer's territory." *Richard Lundgren, Inc. v. Am. Honda Motor Co.,* 45 Mass. App. Ct. 410, 415–16 (1998). The statute is an important consumer protection act in the Commonwealth, as the protection of dealers also provides protections to consumers who rely upon local dealerships for sales and service. *Id.* at 319.

The dealer protection statute expressly allows a Court to issue an injunction to temporarily stay the appointment until trial of a protest action may be heard on the merits. M.G.L. c. 93B, §§ 6(a) and 15(a). To be entitled to injunctive relief, one must show that it has a likelihood of success on the merits of its claim and, without the requested injunction, risks suffering irreparable harm. *See Commonwealth v. Mass. CRINC*, 392 Mass. 79, 87 (1984). The Court then must balance this risk against the defendant's risk of irreparable harm and likelihood of success on the merits. *Id.* at 87-88. When that balance tips in favor of the moving party, the requested injunction should enter. *Packaging Indus. Group v. Cheney*, 380 Mass. 609, 617 (1980).

## II.    <u>MIRAK HAS A LIKELIHOOD OF SUCCESS ON ITS CLAIM.</u>

In its Complaint, Mirak has alleged: (i) violations of M.G.L. c. 93B, §§ 3(a), 6, and 15(c) (against Defendant GM) and (ii) declaratory judgment (against both GM and Mr. McGovern). At

Date Filed 5/27/2025 5:06 PM
Superior Court - Middlesex
Docket Number

trial, GM has the burden of establishing that it has "good cause" to add new Chevrolet dealership

operations at the Add Point Location.  In determining whether the proposed appointment or

relocation is for good cause, M.G.L. c. 93B, § 6(g) instructs the Court to consider "all pertinent

circumstances," that include, but are not limited to, the following factors:

1. whether the establishment of the additional franchise or relocation of the existing motor vehicle dealer appeared to be warranted by economic and marketing conditions including anticipated future changes;

2. the retail sales and service business transacted by the protesting motor vehicle dealer or dealers and other motor vehicle dealers of the same line make with a place of business in the relevant market area to be served by the additional franchise or proposed new location of an existing motor vehicle dealer during the 3-year period immediately preceding the notice as compared to the business available to them;

3. the investment necessarily made and obligations incurred by the protesting motor vehicle dealer or dealers to perform their obligations under existing franchise agreements;

4. the permanency of the investment of the protesting motor vehicle dealer or dealers;

5. whether it is beneficial or injurious to the public welfare for an additional franchise to be established or for the existing motor vehicle dealer to be relocated;

6. whether the protesting motor vehicle dealer or dealers and other motor vehicle dealers of the same line make with a place of business in the relevant market area to be served by the additional franchise or proposed relocating motor vehicle dealer are providing adequate competition and convenient consumer care for the motor vehicles of the same line make owned or operated by residents and persons with places of business in the relevant market area to be served by the additional franchise or proposed relocating motor vehicle dealer;

7. whether the protesting motor vehicle dealer or dealers and other motor vehicle dealers of the same line make with a place of business in the relevant market area to be served by the additional franchise or proposed relocating motor vehicle dealer have adequate motor vehicle sales and service facilities, equipment, vehicle parts and qualified personnel to reasonably provide for the needs of the consumers in the relevant market area to be served by the additional franchise or proposed relocating motor vehicle dealer; and,

8. whether the establishment of an additional franchise or relocation of an existing motor vehicle dealer would increase competition and therefore be in the public interest.

AFSDOCS:302654921.2

*See* M.G.L. c. 93B, § 6(g) (collectively hereafter, the "Good Cause Factors").

Mirak's claim to enjoin the new appointment will succeed for several reasons.  First, GM was required by statute to provide Mirak with written notice listing the "specific grounds forming the basis for the appointment," yet GM's stated grounds in its Notice Letter fail to demonstrate any "good cause" for a new Chevrolet dealer.  A comparison of GM's Notice Letter (Exhibit 1) against the statutory Good Cause Factors (listed above, *supra*) shows that GM has failed to undertake any meaningful study or analysis of the Good Cause Factors prior to moving forward with this appointment.

For example, the Notice Letter fails to provide Mirak with any specific market data concerning historical sales in the proposed relevant market area to be serviced by Mr. McGovern (hereafter, the "Add Point RMA," *i.e.*, the eight-mile radius around the Add Point Location.) Mirak Aff., ¶¶ 22-23.  The sales within the Add Point RMA are one of the "Good Cause Factors" to be evaluated by the Court, but GM does not provide any indication in its Notice Letter that this analysis was undertaken.  Instead, the Notice Letter vaguely refers to "market share" within the "Metro Boston Chevrolet market," and it is unclear from the letter what geographic area GM evaluated (if any) to support its decision to add a new Chevrolet dealership.  Exhibit 1.  However, the "Metro Boston Chevrolet market" is not the geographic area utilized by the dealer statute when determining whether there is "good cause" for a new add point.  The term "Metro Boston Chevrolet market" is vague and undefined in the Notice Letter (making it unnecessarily difficult if not impossible for Mirak to fully evaluate the purported grounds relied upon by GM).  The Notice Letter makes it clear that GM failed to properly analyze the Good Cause Factors prior to sending notice of the proposed appointment.  GM's Notice Letter is defective because it fails to sustain

7

Date Filed 5/27/2025 5:06 PM
Superior Court - Middlesex
Docket Number

GM's burden of illustrating "good cause" for the appointment. For this reason alone, Mirak has a likelihood of success on its claims to enjoin the appointment.

Second, Mirak will succeed on its claims to enjoin the proposed Chevrolet appointment because local market conditions do not reliably support the addition of a new Chevrolet dealership at the Add Point Location. Mirak Aff., ¶¶ 25-30; *see also*, Stockton Aff., ¶¶ 4 to 7. GM's reliance upon allegedly low Chevrolet brand market share performance in the "Metro Boston market area" to justify the new add point is misplaced and the product of assumptions, not sound analysis. *Id.* at ¶ 5. At trial, Mirak's expert will testify that any alleged low registration effectiveness in the "Metro Boston market area" is due to factors that are not under the control of the local dealer network, and therefore low registration effectiveness cannot reliably support "good cause" for a new add point. *Id.* at ¶ 6.

The addition of a new Chevrolet dealership at the Add Point Location will be materially detrimental to Mirak's sales, profitability, goodwill, customer relations, impact on the future growth of Mirak and Mirak's investment. Mirak Aff., ¶¶ 25-30; Stockton Aff., ¶ 7. It appears that GM did not take any of these factors into account before issuing the Notice Letter because it provided no information to Mirak on these issues. For these reasons alone, GM will be unable to meet its burden of showing "good cause" at trial and, therefore, Mirak has a likelihood of success on its claims.

### III.    WITHOUT AN INJUNCTION, MIRAK WILL SUFFER IRREPARABLE HARM.

To obtain injunctive relief, Mirak must show that without the requested injunction, it risks suffering irreparable harm. *See Commonwealth v. Mass. CRINC*, 392 Mass. 79, 87 (1984). In Massachusetts, "irreparable injury" is the preliminary injunction context means "an injury which cannot adequately be compensated for either by a later-issued permanent injunction, after full

8

adjudication on the merits, or by a later-issued damages remedy." *Get In Shape Franchise, Inc. v. TFL Fishers, LLC*, 167 F.Supp.3d 173, 202 (D. Mass. 2016). A plaintiff seeking injunctive relief need not show that denial of its relief will be fatal to its business, but rather, it is enough to show that its legal remedies are inadequate. *Id.* at 202.

The addition of a new Chevrolet dealership at the Add Point Location will be materially detrimental to Mirak's goodwill, customer relations, impact on the future growth of Mirak and Mirak's investment.  Mirak Aff., ¶¶ 25-30; Stockton Aff., ¶¶ 7-8. Customer goodwill is "a company's positive reputation in the eyes of customers or potential customers" and it "generated by repeat business with existing customers or by referrals to potential customers. *Id.* at 199, *citing N. Am. Expositions Co. Ltd P'ship v. Corcoran*, 452 Mass. 852 (2009). "Harm to goodwill, like harm to reputation, is the type of harm that is not readily measurable or fully compensable in damages, and for that reason, more likely to be found 'irreparable.'" *Get In Shape Franchise, Inc. v. TFL Fishers, LLC*, 167 F.Supp.3d at 202.

At this stage, the full impact of a new Chevrolet dealership appointment within Mirak's RMA is not readily measurable, thereby making it "irreparable." *Id.* GM has failed to provide any details in its Notice Letter as to how Mirak's market area will be changed after its proposed appointment. Mirak Aff., ¶ 23. However, Courts have generally held that the establishment of a competing business within an existing franchise market area will harm goodwill and cause irreparable injury. *Id.* at 203 (granting preliminary injunctive relief).

The addition of new intra-brand competition so close to the existing Mirak dealership will have a negative impact on the future value of Mirak's business goodwill in the event of a future sale. Mirak Aff., ¶ 28. The addition of a new Chevrolet dealership at the Add Point Location will also make it difficult for Mirak to retain its highly skilled employees, as the market for certain

9

dealership positions (such as service technicians) is highly competitive. Mirak Aff., ¶ 29. All of these factors are in favor of granting Mirak's Motion for preliminary injunctive relief.

GM has previously recognized that this market area surrounding Boston cannot support multiple Chevrolet points. For example, during the 2008 bankruptcy of GM's predecessor, General Motors Corporation (hereafter, "Old GM"), Old GM undertook the process of shutting down Chevrolet brand dealerships around Massachusetts (including the Chevrolet store previously operating in Cambridge, Massachusetts). In order to secure over $19 billion dollars in federal loans from the US Treasury Department, Old GM represented to Congress that a plan utilizing a shift to "smaller, more fuel-efficient cars" and "a reduction in the number of GM brand names and dealerships" was the key to future viability. *See generally*, *In re Motors Liquidation Co.,* 430 B.R. 65, 71 (S.D.N.Y. 2010) (describing Old GM's plans for viability during its bankruptcy). GM is now arguing the opposite. Without citing to any specific data, GM now believes that more dealerships will somehow increase its market brand share in the "Metro Boston area." However, at trial, Mirak's expert will demonstrate that GM's Chevrolet brand market share concerns cannot be remedied by adding more Chevrolet dealership locations.

GM knows this. GM now simply prefers to have Chevrolet brand representation west of Boston (along Route 95) instead of in Arlington, where Mirak has long been located. Notably, in 2023, GM asked Mirak to relocate its store from Arlington to an unsecured relocation point west of Boston. Mirak Aff., ¶¶ 10-17. This would have required Mirak to purchase new property along Route 95 at its own expense. Mirak Aff., ¶ 13. Mirak declined GM's request to relocate because it would be cost prohibitive to the Mirak family, given the price of commercial real estate along Route 95 (west of Boston). Mirak Aff., ¶ 16. The discussion during 2023 was not about adding a new store, but simply relocating Mirak to GM's preferred location. Mirak Aff., ¶ 17. When

Mirak declined to concede to GM's market desires, GM undertook the present plan to add new

representation into Mirak's RMA for the purpose of replacing Mirak in its long-standing location.

This is exactly the type of unfair "displacement" that Chapter 93B aims to protect

against. *Tober Foreign Motors, Inc.*, 376 Mass. at 321 (describing how a dealer "who simply

appears to be dispensable" can find his business turned into a "losing venture overnight by the

award of a new franchise around the corner."). Chapter 93B expressly allows for Mirak to

challenge this appointment for lack of good cause. M.G.L. c. 93B, § 6. Furthermore,

the preservation of Mirak's legitimate economic expectations pending the opportunity for trial is

a basis for granting preliminary injunctive relief. *See Edwin R. Sage Co. v. Foley*, 12 Mass. App.

Ct. 20 (Mass. App. Ct. 1981).

## IV.    THE BALANCE OF HARMS FAVORS ISSUING INJUNCTIVE RELIEF.

The balance of harms tips in favor of issuing the injunction to keep the status quo.

Keeping the "status quo" is in all parties' best interests, as it will prevent Mr. McGovern from

dedicating his real property GM's use prior to a determination as to whether the market can

properly support the new Chevrolet store. Even if GM or Mr. McGovern could craft some

theory as to how it might suffer some irreparable harm if an injunction enters, ultimately, "[w]hat

matters as to each party is not the raw amount of irreparable harm that party might conceivably

suffer, but rather the risk of [irreparable] harm ***in light of the party's chance of success on the***

***merits***." *Packaging Indus. Group*, 380 Mass. at 617 (emphasis added). The risk of irreparable

harm to Mirak without an injunction far outweighs the risk of harm to Defendants.[3]

---

[3] The proposed Add Point Location is not an existing dealership, but rather contains office type
buildings. There is no harm to GM or Mr. McGovern if the injunction is granted because this is
not a situation where a fully functional dealership is sitting empty. Any proposed new dealer at
this location would need to build a new facility.

11

The issuance of the injunction is expressly allowed by the dealer protection statute which provides Mirak with its protest rights. M.G.L. c. 93B, §§ 6 and 15. "If commerce is to function in our capitalistic system, entrepreneurs must play by the rules." *K-Mart Corp. v. Oriental Plaza, Inc.,* 875 F.2d 907, 916 (1st Cir. 1989) (upholding injunction which prohibited landlord from constructing new space in front of a K-Mark store). Here, the "rules" for the appointment of a new add point are prescribed by Chapter 93B, which expressly allows the parties to "test" the viability of the market through a protest action prior to allowing a new dealership to unfairly poach an existing market. *Richard Lundgren*, 45 Mass. App. Ct. at 415–16. These rules for new dealer appointment allow for a speedy trial of protest actions, which in in turn, balances the relevant impositions to all parties. For these reasons, the balance of harms tips in favor of issuing the injunctive relief.

Finally, allowing for the statutorily mandated "dealer protest process" play out in Court is in the public's best interest. In fact, one of the "Good Cause Factors" cited by the statute is whether the establishment of an additional franchise "would increase competition and therefore be in the public interest." M.G.L. c. 93B, § 6(g); *see also, Tober Foreign Motors, Inc.*, 376 Mass. at 321 (reiterating the Legislature's belief that consumers would be hurt in the long run by tolerating the manufacturers' unchecked power to control the vehicle market in Massachusetts without regulation).

## CONCLUSION

Mirak has the statutory right to protest GM's proposed addition of a new Chevrolet brand dealership within Mirak's RMA. Mirak has demonstrated a likelihood of success on the merits, and the potential for irreparable harm if the injunction is denied. The balance of harms tips in favor of preserving the "status quo" and in favor of issuing the temporary injunction. Finally, it

12

Date Filed 5/27/2025 5:06 PM
Superior Court - Middlesex
Docket Number

is in the public's best interest to allow the statutory protest process to play out as designed. For

these reasons, this Court should grant Mirak's Motion for Preliminary Injunctive Relief.

Respectfully submitted,                        **PLAINTIFF MIRAK CHEVROLET,
                                               INC.,
                                               By its Attorneys,**

                                               */s/ Sara D. Judge*
                                               Sara D. Judge (BBO #669108)
                                               *sara.judge@afslaw.com*
                                               Paul Marshall Harris (BBO #223500)
                                               *paul.harris@afslaw.com*
                                               Devon C. Bodey (BBO #705146)
                                               *Devon.bodey@afslaw.com*

                                               **ARENTFOX SCHIFF LLP**
                                               Prudential Tower
                                               800 Boylston Street
                                               Boston, MA  02199
                                               Telephone:    617.973.6100
Dated:  May 27, 2025                           Facsimile:    617.367.2315

AFSDOCS:302654921.2

Date Filed 5/27/2025 5:06 PM
Superior Court - Middlesex
Docket Number

7

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                      SUPERIOR COURT DEPARTMENT
                                    CIVIL ACTION NO. _____

|  |  |
|---|---|
| MIRAK CHEVROLET, INC., )<br>      *Plaintiff,* )<br>  )<br>v. )<br>  )<br>GENERAL MOTORS LLC, )<br>      *Defendant,* )<br>and )<br>  )<br>MATTHEW MCGOVERN, )<br>      *Interested Party/Defendant.* ) | **RECEIVED**   5/27/25   tc |

**AFFIDAVIT OF EDWARD M. STOCKTON IN SUPPORT OF PLAINTIFF MIRAK'S
MOTION FOR PRELIMINARY INJUNCTION**

      I, Edward M. Stockton, hereby depose and state:

      1.     I am the Vice President and Director of Economic Services at The Fontana Group,

Inc. The Fontana Group provides economic consulting services and expert testimony regarding

the retail motor vehicle industry throughout the United States and Canada. I am submitting this

Affidavit in support of Plaintiff Mirak Chevrolet, Inc.'s ("Mirak's") Motion for a Preliminary

Injunction.

      2.     I have been retained by Mirak and its legal counsel to analyze various market

factors relevant to GM's proposed addition of a new Chevrolet brand dealership at 34 Bear Hill

Road, Waltham, Massachusetts (hereafter, the "Add Point Location.") I have also been retained

to analyze GM's specific grounds forming its basis for the appointment as articulated in GM's

letter to Mirak dated February 27, 2025 (the "Notice Letter").

1

3.      The scope of my engagement and testimony may be expanded depending on information and data later produced in this litigation.  However, to date, I have performed a preliminary investigation of GM's claims that Chevrolet brand market share in the "Metro Boston Chevrolet market" (a terms utilized by GM in its Notice Letter) justifies the appointment of a new Chevrolet dealer at the Add Point Location.

4.      It is my opinion that local market conditions do not reliably support the need for an additional Chevrolet franchise at the Add Point Location.

5.      GM's reliance upon allegedly low Chevrolet brand market share performance in the "Metro Boston area" to justify the new add point is misplaced and the product of assumptions, not sound analysis.  Much more evidence exists that the allegedly low registration effectiveness in the "Metro Boston area" is attributable to factors not under the control of the local dealer network, and therefore the low registration effectiveness does not reliably provide good cause to add a new Chevrolet franchise at the Add Point Location.

6.      At trial, I expect to demonstrate that factors outside the control of the local dealership network and/or manufacturer can explain most if not all of any alleged deficient local brand performance.

7.      Furthermore, my preliminary analysis indicates that the proposed add point will have a materially negative impact on the market size and sales of Mirak.

[Signature Page to Follow]

2

Signed under the pains and penalties of perjury this 27th day of May 2025.


/s/ Edward M. Stockton
Edward M. Stockton

Date Filed 5/27/2025 5:06 PM
Superior Court - Middlesex
Docket Number

8

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                          SUPERIOR COURT DEPARTMENT
                                        CIVIL ACTION NO. _____

_____
                                )
MIRAK CHEVROLET, INC.,          )
            *Plaintiff*,        )
                                )
v.                              )
                                )
GENERAL MOTORS LLC,             )
            *Defendant,*        )
and                             )        **RECEIVED**    5/27/25    tc
                                )
MATTHEW MCGOVERN,               )
    *Interested Party/Defendant.* )
_____)

### AFFIDAVIT OF ROBERT A. MIRAK IN SUPPORT OF PLAINTIFF MIRAK'S MOTION FOR PRELIMINARY INJUNCTION

I, Robert A. Mirak, hereby depose and state:

1.      I am the President of Mirak Chevrolet, Inc. ("Mirak") and I submit this affidavit in support of Mirak's Motion for Preliminary Injunction (the "Motion") in the above-captioned dealer protest litigation.

2.      Mirak has been an authorized Chevrolet dealership since 1936.  Mirak operates its Chevrolet dealership at 1125 Massachusetts Avenue, in Arlington, Massachusetts.

3.      Mirak has been the "face" of the Chevrolet brand in the Relevant Market Area for eighty-nine (89) years.

4.      Mirak operates its Chevrolet dealership pursuant to a Dealer Sales and Service Agreement ("Dealer Agreement") with General Motors LLC ("GM").

5.      Mirak currently employs 107 employees.

1

AFSDOCS:302663714.2

6.    In addition to being the President of Mirak, I am also designated as the "Dealer Operator" under the Dealer Agreement. As Dealer Operator, I am responsible for managing and overseeing all Chevrolet dealership operations.

7.    I have been the "Dealer Operator" for the past 18 years.

8.    Mirak is a family-owned business owned by the Mirak family who have operated the Chevrolet dealership at this location in Arlington for the eighty-nine (89) years that the Chevrolet dealership has been in operation.

9.    Mirak's Chevrolet dealership is operated on family-owned land in Arlington, Massachusetts.

10.    On March 6, 2023, I met with GM representative Ms. Dara Freeman, who at the time was the Zone Manager for Boston/New England.

11.    In advance of that meeting, Ms. Freeman told me that she was bringing David Nicholson to the meeting.  At that time, Mr. Nicholson also worked for GM in the Dealer Network department. Ms. Freeman stated that she was bringing Mr. Nicholson to Mirak to "discuss what's manifesting in the market."

12.    Prior to the March 2023 meeting, I had never met Mr. Nicholson.

13.    During this March 2023 meeting, Mr. Nicholson asked me if I would be interested in relocating Mirak's Chevrolet operations from Arlington, Massachusetts to a location west of Boston.  I was told by Mr. Nicholson that the relocation would require Mirak to relocate and purchase a new parcel of real estate along Route 95 at its own expense.

14.    Mr. Nicholson further stated that GM desired to have a Chevrolet store located near the former Muzi Chevrolet dealership (which had permanently closed in November 2021).

2

15.    Muzi Chevrolet was formerly located at 56 TV Place (just off Route 95) in Needham Heights, Massachusetts, on real property that is almost 9 miles away from Mirak in Arlington.

16.    Relocating Mirak's Chevrolet dealership from Arlington to the Needham Heights open point area would be cost prohibitive for the Mirak family, given the price of commercial real estate along Route 95. It would also require Mirak to move its Chevrolet operations away from Mirak's Hyundai dealership operations, which are located next door to Mirak Chevrolet.

17.    It was my understanding from Mr. Nicholson that GM desired to replace the Muzi Chevrolet dealership which had closed in Needham Heights. We did not discuss the addition of any Chevrolet dealership into Mirak's market area.

18.    On or about February 27, 2025, I received a notice letter from Ms. Natalie Taylor, who is Mirak's current Zone Manger at GM (hereafter, the "Notice Letter"). A copy of the Notice Letter is attached as **Exhibit 1**.

19.    The Notice Letter informed me that GM had made a "final decision to approve the establishment of Chevrolet operations" at 34 Bear Hill Road, in Waltham, Massachusetts (hereafter, the "Add Point Location").

20.    GM's proposed Add Point Location is approximately 5.6 miles away from Mirak's Chevrolet store as measured by air distance.

21.    GM's proposed Add Point Location is within Mirak's relevant market area.

22.    The Notice Letter contains 9 bullet points which purport to be the "specific grounds forming the basis for GM's decision" to approve a new Chevrolet dealership at the Add Point Location in Mirak's Relevant market Area. Although these bullet points refer to "market share," the Notice Letter did not provide Mirak with any of the backup market share data to support GM's decision.

3

23.     In addition, the Notice Letter does not describe what changes (if any) would be made by GM to Mirak's market area after the opening of the new Chevrolet dealership at the Add Point Location.

24.     On April 9, 2025, Mirak (through its legal counsel) sent a letter to GM to protest the establishment of new Chevrolet dealership operations at the Add Point Location (hereafter, the "Protest Letter.") A copy of Mirak's Protest Letter is attached as **Exhibit 2**.

25.     To best respond to GM's Notice Letter, and for the purposes of this protest litigation, Mirak retained Mr. Edward Stockton, who is an economist from the Fontana Group.
Mr. Stockton is a retail automotive industry expert and is experienced at studying the impact of changes in dealer networks.

26.     Mr. Stockton performed a preliminary analysis and concluded that local market conditions do not support the addition of a new Chevrolet franchise at the Add Point Location.

27.     The addition of a new Chevrolet dealership at the Add Point Location will be materially detrimental to Mirak's sales, profitability, goodwill, customer relations, impact on the future growth of Mirak and Mirak's investment.

28.     For example, the establishment of the new Chevrolet dealership at the Add Point Location will significantly harm the goodwill of Mirak with its customers, its employees, and with potential future buyers of the dealership.

29.     The addition of a new Chevrolet dealership at the Add Point Location will make it difficult for Mirak to retain its highly skilled employees, as the market for certain dealership positions (such as service technicians) is highly competitive.

30.     However, an exact calculation of the harm to be suffered by Mirak is difficult to measure at this time.

4

Date Filed 5/27/2025 5:06 PM
Superior Court - Middlesex
Docket Number

Signed under the pains and penalties of perjury this 21st day of May, 2025.

Robert A. Mirak
Dealer Operator
Mirak Chevrolet, Inc.

5

# EXHIBIT 1

Date Filed 5/27/2025 5:06 PM
Superior Court - Middlesex
Docket Number

Mar  3 2025 03:05pm                    P001/002



**FEDERAL EXPRESS: 772369801556**

February 27, 2025

Robert A. Mirak, Dealer Operator
Mirak Chevrolet, Inc.
1125 Massachusetts Ave.
Arlington, MA 02476

Dear Mr. Mirak:

General Motors LLC ("GM") has made a final decision to approve the establishment of Chevrolet dealership operations at 34 Bear Hill Road, Waltham, MA 02451 (the "Location"). Chevrolet dealership operations will not be established at the Location until at least 90 days after you receive this notice.

Based upon information known by GM at the time that this notice is being provided, the specific grounds forming the basis for GM's decision to approve the establishment of Chevrolet dealership operations at the Location are as follows:

1.  There were 15 Chevrolet rooftops in the Metro Boston Chevrolet market in 2008 and there are 10 today. Competing brands such as Ford, Toyota and Honda each have 14 or more dealership rooftops in the metro Boston market.

2.  The 10-year market share high for Chevrolet in the Metro Boston Chevrolet market was 6.4% in 2016. Chevrolet's market share declined to 4.6% in 2021 and remained at 4.6% through September 2024.

3.  For comparison, Chevrolet's national market share continues to grow from 9.1% in 2021 to 10.0% through September 2024.

4.  In 2022, Chevrolet's sales performance in Boston ranked 103rd out of the top 116 metro markets nationally with registration losses exceeding 2,800 and in 2023 Chevrolet's sales performance in Boston ranked 101st out of the top 116 metro markets nationally with registration losses exceeding 3,400 in 2023.

5.  GM does not believe that the existing Chevrolet dealers in the Metro Boston Chevrolet market are taking advantage of the opportunities that exist within the market and that the establishment of a Chevrolet dealership at the Location is warranted by economic and marketing conditions including anticipated future changes.

6.  GM believes that the addition of a Chevrolet dealership at the Location will increase competition and therefore be in the public interest.

7.  Muzi Chevrolet was formerly located in Needham Heights, MA and closed in November 2021. Since Muzi Chevrolet closed, Chevrolet's Retail Registration Index ("RRI") in the Needham Heights open point market area has declined from 77.1 to 60.8 through September 2024.

8.  Mirak Chevrolet is the only existing Chevrolet dealer in the relevant market area to be served by an additional Chevrolet dealership located at the Location. GM believes that the retail sales and service business transacted by Mirak Chevrolet in the three years preceding this notice supports the addition of a new Chevrolet dealership at the Location.

---

Date Filed 5/27/2025 5:06 PM
Superior Court - Middlesex
Docket Number

9.    GM does not believe that there is adequate competition and convenient customer care
for Chevrolet vehicles in the Metro Boston Chevrolet market and in particular for
Chevrolet vehicles owned or operated by residents and persons with places of business
in the relevant market area to be served by an additional dealer at the Location.

If Mirak Chevrolet, Inc. objects to the establishment of Chevrolet dealership operations at the Location, any
protest should be sent to 30400 Van Dyke Ave., Floor 6, Warren, MI 48093.

This notice is provided pursuant to Mass. Gen. Laws ch. 93B, § 6.

Sincerely,

Natalie Taylor
Zone Manager
General Motors LLC

c: Dan Adamcheck, Chevrolet Regional Director
   Dealer Contractual Group

# EXHIBIT 2

**FedEx** ®

April 10, 2025

Dear Customer,

The following is the proof-of-delivery for tracking number: 287386143474

| Delivery Information: | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | Residence |
| Signed for by: | Signature not required | Delivery Location: | |
| Service type: | FedEx Standard Overnight | | |
| Special Handling: | Deliver Weekday | | WARREN, MI, |
| | | Delivery date: | Apr 10, 2025 09:22 |

| Shipping Information: | | | |
|---|---|---|---|
| Tracking number: | 287386143474 | Ship Date: | Apr 9, 2025 |
| | | Weight: | 0.5 LB/0.23 KG |
| Recipient: | | Shipper: | |
| WARREN, MI, US, | | Boston, MA, US, | |

Reference                    045921.00006.5691

Proof-of-delivery details appear below; however, no signature is available for this FedEx Express shipment
because a signature was not required.

Thank you for choosing FedEx

Date Filed 5/27/2025 5:06 PM
Superior Court - Middlesex
Docket Number

# ArentFox
# Schiff

**ArentFox Schiff LLP**
Prudential Tower
800 Boylston Street
Boston, MA 02199

617.973.6100    **MAIN**
617.367.2315    **FAX**

afslaw.com

April 9, 2025

**Sara D. Judge**
Partner
617.973.6184    **DIRECT**
Sara.judge@afslaw.com

**OVERNIGHT DELIVERY**
**FEDERAL EXPRESS**

Ms. Natalie Taylor
Zone Manager
General Motors LLC
30400 Van Dyke Ave., Floor 6
Warren, MI 48093

**Reference Number**
045921.00006

> **Re:    Mirak Chevrolet, Inc.'s M.G.L. c. 93B, § 6 Protest and**
> **M.G.L. c. 93B, § 15(b) Request for Meet and Confer**

Dear Ms. Taylor:

I am writing on behalf of my client, Mirak Chevrolet, Inc. ("Mirak"), in response to General Motors, LLC's ("GM") February 27, 2025 letter (the "Notice") advising that it has decided to approve the establishment of new Chevrolet dealership operations at 34 Bear Hill Road, Waltham, MA 02451 (the "Location"). In that regard, pursuant to Massachusetts General Laws c. 93B, § 6(d), Mirak is protesting the establishment of a new Chevrolet dealership at the Location for the reasons specified below. Please direct all future correspondence regarding this matter to the undersigned.

As it relates to the protest, GM's Notice is dated February 27, 2025, so Mirak's written notice of protest herein is due on or before April 13, 2025. There is no question that Mirak has timely protested GM's Notice within 45 days thereafter, and Mirak has preserved all protest rights it has pursuant to M.G.L. c. 93B, *et seq.*

As an initial matter, I would like to note that Mirak Chevrolet has been a dealer since the early 1930s. The Mirak family has been a long supporter of GM and Chevrolet and has invested heavily in the Chevrolet brand to perform its obligations under its dealer agreement. Such investments are permanent in nature, as they include real estate and facilities. *See* M.G.L. c. 93B, § 6(g)(3) and (4). Further, there is ample competition in the relevant market area and convenient customer care. *Id.* at § 6(g)(8).  For these reasons, among others identified below, Chevrolet lacks good cause to add a franchise at the Location.

Under M.G.L. c. 93B, § 6, GM's Notice was required to list the specific grounds forming the basis for the appointment… based upon information known by the manufacturer at the time the notice is sent.  In that regard, GM's Notice identifies limited factors (without supporting data)

AFSDOCS:302136082.1

**Smart In**
**Your World®**

Date Filed 5/27/2025 5:06 PM
Superior Court - Middlesex
Docket Number

# ArentFox
# Schiff

Natalie Taylor
April 9, 2025
Page 2

that GM relies upon to support its position that an additional franchise at the Location is warranted, including: (i) a reduced number of rooftops in the Metro Boston market; (ii) low market share and sales performance at the brand level in the Metro Boston market; (iii) a need for dealers to seize opportunities within the market and for competition; (iv) the closure of a former Chevrolet dealership in Needham Heights, MA; (v) Mirak's retail sales and service business transacted in the three years preceding the Notice; and (vi) GM's belief that there is inadequate competition and a lack of convenient customer care for those located in the relevant market area. Mirak disputes that the factors identified by GM in its Notice support good cause for the new add point. Furthermore, GM's Notice fails to show good cause under the statutory criteria set forth in M.G.L. c. 93B, § 6 (g).

Mirak is protesting the addition of a Chevrolet franchise at the Location, which is within Mirak's relevant market area ("RMA"), *i.e.*, within 8 miles from the boundary of the dealership. M.G.L. c. 93B, § 1(1). GM lacks good cause based on the factors it relies upon to grant or enter into an additional franchise agreement at the Location. Further, the granting or entering into an additional franchise agreement at the Location would be in bad faith or is arbitrary or unconscionable, in violation of Massachusetts law. In that regard, Mirak protests GM's granting or entering into a franchise agreement for Chevrolet dealership operations at the Location because based on local demographic and market conditions, there is strong empirical support that any "underperformance" in Chevrolet's market share measurement is a result of factors outside of dealer network control and will not be remedied by adding a franchise at the Location. M.G.L. c. 93B, § 6 (g)(1). Further, upon review, Mirak has determined that there would be a material, negative impact on it if the additional franchise were put in place at the Location.

To evaluate the proposed add point, Mirak analyzed Chevrolet's brand market share as compared to state average. Then, Mirak evaluated local demographic and market factors to determine if any market share deficit is attributable to factors outside the control of the dealer network and/or GM/Chevrolet. Mirak also evaluated the potential impact on it if a franchise is established at the Location, as well as the difference in the flow-of-trade based on the Location as compared to Mirak's location. Finally, Mirak evaluated the impact GM's discontinuance of the Chevrolet Bolt, and its reduction of Chevrolet dealerships and declining Chevrolet sales nationwide to determine their impact on Chevrolet's market share, particularly in Mirak's RMA. After evaluating these factors, as described in further detail below, Mirak finds that local market conditions do not support the addition of a Chevrolet franchise at the Location, and that the proposed addition of a franchise at the Location will have a material negative impact on the market size and sales of Mirak Chevrolet. As such, Chevrolet does not have good cause to enter into a franchise agreement at the Location, and entering into such an agreement would be in bad faith or arbitrary or unconscionable.

AFSDOCS:302136082.1

# ArentFox
# Schiff

GM's reliance upon alleged poor market share performance to justify this add point is misplaced. Although initial analysis implies that Chevrolet brand market share is low in the local area, such low registration effectiveness is due to factors not under the control of the local dealer network and/or manufacturer, and therefore the low registration effectiveness does not provide good cause to add a franchise at the Location. Various demographic and market variables provide statistical support for this position. By adjusting registration effectiveness based on such variables, Chevrolet is above 100% in all areas, other than that of the proposed Location. As such, the addition of a Franchise at the Location is not necessary based on such analysis.

Simply stated, the establishment of an additional Chevrolet point is not warranted by economic and marketing conditions within the RMA. This is especially true during the current uncertain market, where consumers are berated with news of proposed tariffs and threats of recession. Any supposed "brand expansion" that GM thinks will arise from an additional point will not offset the harm to the existing dealer network.

GM also points to the fact that there was a dealer formerly at Needham Heights as a basis to support the addition of a franchise at the Location. However, according to M.G.L. c. 93B, § 6(b)(2), GM is prohibited from appointing a successor motor vehicle dealer on these grounds because the Location is more than 2 miles away from Muzi Chevrolet's location, and it has been more than one year since Muzi Chevrolet ceased operations. The closure of Muzi Chevrolet does not provide a basis to add a franchise at the Location.

In addition to these market factors and the cessation of operations at Muzi Chevrolet not providing bases for the add-point, the impact of the proposed franchise on Mirak also supports this conclusion. By analyzing change in brand registrations in the local area (based upon drive distance and S&P segmentation), Mirak has determined that it could see a reduction of approximately 29% resulting from the proposed additional franchise. By employing a gravity model, Mirak has determined that it could see a reduction of approximately 14%. In either event, such a reduction in the size of the market facing Mirak would have a materially adverse impact on Mirak.[1] When translated to estimated lost sales opportunities, Mirak estimates a loss of sales and profit contribution totaling 10% or more, which would cause an even larger reduction in Mirak's net profit. Such a result does not support good cause, but rather, would constitute bad faith and is unconscionable, in direct violation of M.G.L. c. 93B, § 6.

---

[1] We estimate that Mirak's AGSSA will be reduced by approximately 29% based a method very similar to GM's methods. If GM were adding those tracts, it would ideologically assume, under RSI, that Mirak's sales should increase proportionally with the AGSSA increase. However, here, we know from dozens of add point litigations that GM will likely now assert that the proposed add point would not lead to an expectation that Mirak will lose sales. GM has presented and Mirak is aware of no sound basis to expect that the add point would be anything other than materially detrimental to Mirak's sales, profitability, and investment.

AFSDOCS:302136082.1

Date Filed 5/27/2025 5:06 PM
Superior Court - Middlesex
Docket Number

# ArentFox
# Schiff

Natalie Taylor
April 9, 2025
Page 4

In addition to evaluating market factors and the potential impact on Mirak if the proposed franchise were allowed at the Location, Mirak also evaluated other issues that factor into Mirak's performance over the past three years. For one, Chevrolet made the decision to discontinue sales of the Chevy Bolt. At the time that occurred, Mirak had over 400 orders for which it had taken deposits. GM unilaterally cancelled those orders. As a result, Mirak's Nationwide Bolt sales dropped from a substantial 143 in 2023 to 0 in 2024. This is clearly a GM-caused issue, not a Mirak, or dealer network issue. These lost sales would be coupled with losses Mirak would feel by the addition of a franchise at the Location. Such a result is unacceptable to Mirak and a violation of M.G.L. c. 93B.

Beyond discontinuing a popular model vehicle for the RMA and unilaterally cancelling orders for same, GM's reliance on a lack of franchises in Massachusetts as grounds to put a new franchise at the Location is not credible . It was GM that took it upon itself in 2008/2009 to reduce the number of Chevrolet franchises in the state. At that time, GM insisted that a reduction in Chevrolet franchises was needed to boost throughput. During its bankruptcy proceedings, GM justified its decision to take millions of dollars in loans from the Federal government based upon promises that a more consolidated dealer network would improve profitability for the remaining dealers, thereby increasing each dealer's ability to perform more effective marketing. GM claimed that a reduction of rooftops would result in a stronger dealer network, especially in metro markets.  GM knows full well that adding another dealer into this metro market will negatively impact Mirak's new vehicle sales and its profitability.

Now, GM is attempting to rely on a lack of franchises to support adding one at the Location. GM cannot have it both ways. The simple fact of the matter is that Chevrolet, as a brand, simply has not returned to pre-2009 levels that GM targeted. This is not a Mirak issue, or dealer-level issue, and does not support the addition of a franchise at the Location.

Mirak is confident that its preliminary analysis of this issue supports its position that market conditions do not support the addition of a Chevrolet franchise at the Location. Furthermore, the addition of a Chevrolet franchise at the Location will have a material negative impact on the market size and Mirak's sales, also in violation of M.G.L. c. 93B. As such, GM does not have good cause to establish Chevrolet dealership operations at the Location, and any such establishment of a dealership thereon will be done in bad faith or will be arbitrary or unconscionable.

**Mirak hereby demands that GM withdraw its Notice dated February 27, 2025 and further confirm in writing that it will not proceed with this proposed add-point.  If GM intends to proceed with establishing Chevrolet dealership operations at the Location in spite of this protest, Mirak hereby demands a meet and confer in accordance with M.G.L. c. 93B, § 15(b) on or before April 25, 2025.**

AFSDOCS:302136082.1

Date Filed 5/27/2025 5:06 PM
Superior Court - Middlesex
Docket Number

# ArentFox
# Schiff

Natalie Taylor
April 9, 2025
Page 5

This Protest is based upon information known and available to Mirak at this time, in light of the grounds set forth in GM's Notice. Nothing herein shall be construed to limit Mirak's ability to raise additional grounds for protest should addition information become available. Mirak reserves all rights, claims, and defenses.

We look forward to your response to this protest.

Very truly yours,

Sara D. Judge

AFSDOCS:302136082.1

Date Filed 5/27/2025 5:06 PM
Superior Court - Middlesex
Docket Number

5

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                                    SUPERIOR COURT DEPARTMENT
                                                 CIVIL ACTION NO. 25CV 1311

MIRAK CHEVROLET, INC.,            )
            *Plaintiff,*          )
                                  )
v.                                )
                                  )
GENERAL MOTORS LLC,               )
            *Defendant,*          )         **RECEIVED**   5/27/25        tc
and                               )
                                  )
MATTHEW MCGOVERN,                 )
            *Interested Party/Defendant.*  )

**EMERGENCY EX PARTE MOTION BY PLAINTIFF
FOR SHORT ORDER OF NOTICE**

Plaintiff Mirak Chevrolet, Inc. ("Mirak") hereby requests that this Court grant an

Emergency Ex Parte Motion for Short Order of Notice for an expedited hearing on Mirak's Motion

for Preliminary Injunction. As grounds therefor, Mirak states that Defendant General Motors LLC

("GM") has given written notice to Mirak of GM's intention to appoint a new franchise dealership

conducting Chevrolet sales and service operations at a location that is within Mirak's relevant

market area. Co-Defendant Matthew McGovern is the proposed dealer appointee. Under M.G.L.

c. 93B, §§ 6 and 15, Mirak has standing to protest this appointment and may seek an order both

temporarily and permanently enjoining the new dealer appointment.

The Short Order of Notice is sought to minimize any delay in having the Motion for

Preliminary Injunction heard by this Court. It is important for Mirak's Motion for Preliminary

Injunction to be heard as soon as possible because there is a risk that GM will sign a new dealer

*After review, motion allowed. Hearing to commence 6/18/25 @ 2:00 p.m. in Room 740*

*(Sisitsky J.)*   *Attest:* [signature]

Date Filed 5/27/2025 5:06 PM
Superior Court Middlesex
Docket Number

3

# COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                                          SUPERIOR COURT DEPARTMENT
                                                       CIVIL ACTION NO. 25CV1311

MIRAK CHEVROLET, INC.,                     )
        *Plaintiff,*                       )
                                           )
v.                                         )
                                           )
GENERAL MOTORS LLC,                        )
        *Defendant,*                       )        **RECEIVED**    5/27/25    tc
and                                        )
                                           )
MATTHEW MCGOVERN,                          )
        *Interested Party/Defendant.*      )
                                           )

## MOTION OF THE PLAINTIFF FOR SERVICE OF PROCESS OTHER THAN BY A SHERIFF OR HIS DEPUTY

Pursuant to the provisions of Rule 4(c) of the Massachusetts Rules of Civil Procedure, the plaintiff Mirak Chevrolet, Inc. ("Mirak") respectfully moves that this Court authorize service of the Summons, Civil Action Cover Sheet, Complaint, Motion for Preliminary Injunction (and all related motion papers, including any orders for short notice) be made upon the Defendants other than by a Sheriff or his Deputy, and to permit said service to be made by **Dewsnap & Associates, LLC,** of **92 State Street, Boston, MA 02109,** who are above the age of 19, experienced in the service of process, and have no interest in this case.

As grounds for this motion, Plaintiff Mirak states that service in this manner would appear to be the most efficient and effective means of facilitating the giving of notice to the Defendants.

*2025 May 28*

*After review, motion allowed*

*Attest: [signature]*

*(Sisitsky)*

1

Date Filed 5/27/2025 5:06 PM
Superior Court - Middlesex
Docket Number

- 4

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                                  SUPERIOR COURT DEPARTMENT
                                                CIVIL ACTION NO. 25CV1311

MIRAK CHEVROLET, INC.,          )    Middlesex, ss.          Superior Cr.
         *Plaintiff,*           )    The within matter is set down for hearing on
                                )    *June 18, 2025* in Courtroom
v.                              )    *740* at *2:00*
                                )    *Catherine Diederms*
GENERAL MOTORS LLC,             )
         *Defendant,*           )    Assistant Clerk
and                             )    *Sisitsky*    RECEIVED    5/27/25    tc
                                )
MATTHEW MCGOVERN,               )
         *Interested Party/Defendant.*  )
                                )

## PLAINTIFF MIRAK'S MOTION FOR PRELIMINARY INJUNCTION

Mirak Chevrolet, Inc., d/b/a Mirak Chevrolet (hereafter, "Mirak"), respectfully submits this Motion for Preliminary Injunction against Defendant General Motors LLC ("GM") and Interested Party/Defendant, Matthew McGovern (hereafter, "Mr. McGovern"), which seeks an Order temporarily staying the appointment of any new Chevrolet brand authorized motor vehicle dealer at 34 Bear Hill Road, Waltham, Massachusetts, (hereafter, the "Add Point Location") pending a final judgment of this matter (or agreed upon settlement / dismissal with prejudice by the parties.

Mirak is a duly authorized Chevrolet dealer which operates pursuant to its Dealer Sales and Service Agreement with Defendant GM. GM has given written notice to Mirak that it intends to appoint a new franchised Chevrolet dealer within Mirak's relevant market area. The Massachusetts dealer protection statute expressly allows Mirak to protest this new appointment. In addition, the statute allows this Court to issue an injunction to temporarily stay the appointment until trial of a protest action may be heard on the merits. M.G.L. c. 93B, §§ 6(a) and 15(a).

1

| SUMMONS AND ORDER OF NOTICE | DOCKET NUMBER<br><br>**2581CV01311** | **Trial Court of Massachusetts**<br><br>**The Superior Court** |
|---|---|---|

| CASE NAME:<br><br>**Mirak Chevrolet, Inc. vs. General Motors LLC et al** | Michael A. Sullivan, Clerk of Court<br>Middlesex County |
|---|---|

| To:<br><br>**General Motors LLC** | COURT NAME & ADDRESS<br><br>Middlesex County Superior Court - Woburn<br>200 Trade Center<br>Woburn, MA 01801 |
|---|---|

To the above named defendant(s):

You are hereby summoned and required to serve upon:

> **Paul Marshall Harris, Esq.**
> **ArentFox Schiff**
> **800 Boylston St**
> **32nd Floor**
> **Boston, MA 02199**

an answer to the complaint which is herewith served upon you. This must be done within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, Judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this Court at Woburn either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

**WE ALSO NOTIFY YOU** that application for a Preliminary Injunction has been made in said action, as it appears in the complaint. A hearing on this matter has been scheduled for:

> **Date: 06/18/2025**
>
> **Time: 02:00 PM**
>
> **Event Type: In Person**

**Session/ Courtroom Location:**

> **Courtroom 740**

at which time you may appear and show cause why such application should not be granted.

| DATE ISSUED<br><br>**05/29/2025** | CHIEF JUSTICE OF THE SUPERIOR COURT<br>Witness:<br>**Hon. Michael D Ricciuti** | ASSOCIATE JUSTICE<br><br>**Hon. Adam Sisitsky** | ASSISTANT CLERK<br><br>X |
|---|---|---|---|

| **RETURN OF SERVICE** |
|---|

I hereby certify and return that on _____, I served a copy of this summons, together with a copy of the Complaint.

PARTY NAME:

X

Date/Time Printed: 05-29-2025 12:43:58                                                                                                    SCV027i 09/2024

PROOF OF SERVICE OF PROCESS (2581CV01311)

**MIRAK CHEVROLET, INC. VS GENERAL MOTORS LLC and MATTHEW MCGOVERN**

I hereby certify and return that on **June 5, 2025 @ 2:23 pm,** I served a copy of the summons and order of notice together with a copy of the complaint in this action, upon the within named defendant, in the following manner (See Mass. R. Civ. P. 4(d) (1-5): **By delivering "in hand" upon Jim DiVincenzo, Process Specialist, CORPORATION SERVICE COMPANY, RESIDENT AGENT, for General Motors LLC at 84 State Street, Boston, MA 02109.**

**William H Dewsnap III**
**Special Process Server & Disinterested Person**

Dated:    June 06, 2025          Signature:

N. B.        To Process Server:

Please enter the date that you made service on the defendant in this box - Both on the original summons and on the copy of the summons served on the defendant.

June 5, 2025

Documents Served: 1. Complaint 2. Civil Action Cover Sheet 3. Motion of the Plaintiff for Service of Process Other Than by a Sheriff or His Deputy 4. Plaintiff Mirak's Motion for Preliminary Injunction 5. Emergency Ex Parte Motion by Plaintiff for Short Order of Notice 6. Plaintiff Mirak's Memorandum of Law in Support of its Motion for Preliminary Injunction 7. Affidavit of Edward M. Stockton in Support of Plaintiff Mirak's Motion for Preliminary Injunction 8. Affidavit of Robert A. Mirak in Support of Plaintiff Mirak's Motion for Preliminary Injunction 9. ORDER ALLOWING Emergency Ex Parte Motion by Plaintiff for Short Order of Notice 10. ORDER ALLOWING Motion of the Plaintiff for Service of Process Other Than by a Sheriff or His Deputy 11. ORDER Setting Hearing on Plaintiff Mirak's Motion for Preliminary Injunction on June 18, 2025, at 2:00 p.m., in Courtroom 740; 12. Summons and Order of Notice to General Motors, LLC.

| **SUMMONS AND ORDER OF NOTICE** | DOCKET NUMBER<br>**2581CV01311** | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|
| CASE NAME:<br>**Mirak Chevrolet, Inc. vs. General Motors LLC et al** | | Michael A. Sullivan, Clerk of Court<br>Middlesex County |
| To:<br>**Matthew McGovern** | | COURT NAME & ADDRESS<br>Middlesex County Superior Court - Woburn<br>200 Trade Center<br>Woburn, MA 01801 |

To the above named defendant(s):

You are hereby summoned and required to serve upon:

> **Paul Marshall Harris, Esq.**
> **ArentFox Schiff**
> **800 Boylston St**
> **32nd Floor**
> **Boston, MA 02199**

an answer to the complaint which is herewith served upon you. This must be done within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, Judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this Court at Woburn either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

**WE ALSO NOTIFY YOU** that application for a Preliminary Injunction has been made in said action, as it appears in the complaint. A hearing on this matter has been scheduled for:

**Date: 06/18/2025**

**Time: 02:00 PM**

**Event Type: In Person**

**Session/ Courtroom Location:**

**Courtroom 740**

at which time you may appear and show cause why such application should not be granted.

| DATE ISSUED<br>**05/29/2025** | CHIEF JUSTICE OF THE SUPERIOR COURT<br>Witness:<br>**Hon. Michael D Ricciuti** | ASSOCIATE JUSTICE<br>**Hon. Adam Sisitsky** | ASSISTANT CLERK<br>X |
|---|---|---|---|

| **RETURN OF SERVICE** |
|---|
| I hereby certify and return that on _____, I served a copy of this summons, together with a copy of the Complaint. |

PARTY NAME:

X

PROOF OF SERVICE OF PROCESS (2581CV01311)

MIRAK CHEVROLET, INC. VS GENERAL MOTORS LLC ET AL

I hereby certify and return that on **June 5, 2025 @ 7:41 am,** I served a copy of the summons and order of notice together with a copy of the complaint in this action, upon the within named defendant, in the following manner (See Mass. R. Civ. P. 4(d) (1-5): **By leaving at Matthew McGovern last and usual place of abode, in the presence of Brooks McGovern, wife, at 65 COMMERCIAL WHARF UNIT 1, BOSTON, MA 02110. \*Also mailed, via 1st class U.S. mail, copy of summons to Matthew McGovern at 65 COMMERCIAL WHARF UNIT 1, BOSTON, MA 02110 on** June 6, 2025.

**William H Dewsnap III**
**Special Process Server & Disinterested Person**

Dated:   June 06, 2025              Signature:

N. B.          To Process Server:

Please enter the date that you made service on the defendant in this box - Both on the original summons and on the copy of the summons served on the defendant.

| |
|---|
| June 5, 2025 |

Documents Served: 1. Complaint 2. Civil Action Cover Sheet 3. Motion of the Plaintiff for Service of Process Other Than by a Sheriff or His Deputy 4. Plaintiff Mirak's Motion for Preliminary Injunction 5. Emergency Ex Parte Motion by Plaintiff for Short Order of Notice 6. Plaintiff Mirak's Memorandum of Law in Support of its Motion for Preliminary Injunction 7. Affidavit of Edward M. Stockton in Support of Plaintiff Mirak's Motion for Preliminary Injunction 8. Affidavit of Robert A. Mirak in Support of Plaintiff Mirak's Motion for Preliminary Injunction 9. ORDER ALLOWING Emergency Ex Parte Motion by Plaintiff for Short Order of Notice 10. ORDER ALLOWING Motion of the Plaintiff for Service of Process Other Than by a Sheriff or His Deputy 11. ORDER Setting Hearing on Plaintiff Mirak's Motion for Preliminary Injunction on June 18, 2025, at 2:00 p.m., in Courtroom 740; 12. Summons and Order of Notice to Matthew McGovern.

**AFFIDAVIT OF SERVICE**

| Case: 2581CV01311 | Court: MIDDLESEX COUNTY SUPERIOR COURT-WOBURN | County: | Job: 13461559 (045921.06) |
|---|---|---|---|
| **Plaintiff / Petitioner:** MIRAK CHEVROLET, INC. | | **Defendant / Respondent:** GENERAL MOTORS LLC ET AL | |
| **For:** ARENTFOX SCHIFF LLP | | **Received by:** DEWSNAP & ASSOCIATES LLC | |
| **To be served upon:** Matthew McGovern | | | |

I, WILLIAM H. DEWSNAP, III, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:** Brooks McGovern, Wife, 65 COMMERCIAL WHARF UNIT 1, BOSTON, MA 02110

**Manner of Service:** Substitute Service - Personal, Jun 5, 2025, 7:41 am EDT

**Documents:** image001.jpg, image002.png, image003.jpg, image004.png, image005.jpg, ! 2025.05.30 LT Dewsnap for Service of Process on McGovern and GM(302751423.1).pdf, 2025.05.27 (1) Mirak's Protest Complaint v. GM.pdf, 2025.05.27 (2) CA Cover Sheet.pdf, 2025.05.27 (3) Motion for Service of Process Other Than Sheriff.pdf, 2025.05.27 (4) Mirak's Motion for PI.pdf, 2025.05.27 (5) Emergency Ex Parte Motion for Short Order of Notice.pdf, 2025.05.27 (6) Memo ISO Motion for PI.pdf, 2025.05.27 (7) Affidavit of E. Stockton ISO Motion for PI.pdf, 2025.05.27 (8) R. Mirak Affidavit ISO Motion for PI.pdf, 2025.05.29 - ORDER Allowing Emerg. Ex Parte Motion for Short Order of Notice (5).pdf, 2025.05.29 - ORDER Allowing Motion for Service of Process Other than By Sheriff (3).pdf, 2025.05.29 - ORDER Setting Motion for PI June 18, 2025 at 200 pm (4).pdf, 2025.05.29 - Summons and Order of Notice to General Motors LLC.pdf, 1. Complaint 2. Civil Action Cover Sheet 3. Motion of the Plaintiff for Service of Process Other Than by a Sheriff or His Deputy 4. Plaintiff Mirak's Motion for Preliminary Injunction 5. Emergency Ex Parte Motion by Plaintiff for Short Order of Notice 6. Plaintiff Mirak's Memorandum of Law in Support of its Motion for Preliminary Injunction 7. Affidavit of Edward M. Stockton in Support of Plaintiff Mirak's Motion for Preliminary Injunction 8. Affidavit of Robert A. Mirak in Support of Plaintiff Mirak's Motion for Preliminary Injunction 9. ORDER ALLOWING Emergency Ex Parte Motion by Plaintiff for Short Order of Notice 10. ORDER ALLOWING Motion of the Plaintiff for Service of Process Other Than by a Sheriff or His Deputy 11. ORDER Setting Hearing on Plaintiff Mirak's Motion for Preliminary Injunction on June 18, 2025, at 2:00 p.m., in Courtroom 740; 12. Summons and Order of Notice to Matthew McGovern2025.05.29 - Summons and Order of Notice to Matthew McGovern.pdf

**Additional Comments:**
Successful Attempt: Jun 5, 2025, 7:41 am EDT at 65 COMMERCIAL WHARF UNIT 1, BOSTON, MA 02110 received by Brooks McGovern, Wife. Other: Please note attempted to serve Matthew McGovern. Personally, at his residential address, 65 commercial wharf unit one Boston Massachusetts, upon arrival, I was greeted by his wife, Brooks McGovern, who stated her husband was currently sleeping. I asked her if she could Get him to come out. I had important documents to drop off a few minutes later, she returned to the door and stated that it's a bad time. They're trying to get the boys. Out to school and that she could take the documents.;
LEFT DOCUMENT(s) LAST & USUAL. ALSO MAILED, VIA 1ST CLASS U.S. MAIL, COPY OF DOCUMENT(s) SERVED.

_____    06/06/2025
WILLIAM H. DEWSNAP, III    **Date**
Process Server and Disinterested Person

DEWSNAP & ASSOCIATES LLC
92 State Street 8th Floor
Boston, MA 02109
617-367-1070

4

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                           SUPERIOR COURT DEPARTMENT
                                         CIVIL ACTION NO. 25CV13\\

_____
                                        )
MIRAK CHEVROLET, INC.,                  )
            *Plaintiff,*                 )
                                        )
v.                                      )
                                        )
GENERAL MOTORS LLC,                     )
            *Defendant,*                 )
and                                     )    **RECEIVED**    5/27/25      tc
                                        )
MATTHEW MCGOVERN,                       )
            *Interested Party/Defendant.* )
_____)

## PLAINTIFF MIRAK'S MOTION FOR PRELIMINARY INJUNCTION

Mirak Chevrolet, Inc., d/b/a Mirak Chevrolet (hereafter, "Mirak"), respectfully submits this Motion for Preliminary Injunction against Defendant General Motors LLC ("GM") and Interested Party/Defendant, Matthew McGovern (hereafter, "Mr. McGovern"), which seeks an Order temporarily staying the appointment of any new Chevrolet brand authorized motor vehicle dealer at 34 Bear Hill Road, Waltham, Massachusetts, (hereafter, the "Add Point Location") pending a final judgment of this matter (or agreed upon settlement / dismissal with prejudice by the parties.

Mirak is a duly authorized Chevrolet dealer which operates pursuant to its Dealer Sales and Service Agreement with Defendant GM. GM has given written notice to Mirak that it intends to appoint a new franchised Chevrolet dealer within Mirak's relevant market area.   The Massachusetts dealer protection statute expressly allows Mirak to protest this new appointment. In addition, the statute allows this Court to issue an injunction to temporarily stay the appointment until trial of a protest action may be heard on the merits. M.G.L. c. 93B, §§ 6(a) and 15(a).

1

In support of its Motion for Preliminary Injunction, Mirak refers this Court and incorporates the arguments set forth in the accompanying Memorandum of Law in Support of Motion for Preliminary Injunction, filed herewith. As set forth in the Memorandum of Law, Mirak is entitled to injunctive relief because (a) it has a likelihood of success on its claims; (b) without an injunction, it will suffer irreparable harm; (c) the balance of the harm to Mirak exceeds any purported harm to Defendants; and (d) it is in public interest to temporarily stay the appointment pending the outcome of the protest action.

WHEREFORE, Plaintiff Mirak respectfully requests that this Court grant its Motion for Preliminary Injunction.

Respectfully submitted,

**PLAINTIFF MIRAK CHEVROLET, INC.,**
**By its Attorneys,**

*/s/ Sara D. Judge*

Sara D. Judge (BBO #669108)
*sara.judge@afslaw.com*
Paul Marshall Harris (BBO #223500)
*paul.harris@afslaw.com*
Devon C. Bodey (BBO #705146)
*Devon.bodey@afslaw.com*

**ARENTFOX SCHIFF LLP**
Prudential Tower
800 Boylston Street
Boston, MA 02199
Telephone:    617.973.6100
Dated: May 27, 2025          Facsimile:    617.367.2315

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO. 25CV131

_____
)
MIRAK CHEVROLET, INC.,                )
     *Plaintiff*,                )
)
v.                                    )
)
GENERAL MOTORS LLC,                   )
     *Defendant*,                )
and                                   )        **RECEIVED**      5/27/25      tc
)
MATTHEW MCGOVERN,                     )
     *Interested Party/Defendant*.   )
_____)

## PLAINTIFF MIRAK'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION

Mirak Chevrolet, Inc., d/b/a Mirak Chevrolet (hereafter, "Mirak"), submits this Memorandum of Law in support of its Motion for Preliminary Injunction against Defendant General Motors LLC ("GM") and Interested Party/Defendant, Matthew McGovern (hereafter, "Mr. McGovern"), which seeks an Order temporarily staying the appointment of any new Chevrolet brand authorized motor vehicle dealer at 34 Bear Hill Road, Waltham, Massachusetts, (hereafter, the "Add Point Location" pending a final judgment of this matter (or agreed upon settlement / dismissal with prejudice by the parties).

### INTRODUCTION TO DEALER PROTEST RIGHTS

In Massachusetts, franchised motor vehicle dealers have statutory protest rights to protect them from unfair competition within their "relevant market areas," which is a geographic area defined by statute. M.G.L. c. 93B, §§ 1 and 6. A motor vehicle dealer is allowed to protest (*i.e.*, file litigation to enjoin the new appointment) when its franchise manufacturer seeks to grant or

1

AFSDOCS:302654921.2

enter into a franchise agreement that would "permit a new dealer to conduct its dealership operations from a site any boundary of which is situated within the relevant market area of an existing motor vehicle dealer representing the same line make." M.G.L. c. 93B, § 6(a)(1). For dealerships with property boundaries located within Middlesex County, the relevant market area is "the entire land mass encompassed in a circle with a radius of 8 miles from any boundary of the dealership." *See id.* at § 1 (definition of "relevant market area," or "RMA").[1] Any manufacturer which intends to enter into an additional franchise agreement shall, at least 90 days before granting the additional franchise, "send written notice of its intention to do so to each motor vehicle dealer with a franchise agreement covering the same line make into whose relevant market area the proposed new franchise will be located." M.G.L. c. 93B, § 6(c).

Within 45 days of receiving such written notice, the protesting dealer may object to the appointment of the new dealer by sending a protest in writing to the manufacturer. *Id.* at § 6(d). Once that written protest is sent, the dealer may file a complaint (within 90 days of receipt of the manufacturer's notice) to enjoin the proposed appointment. *Id.* at § 6(e). Under the statute, the manufacturer has the "burden to establish that a proposed appointment ... is for good cause...." *Id.* at § 6(h). It is within this legal framework that Mirak brings this action to protest the appointment of a new Chevrolet dealership within Mirak's RMA. As set forth below, this Court should issue a preliminary injunction temporarily enjoining the appointment of any new Chevrolet dealership operations from the Add Point Location because GM does not have "good cause" to add another intra-brand Chevrolet store into Mirak's RMA, and the appointment of such a dealership will cause Mirak irreparable harm.

---

[1] The relevant market area is an 8-mile radius for dealerships located within the counties of Bristol, Essex, Hampden, Middlesex, Norfolk, Plymouth and Suffolk. M.G.L. c. 93B, § 1 (definition of "relevant market area").

2

AFSDOCS:302654921.2

## MIRAK'S PROTEST OF GM'S NEW ADD POINT

Mirak has been an authorized Chevrolet dealership since 1936. *See* accompanying Affidavit of Robert A. Mirak, ¶ 2 (hereafter, the "Mirak Aff.") Mirak is a family-owned business owned by the Mirak family who have operated the Chevrolet dealership in Arlington for eighty-nine (89) years. *Id.* at ¶ 8. Mirak is one of the oldest continuously operating Chevrolet dealerships in Massachusetts. In fact, Mirak has been the "face" of the Chevrolet brand in its relevant market area for eighty-nine (89) years. *Id.* at ¶ 3.

Mr. Robert Mirak, a third-generation dealer, currently oversees the dealership's operations as the "Dealer Operator" of the dealership. *Id.* at ¶¶ 6, 7. Mirak operates its Chevrolet dealership pursuant to a Dealer Sales and Service Agreement ("Dealer Agreement") with General Motors LLC ("GM"). *Id.* at ¶ 4. Mirak's Chevrolet dealership is located at 1125 Massachusetts Avenue, in Arlington, Massachusetts. *Id.* at ¶ 2. It currently employs 107 employees. *Id.* at ¶ 5.

On or about February 27, 2025, Mirak received a notice letter from Ms. Natalie Taylor, who is the current Zone Manger at GM for the dealership (hereafter, the "Notice Letter"). Mirak Aff., ¶ 18. A copy of the Notice Letter is attached as Exhibit 1 attached to the Mirak Aff.[2] The Notice Letter informed Mirak that GM had made a "final decision to approve the establishment of Chevrolet operations" at 34 Bear Hill Road, in Waltham, Massachusetts (hereafter, the "Add Point Location"). *See* Exhibit 1. GM's Notice Letter informed Mirak that it would be appointing a new intra-brand competitor into Mirak's relevant market area. Mirak Aff., ¶ 21. Specifically, the proposed new Chevrolet store will be located approximately 5.6 miles away from Mirak's Chevrolet store as measured by air distance. *Id.* at ¶ 20. Although the Notice Letter does not

---

[2] Unless otherwise stated, all references to Exhibits herein refer to the Exhibits attached to the Mirak Aff.

specifically identify the name of the proposed new dealer, based upon ownership of the real estate, Mirak understands that Defendant Matthew McGovern is GM's dealer candidate for the add point.

To best respond to the Notice Letter, Mirak retained Mr. Edward Stockton, who is an economist from the Fontana Group. *Id.* at ¶ 25. Mr. Stockton is a retail automotive industry expert who is experienced at studying the impact of changes in dealer networks. *See* Affidavit of Edward M. Stockton in Support of Motion for Preliminary Injunction, filed herewith (hereafter, the "Stockton Aff.") Mr. Stockton's preliminary analysis concluded that local market conditions do not reliably support the addition of a new Chevrolet franchise within Mirak's relevant market area. *Id.* On April 9, 2025, Mirak (through its legal counsel) sent a letter to GM to protest the establishment of new Chevrolet dealership operations at the Add Point Location (hereafter, the "Protest Letter.") *Id.* at ¶ 24. A copy of Mirak's Protest Letter is attached as Exhibit 2. The parties have been unable to resolve this dispute and this protest action followed.

## LEGAL ARGUMENT

## I.    APPLICABLE LEGAL STANDARDS IN DEALER ADD POINT DISPUTES

To preserve a healthy level of competition in the market, and to protect consumers, the Massachusetts dealer protection statute, M.G.L. c. 93B, specifically allows for a franchised motor vehicle dealer to bring an action to enjoin the appointment of any new "same line make" (i.e., same vehicle brand) dealer into its RMA. M.G.L. c. 93B, § 6. Both the Legislature (in passing the dealer protection statute) and the Supreme Judicial Court (with its interpretation of the statute) have long recognized the importance of protecting a dealership's sales and service territory. For example, in *Tober Foreign Motors, Inc. v. Reiter Oldsmobile, Inc.*, 376 Mass. 313, 321 (1978), the Supreme Judicial court noted:

4

> Yet another technique with potentialities of unfairness is the granting of new
> franchises near established ones: having invested in his dealership, a dealer who
> has displeased the manufacturer, or who simply appears to be dispensable, finds his
> business turned into a losing venture overnight by the award of a new franchise
> around the corner, and, it may be, without any practical benefit to, or, indeed, with
> negative effects on, the buying public. In the attempt to regulate the granting of
> dealerships in territory already served, our statute …. finds some echo in the
> legislation of a number of other States.

*See id.* (describing the history of unfair acts and practices by vehicle manufacturers and upholding the constitutionality of Chapter 93B). The function of dealer protest rights is "to give manufacturers and dealers an opportunity to test, before capital is expended or damage done, the question whether a proposed new dealership unfairly poaches on an existing dealer's territory." *Richard Lundgren, Inc. v. Am. Honda Motor Co.,* 45 Mass. App. Ct. 410, 415–16 (1998). The statute is an important consumer protection act in the Commonwealth, as the protection of dealers also provides protections to consumers who rely upon local dealerships for sales and service. *Id.* at 319.

The dealer protection statute expressly allows a Court to issue an injunction to temporarily stay the appointment until trial of a protest action may be heard on the merits. M.G.L. c. 93B, §§ 6(a) and 15(a). To be entitled to injunctive relief, one must show that it has a likelihood of success on the merits of its claim and, without the requested injunction, risks suffering irreparable harm. *See Commonwealth v. Mass. CRINC*, 392 Mass. 79, 87 (1984). The Court then must balance this risk against the defendant's risk of irreparable harm and likelihood of success on the merits. *Id.* at 87-88. When that balance tips in favor of the moving party, the requested injunction should enter. *Packaging Indus. Group v. Cheney*, 380 Mass. 609, 617 (1980).

## II.    MIRAK HAS A LIKELIHOOD OF SUCCESS ON ITS CLAIM.

In its Complaint, Mirak has alleged: (i) violations of M.G.L. c. 93B, §§ 3(a), 6, and 15(c) (against Defendant GM) and (ii) declaratory judgment (against both GM and Mr. McGovern). At

5

trial, GM has the burden of establishing that it has "good cause" to add new Chevrolet dealership operations at the Add Point Location. In determining whether the proposed appointment or relocation is for good cause, M.G.L. c. 93B, § 6(g) instructs the Court to consider "all pertinent circumstances," that include, but are not limited to, the following factors:

1. whether the establishment of the additional franchise or relocation of the existing motor vehicle dealer appeared to be warranted by economic and marketing conditions including anticipated future changes;

2. the retail sales and service business transacted by the protesting motor vehicle dealer or dealers and other motor vehicle dealers of the same line make with a place of business in the relevant market area to be served by the additional franchise or proposed new location of an existing motor vehicle dealer during the 3-year period immediately preceding the notice as compared to the business available to them;

3. the investment necessarily made and obligations incurred by the protesting motor vehicle dealer or dealers to perform their obligations under existing franchise agreements;

4. the permanency of the investment of the protesting motor vehicle dealer or dealers;

5. whether it is beneficial or injurious to the public welfare for an additional franchise to be established or for the existing motor vehicle dealer to be relocated;

6. whether the protesting motor vehicle dealer or dealers and other motor vehicle dealers of the same line make with a place of business in the relevant market area to be served by the additional franchise or proposed relocating motor vehicle dealer are providing adequate competition and convenient consumer care for the motor vehicles of the same line make owned or operated by residents and persons with places of business in the relevant market area to be served by the additional franchise or proposed relocating motor vehicle dealer;

7. whether the protesting motor vehicle dealer or dealers and other motor vehicle dealers of the same line make with a place of business in the relevant market area to be served by the additional franchise or proposed relocating motor vehicle dealer have adequate motor vehicle sales and service facilities, equipment, vehicle parts and qualified personnel to reasonably provide for the needs of the consumers in the relevant market area to be served by the additional franchise or proposed relocating motor vehicle dealer; and,

8. whether the establishment of an additional franchise or relocation of an existing motor vehicle dealer would increase competition and therefore be in the public interest.

AFSDOCS:302654921.2

*See* M.G.L. c. 93B, § 6(g) (collectively hereafter, the "Good Cause Factors").

Mirak's claim to enjoin the new appointment will succeed for several reasons. First, GM was required by statute to provide Mirak with written notice listing the "specific grounds forming the basis for the appointment," yet GM's stated grounds in its Notice Letter fail to demonstrate any "good cause" for a new Chevrolet dealer. A comparison of GM's Notice Letter (Exhibit 1) against the statutory Good Cause Factors (listed above, *supra*) shows that GM has failed to undertake any meaningful study or analysis of the Good Cause Factors prior to moving forward with this appointment.

For example, the Notice Letter fails to provide Mirak with any specific market data concerning historical sales in the proposed relevant market area to be serviced by Mr. McGovern (hereafter, the "Add Point RMA," *i.e.*, the eight-mile radius around the Add Point Location.) Mirak Aff., ¶¶ 22-23. The sales within the Add Point RMA are one of the "Good Cause Factors" to be evaluated by the Court, but GM does not provide any indication in its Notice Letter that this analysis was undertaken. Instead, the Notice Letter vaguely refers to "market share" within the "Metro Boston Chevrolet market," and it is unclear from the letter what geographic area GM evaluated (if any) to support its decision to add a new Chevrolet dealership. Exhibit 1. However, the "Metro Boston Chevrolet market" is not the geographic area utilized by the dealer statute when determining whether there is "good cause" for a new add point. The term "Metro Boston Chevrolet market" is vague and undefined in the Notice Letter (making it unnecessarily difficult if not impossible for Mirak to fully evaluate the purported grounds relied upon by GM). The Notice Letter makes it clear that GM failed to properly analyze the Good Cause Factors prior to sending notice of the proposed appointment. GM's Notice Letter is defective because it fails to sustain

AFSDOCS:302554921.2

GM's burden of illustrating "good cause" for the appointment. For this reason alone, Mirak has a likelihood of success on its claims to enjoin the appointment.

Second, Mirak will succeed on its claims to enjoin the proposed Chevrolet appointment because local market conditions do not reliably support the addition of a new Chevrolet dealership at the Add Point Location.  Mirak Aff., ¶¶ 25-30; *see also*, Stockton Aff., ¶¶ 4 to 7.  GM's reliance upon allegedly low Chevrolet brand market share performance in the "Metro Boston market area" to justify the new add point is misplaced and the product of assumptions, not sound analysis.  *Id.* at ¶ 5.  At trial, Mirak's expert will testify that any alleged low registration effectiveness in the "Metro Boston market area" is due to factors that are not under the control of the local dealer network, and therefore low registration effectiveness cannot reliably support "good cause" for a new add point.  *Id.* at ¶ 6.

The addition of a new Chevrolet dealership at the Add Point Location will be materially detrimental to Mirak's sales, profitability, goodwill, customer relations, impact on the future growth of Mirak and Mirak's investment.  Mirak Aff., ¶¶ 25-30; Stockton Aff., ¶ 7.  It appears that GM did not take any of these factors into account before issuing the Notice Letter because it provided no information to Mirak on these issues.   For these reasons alone, GM will be unable to meet its burden of showing "good cause" at trial and, therefore, Mirak has a likelihood of success on its claims.

## III.  WITHOUT AN INJUNCTION, MIRAK WILL SUFFER IRREPARABLE HARM.

To obtain injunctive relief, Mirak must show that without the requested injunction, it risks suffering irreparable harm.  *See Commonwealth v. Mass. CRINC*, 392 Mass. 79, 87 (1984).  In Massachusetts, "irreparable injury" is the preliminary injunction context means "an injury which cannot adequately be compensated for either by a later-issued permanent injunction, after full

8

adjudication on the merits, or by a later-issued damages remedy." *Get In Shape Franchise, Inc. v. TFL Fishers, LLC*, 167 F.Supp.3d 173, 202 (D. Mass. 2016). A plaintiff seeking injunctive relief need not show that denial of its relief will be fatal to its business, but rather, it is enough to show that its legal remedies are inadequate. *Id.* at 202.

The addition of a new Chevrolet dealership at the Add Point Location will be materially detrimental to Mirak's goodwill, customer relations, impact on the future growth of Mirak and Mirak's investment. Mirak Aff., ¶¶ 25-30; Stockton Aff., ¶¶ 7-8. Customer goodwill is "a company's positive reputation in the eyes of customers or potential customers" and it "generated by repeat business with existing customers or by referrals to potential customers. *Id.* at 199, *citing N. Am. Expositions Co. Ltd P'ship v. Corcoran*, 452 Mass. 852 (2009). "Harm to goodwill, like harm to reputation, is the type of harm that is not readily measurable or fully compensable in damages, and for that reason, more likely to be found 'irreparable.'" *Get In Shape Franchise, Inc. v. TFL Fishers, LLC*, 167 F.Supp.3d at 202.

At this stage, the full impact of a new Chevrolet dealership appointment within Mirak's RMA is not readily measurable, thereby making it "irreparable." *Id.* GM has failed to provide any details in its Notice Letter as to how Mirak's market area will be changed after its proposed appointment. Mirak Aff., ¶ 23. However, Courts have generally held that the establishment of a competing business within an existing franchise market area will harm goodwill and cause irreparable injury. *Id.* at 203 (granting preliminary injunctive relief).

The addition of new intra-brand competition so close to the existing Mirak dealership will have a negative impact on the future value of Mirak's business goodwill in the event of a future sale. Mirak Aff., ¶ 28. The addition of a new Chevrolet dealership at the Add Point Location will also make it difficult for Mirak to retain its highly skilled employees, as the market for certain

9

dealership positions (such as service technicians) is highly competitive. Mirak Aff., ¶ 29. All of
these factors are in favor of granting Mirak's Motion for preliminary injunctive relief.

GM has previously recognized that this market area surrounding Boston cannot support
multiple Chevrolet points. For example, during the 2008 bankruptcy of GM's predecessor,
General Motors Corporation (hereafter, "Old GM"), Old GM undertook the process of shutting
down Chevrolet brand dealerships around Massachusetts (including the Chevrolet store previously
operating in Cambridge, Massachusetts). In order to secure over $19 billion dollars in federal
loans from the US Treasury Department, Old GM represented to Congress that a plan utilizing a
shift to "smaller, more fuel-efficient cars" and "a reduction in the number of GM brand names and
dealerships" was the key to future viability. *See generally, In re Motors Liquidation Co.,* 430 B.R.
65, 71 (S.D.N.Y. 2010) (describing Old GM's plans for viability during its bankruptcy). GM is
now arguing the opposite. Without citing to any specific data, GM now believes that more
dealerships will somehow increase its market brand share in the "Metro Boston area." However,
at trial, Mirak's expert will demonstrate that GM's Chevrolet brand market share concerns cannot
be remedied by adding more Chevrolet dealership locations.

GM knows this. GM now simply prefers to have Chevrolet brand representation west of
Boston (along Route 95) instead of in Arlington, where Mirak has long been located. Notably, in
2023, GM asked Mirak to relocate its store from Arlington to an unsecured relocation point west
of Boston. Mirak Aff., ¶¶ 10-17. This would have required Mirak to purchase new property along
Route 95 at its own expense. Mirak Aff., ¶ 13. Mirak declined GM's request to relocate because
it would be cost prohibitive to the Mirak family, given the price of commercial real estate along
Route 95 (west of Boston). Mirak Aff., ¶ 16. The discussion during 2023 was not about adding
a new store, but simply relocating Mirak to GM's preferred location. Mirak Aff., ¶ 17. When

Mirak declined to concede to GM's market desires, GM undertook the present plan to add new representation into Mirak's RMA for the purpose of replacing Mirak in its long-standing location.

This is exactly the type of unfair "displacement" that Chapter 93B aims to protect against. *Tober Foreign Motors, Inc.,* 376 Mass. at 321 (describing how a dealer "who simply appears to be dispensable" can find his business turned into a "losing venture overnight by the award of a new franchise around the corner."). Chapter 93B expressly allows for Mirak to challenge this appointment for lack of good cause. M.G.L. c. 93B, § 6. Furthermore, the preservation of Mirak's legitimate economic expectations pending the opportunity for trial is a basis for granting preliminary injunctive relief. *See Edwin R. Sage Co. v. Foley*, 12 Mass. App. Ct. 20 (Mass. App. Ct. 1981).

## IV.    THE BALANCE OF HARMS FAVORS ISSUING INJUNCTIVE RELIEF.

The balance of harms tips in favor of issuing the injunction to keep the status quo. Keeping the "status quo" is in all parties' best interests, as it will prevent Mr. McGovern from dedicating his real property GM's use prior to a determination as to whether the market can properly support the new Chevrolet store. Even if GM or Mr. McGovern could craft some theory as to how it might suffer some irreparable harm if an injunction enters, ultimately, "[w]hat matters as to each party is not the raw amount of irreparable harm that party might conceivably suffer, but rather the risk of [irreparable] harm *in light of the party's chance of success on the merits*." *Packaging Indus. Group*, 380 Mass. at 617 (emphasis added). The risk of irreparable harm to Mirak without an injunction far outweighs the risk of harm to Defendants.[3]

---

[3] The proposed Add Point Location is not an existing dealership, but rather contains office type buildings. There is no harm to GM or Mr. McGovern if the injunction is granted because this is not a situation where a fully functional dealership is sitting empty. Any proposed new dealer at this location would need to build a new facility.

11

The issuance of the injunction is expressly allowed by the dealer protection statute which provides Mirak with its protest rights. M.G.L. c. 93B, §§ 6 and 15. "If commerce is to function in our capitalistic system, entrepreneurs must play by the rules." *K-Mart Corp. v. Oriental Plaza, Inc.,* 875 F.2d 907, 916 (1st Cir. 1989) (upholding injunction which prohibited landlord from constructing new space in front of a K-Mark store). Here, the "rules" for the appointment of a new add point are prescribed by Chapter 93B, which expressly allows the parties to "test" the viability of the market through a protest action prior to allowing a new dealership to unfairly poach an existing market. *Richard Lundgren*, 45 Mass. App. Ct. at 415–16. These rules for new dealer appointment allow for a speedy trial of protest actions, which in in turn, balances the relevant impositions to all parties. For these reasons, the balance of harms tips in favor of issuing the injunctive relief.

Finally, allowing for the statutorily mandated "dealer protest process" play out in Court is in the public's best interest. In fact, one of the "Good Cause Factors" cited by the statute is whether the establishment of an additional franchise "would increase competition and therefore be in the public interest." M.G.L. c. 93B, § 6(g); *see also, Tober Foreign Motors, Inc.*, 376 Mass. at 321 (reiterating the Legislature's belief that consumers would be hurt in the long run by tolerating the manufacturers' unchecked power to control the vehicle market in Massachusetts without regulation).

## CONCLUSION

Mirak has the statutory right to protest GM's proposed addition of a new Chevrolet brand dealership within Mirak's RMA. Mirak has demonstrated a likelihood of success on the merits, and the potential for irreparable harm if the injunction is denied. The balance of harms tips in favor of preserving the "status quo" and in favor of issuing the temporary injunction. Finally, it

12

is in the public's best interest to allow the statutory protest process to play out as designed. For

these reasons, this Court should grant Mirak's Motion for Preliminary Injunctive Relief.


Respectfully submitted,

**PLAINTIFF MIRAK CHEVROLET, INC.,**
**By its Attorneys,**

*/s/ Sara D. Judge*
_____
Sara D. Judge (BBO #669108)
*sara.judge@afslaw.com*
Paul Marshall Harris (BBO #223500)
*paul.harris@afslaw.com*
Devon C. Bodey (BBO #705146)
*Devon.bodey@afslaw.com*

**ARENTFOX SCHIFF LLP**
Prudential Tower
800 Boylston Street
Boston, MA  02199
Telephone:     617.973.6100

Dated:  May 27, 2025                        Facsimile:      617.367.2315

13

8

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                          SUPERIOR COURT DEPARTMENT
                                        CIVIL ACTION NO. 25CV131|

| | |
|---|---|
| MIRAK CHEVROLET, INC.,<br>    *Plaintiff,*<br><br>v.<br><br>GENERAL MOTORS LLC,<br>    *Defendant,*<br>and<br><br>MATTHEW MCGOVERN,<br>    *Interested Party/Defendant.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**RECEIVED**    5/27/25    tc

### AFFIDAVIT OF ROBERT A. MIRAK IN SUPPORT OF PLAINTIFF MIRAK'S MOTION FOR PRELIMINARY INJUNCTION

I, Robert A. Mirak, hereby depose and state:

1.      I am the President of Mirak Chevrolet, Inc. ("Mirak") and I submit this affidavit in support of Mirak's Motion for Preliminary Injunction (the "Motion") in the above-captioned dealer protest litigation.

2.      Mirak has been an authorized Chevrolet dealership since 1936.  Mirak operates its Chevrolet dealership at 1125 Massachusetts Avenue, in Arlington, Massachusetts.

3.      Mirak has been the "face" of the Chevrolet brand in the Relevant Market Area for eighty-nine (89) years.

4.      Mirak operates its Chevrolet dealership pursuant to a Dealer Sales and Service Agreement ("Dealer Agreement") with General Motors LLC ("GM").

5.      Mirak currently employs 107 employees.

6.     In addition to being the President of Mirak, I am also designated as the "Dealer Operator" under the Dealer Agreement. As Dealer Operator, I am responsible for managing and overseeing all Chevrolet dealership operations.

7.     I have been the "Dealer Operator" for the past 18 years.

8.     Mirak is a family-owned business owned by the Mirak family who have operated the Chevrolet dealership at this location in Arlington for the eighty-nine (89) years that the Chevrolet dealership has been in operation.

9.     Mirak's Chevrolet dealership is operated on family-owned land in Arlington, Massachusetts.

10.    On March 6, 2023, I met with GM representative Ms. Dara Freeman, who at the time was the Zone Manager for Boston/New England.

11.    In advance of that meeting, Ms. Freeman told me that she was bringing David Nicholson to the meeting. At that time, Mr. Nicholson also worked for GM in the Dealer Network department. Ms. Freeman stated that she was bringing Mr. Nicholson to Mirak to "discuss what's manifesting in the market."

12.    Prior to the March 2023 meeting, I had never met Mr. Nicholson.

13.    During this March 2023 meeting, Mr. Nicholson asked me if I would be interested in relocating Mirak's Chevrolet operations from Arlington, Massachusetts to a location west of Boston. I was told by Mr. Nicholson that the relocation would require Mirak to relocate and purchase a new parcel of real estate along Route 95 at its own expense.

14.    Mr. Nicholson further stated that GM desired to have a Chevrolet store located near the former Muzi Chevrolet dealership (which had permanently closed in November 2021).

2

15.     Muzi Chevrolet was formerly located at 56 TV Place (just off Route 95) in Needham Heights, Massachusetts, on real property that is almost 9 miles away from Mirak in Arlington.

16.     Relocating Mirak's Chevrolet dealership from Arlington to the Needham Heights open point area would be cost prohibitive for the Mirak family, given the price of commercial real estate along Route 95. It would also require Mirak to move its Chevrolet operations away from Mirak's Hyundai dealership operations, which are located next door to Mirak Chevrolet.

17.     It was my understanding from Mr. Nicholson that GM desired to replace the Muzi Chevrolet dealership which had closed in Needham Heights. We did not discuss the addition of any Chevrolet dealership into Mirak's market area.

18.     On or about February 27, 2025, I received a notice letter from Ms. Natalie Taylor, who is Mirak's current Zone Manger at GM (hereafter, the "Notice Letter"). A copy of the Notice Letter is attached as **Exhibit 1**.

19.     The Notice Letter informed me that GM had made a "final decision to approve the establishment of Chevrolet operations" at 34 Bear Hill Road, in Waltham, Massachusetts (hereafter, the "Add Point Location").

20.     GM's proposed Add Point Location is approximately 5.6 miles away from Mirak's Chevrolet store as measured by air distance.

21.     GM's proposed Add Point Location is within Mirak's relevant market area.

22.     The Notice Letter contains 9 bullet points which purport to be the "specific grounds forming the basis for GM's decision" to approve a new Chevrolet dealership at the Add Point Location in Mirak's Relevant market Area. Although these bullet points refer to "market share," the Notice Letter did not provide Mirak with any of the backup market share data to support GM's decision.

3

AFSDOCS:302663714.2

23.     In addition, the Notice Letter does not describe what changes (if any) would be made by GM to Mirak's market area after the opening of the new Chevrolet dealership at the Add Point Location.

24.     On April 9, 2025, Mirak (through its legal counsel) sent a letter to GM to protest the establishment of new Chevrolet dealership operations at the Add Point Location (hereafter, the "Protest Letter.") A copy of Mirak's Protest Letter is attached as **Exhibit 2**.

25.     To best respond to GM's Notice Letter, and for the purposes of this protest litigation, Mirak retained Mr. Edward Stockton, who is an economist from the Fontana Group.

Mr. Stockton is a retail automotive industry expert and is experienced at studying the impact of changes in dealer networks.

26.     Mr. Stockton performed a preliminary analysis and concluded that local market conditions do not support the addition of a new Chevrolet franchise at the Add Point Location.

27.     The addition of a new Chevrolet dealership at the Add Point Location will be materially detrimental to Mirak's sales, profitability, goodwill, customer relations, impact on the future growth of Mirak and Mirak's investment.

28.     For example, the establishment of the new Chevrolet dealership at the Add Point Location will significantly harm the goodwill of Mirak with its customers, its employees, and with potential future buyers of the dealership.

29.     The addition of a new Chevrolet dealership at the Add Point Location will make it difficult for Mirak to retain its highly skilled employees, as the market for certain dealership positions (such as service technicians) is highly competitive.

30.     However, an exact calculation of the harm to be suffered by Mirak is difficult to measure at this time.

4

Signed under the pains and penalties of perjury this 21st day of May, 2025.

Robert A. Mirak
Dealer Operator
Mirak Chevrolet, Inc.

5

Date Filed 5/27/2025 5:00 PM
Superior Court - Middlesex
Docket Number

# EXHIBIT 1

Date Filed 5/27/2025 5:06 PM
Superior Court - Middlesex
Docket Number

Mar 3 2025 03:05pm     P001/002



**FEDERAL EXPRESS: 772369801556**

February 27, 2025

Robert A. Mirak, Dealer Operator
Mirak Chevrolet, Inc.
1125 Massachusetts Ave.
Arlington, MA 02476

Dear Mr. Mirak:

General Motors LLC ("GM") has made a final decision to approve the establishment of Chevrolet dealership operations at 34 Bear Hill Road, Waltham, MA 02451 (the "Location"). Chevrolet dealership operations will not be established at the Location until at least 90 days after you receive this notice.

Based upon information known by GM at the time that this notice is being provided, the specific grounds forming the basis for GM's decision to approve the establishment of Chevrolet dealership operations at the Location are as follows:

1.  There were 15 Chevrolet rooftops in the Metro Boston Chevrolet market in 2008 and there are 10 today. Competing brands such as Ford, Toyota and Honda each have 14 or more dealership rooftops in the metro Boston market.

2.  The 10-year market share high for Chevrolet in the Metro Boston Chevrolet market was 6.4% in 2016. Chevrolet's market share declined to 4.6% in 2021 and remained at 4.6% through September 2024.

3.  For comparison, Chevrolet's national market share continues to grow from 9.1% in 2021 to 10.0% through September 2024.

4.  In 2022, Chevrolet's sales performance in Boston ranked 103rd out of the top 116 metro markets nationally with registration losses exceeding 2,800 and in 2023 Chevrolet's sales performance in Boston ranked 101st out of the top 116 metro markets nationally with registration losses exceeding 3,400 in 2023.

5.  GM does not believe that the existing Chevrolet dealers in the Metro Boston Chevrolet market are taking advantage of the opportunities that exist within the market and that the establishment of a Chevrolet dealership at the Location is warranted by economic and marketing conditions including anticipated future changes.

6.  GM believes that the addition of a Chevrolet dealership at the Location will increase competition and therefore be in the public interest.

7.  Muzi Chevrolet was formerly located in Needham Heights, MA and closed in November 2021. Since Muzi Chevrolet closed, Chevrolet's Retail Registration Index ("RRI") in the Needham Heights open point market area has declined from 77.1 to 60.8 through September 2024.

8.  Mirak Chevrolet is the only existing Chevrolet dealer in the relevant market area to be served by an additional Chevrolet dealership located at the Location. GM believes that the retail sales and service business transacted by Mirak Chevrolet in the three years preceding this notice supports the addition of a new Chevrolet dealership at the Location.

9.    GM does not believe that there is adequate competition and convenient customer care for Chevrolet vehicles in the Metro Boston Chevrolet market and in particular for Chevrolet vehicles owned or operated by residents and persons with places of business in the relevant market area to be served by an additional dealer at the Location.

If Mirak Chevrolet, Inc. objects to the establishment of Chevrolet dealership operations at the Location, any protest should be sent to 30400 Van Dyke Ave., Floor 6, Warren, MI 48093.

This notice is provided pursuant to Mass. Gen. Laws ch. 93B, § 6.

Sincerely,

Natalie Taylor
Zone Manager
General Motors LLC

c: Dan Adamcheck, Chevrolet Regional Director
    Dealer Contractual Group

# EXHIBIT 2

**FedEx** ®

April 10, 2025

Dear Customer,

The following is the proof-of-delivery for tracking number: 287386143474

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | Residence |
| Signed for by: | Signature not required | Delivery Location: | |
| Service type: | FedEx Standard Overnight | | |
| Special Handling: | Deliver Weekday | | WARREN, MI, |
| | | Delivery date: | Apr 10, 2025 09:22 |

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 287386143474 | Ship Date: | Apr 9, 2025 |
| | | Weight: | 0.5 LB/0.23 KG |

| Recipient: | Shipper: |
|---|---|
| WARREN, MI, US, | Boston, MA, US, |

| Reference | 045921.00006.5691 |
|---|---|

Proof-of-delivery details appear below; however, no signature is available for this FedEx Express shipment because a signature was not required.

Thank you for choosing FedEx

Date Filed 5/27/2025 5:36 PM
Superior Court - Middlesex
Docket Number

# ArentFox
# Schiff

**ArentFox Schiff LLP**

Prudential Tower
800 Boylston Street
Boston, MA  02199

617.973.6100  **MAIN**
617.367.2315  **FAX**

afslaw.com

**Sara D. Judge**
Partner
617.973.6184  **DIRECT**
Sara.judge@afslaw.com

**Reference Number**
045921.00006

April 9, 2025

**OVERNIGHT DELIVERY**
**FEDERAL EXPRESS**

Ms. Natalie Taylor
Zone Manager
General Motors LLC
30400 Van Dyke Ave., Floor 6
Warren, MI 48093

Re:    Mirak Chevrolet, Inc.'s M.G.L. c. 93B, § 6 Protest and
       M.G.L. c. 93B, § 15(b) Request for Meet and Confer

Dear Ms. Taylor:

I am writing on behalf of my client, Mirak Chevrolet, Inc. ("Mirak"), in response to General
Motors, LLC's ("GM") February 27, 2025 letter (the "Notice") advising that it has decided to
approve the establishment of new Chevrolet dealership operations at 34 Bear Hill Road,
Waltham, MA 02451 (the "Location"). In that regard, pursuant to Massachusetts General Laws
c. 93B, § 6(d), Mirak is protesting the establishment of a new Chevrolet dealership at the
Location for the reasons specified below. Please direct all future correspondence regarding this
matter to the undersigned.

As it relates to the protest, GM's Notice is dated February 27, 2025, so Mirak's written notice of
protest herein is due on or before April 13, 2025. There is no question that Mirak has timely
protested GM's Notice within 45 days thereafter, and Mirak has preserved all protest rights it has
pursuant to M.G.L. c. 93B, *et seq.*

As an initial matter, I would like to note that Mirak Chevrolet has been a dealer since the early
1930s. The Mirak family has been a long supporter of GM and Chevrolet and has invested
heavily in the Chevrolet brand to perform its obligations under its dealer agreement. Such
investments are permanent in nature, as they include real estate and facilities. *See* M.G.L. c. 93B,
§ 6(g)(3) and (4). Further, there is ample competition in the relevant market area and convenient
customer care. *Id.* at § 6(g)(8).  For these reasons, among others identified below, Chevrolet
lacks good cause to add a franchise at the Location.

Under M.G.L. c. 93B, § 6, GM's Notice was required to list the specific grounds forming the
basis for the appointment… based upon information known by the manufacturer at the time the
notice is sent.  In that regard, GM's Notice identifies limited factors (without supporting data)

AFSDOCS:302136082.1

Smart In
Your World®

**ArentFox**
**Schiff**

that GM relies upon to support its position that an additional franchise at the Location is warranted, including: (i) a reduced number of rooftops in the Metro Boston market; (ii) low market share and sales performance at the brand level in the Metro Boston market; (iii) a need for dealers to seize opportunities within the market and for competition; (iv) the closure of a former Chevrolet dealership in Needham Heights, MA; (v) Mirak's retail sales and service business transacted in the three years preceding the Notice; and (vi) GM's belief that there is inadequate competition and a lack of convenient customer care for those located in the relevant market area. Mirak disputes that the factors identified by GM in its Notice support good cause for the new add point. Furthermore, GM's Notice fails to show good cause under the statutory criteria set forth in M.G.L. c. 93B, § 6 (g).

Mirak is protesting the addition of a Chevrolet franchise at the Location, which is within Mirak's relevant market area ("RMA"), *i.e.*, within 8 miles from the boundary of the dealership. M.G.L. c. 93B, § 1(1). GM lacks good cause based on the factors it relies upon to grant or enter or enter into an additional franchise agreement at the Location. Further, the granting or entering into an additional franchise agreement at the Location would be in bad faith or is arbitrary or unconscionable, in violation of Massachusetts law. In that regard, Mirak protests GM's granting or entering into a franchise agreement for Chevrolet dealership operations at the Location because based on local demographic and market conditions, there is strong empirical support that any "underperformance" in Chevrolet's market share measurement is a result of factors outside of dealer network control and will not be remedied by adding a franchise at the Location. M.G.L. c. 93B, § 6 (g)(1). Further, upon review, Mirak has determined that there would be a material, negative impact on it if the additional franchise were put in place at the Location.

To evaluate the proposed add point, Mirak analyzed Chevrolet's brand market share as compared to state average. Then, Mirak evaluated local demographic and market factors to determine if any market share deficit is attributable to factors outside the control of the dealer network and/or GM/Chevrolet. Mirak also evaluated the potential impact on it if a franchise is established at the Location, as well as the difference in the flow-of-trade based on the Location as compared to Mirak's location. Finally, Mirak evaluated the impact GM's discontinuance of the Chevrolet Bolt, and its reduction of Chevrolet dealerships and declining Chevrolet sales nationwide to determine their impact on Chevrolet's market share, particularly in Mirak's RMA. After evaluating these factors, as described in further detail below, Mirak finds that local market conditions do not support the addition of a Chevrolet franchise at the Location, and that the proposed addition of a franchise at the Location will have a material negative impact on the market size and sales of Mirak Chevrolet. As such, Chevrolet does not have good cause to enter into a franchise agreement at the Location, and entering into such an agreement would be in bad faith or arbitrary or unconscionable.

**ArentFox
Schiff**

GM's reliance upon alleged poor market share performance to justify this add point is misplaced. Although initial analysis implies that Chevrolet brand market share is low in the local area, such low registration effectiveness is due to factors not under the control of the local dealer network and/or manufacturer, and therefore the low registration effectiveness does not provide good cause to add a franchise at the Location. Various demographic and market variables provide statistical support for this position. By adjusting registration effectiveness based on such variables, Chevrolet is above 100% in all areas, other than that of the proposed Location. As such, the addition of a Franchise at the Location is not necessary based on such analysis.

Simply stated, the establishment of an additional Chevrolet point is not warranted by economic and marketing conditions within the RMA. This is especially true during the current uncertain market, where consumers are berated with news of proposed tariffs and threats of recession. Any supposed "brand expansion" that GM thinks will arise from an additional point will not offset the harm to the existing dealer network.

GM also points to the fact that there was a dealer formerly at Needham Heights as a basis to support the addition of a franchise at the Location. However, according to M.G.L. c. 93B, § 6(b)(2), GM is prohibited from appointing a successor motor vehicle dealer on these grounds because the Location is more than 2 miles away from Muzi Chevrolet's location, and it has been more than one year since Muzi Chevrolet ceased operations. The closure of Muzi Chevrolet does not provide a basis to add a franchise at the Location.

In addition to these market factors and the cessation of operations at Muzi Chevrolet not providing bases for the add-point, the impact of the proposed franchise on Mirak also supports this conclusion. By analyzing change in brand registrations in the local area (based upon drive distance and S&P segmentation), Mirak has determined that it could see a reduction of approximately 29% resulting from the proposed additional franchise. By employing a gravity model, Mirak has determined that it could see a reduction of approximately 14%. In either event, such a reduction in the size of the market facing Mirak would have a materially adverse impact on Mirak.[1] When translated to estimated lost sales opportunities, Mirak estimates a loss of sales and profit contribution totaling 10% or more, which would cause an even larger reduction in Mirak's net profit. Such a result does not support good cause, but rather, would constitute bad faith and is unconscionable, in direct violation of M.G.L. c. 93B, § 6.

---

[1] We estimate that Mirak's AGSSA will be reduced by approximately 29% based a method very similar to GM's methods. If GM were adding those tracts, it would ideologically assume, under RSI, that Mirak's sales should increase proportionately with the AGSSA increase. However, here, we know from dozens of add point litigations that GM will likely now assert that the proposed add point would not lead to an expectation that Mirak will lose sales. GM has presented and Mirak is aware of no sound basis to expect that the add point would be anything other than materially detrimental to Mirak's sales, profitability, and investment.

**ArentFox**
**Schiff**

Natalie Taylor
April 9, 2025
Page 4

In addition to evaluating market factors and the potential impact on Mirak if the proposed franchise were allowed at the Location, Mirak also evaluated other issues that factor into Mirak's performance over the past three years. For one, Chevrolet made the decision to discontinue sales of the Chevy Bolt. At the time that occurred, Mirak had over 400 orders for which it had taken deposits. GM unilaterally cancelled those orders. As a result, Mirak's Nationwide Bolt sales dropped from a substantial 143 in 2023 to 0 in 2024. This is clearly a GM-caused issue, not a Mirak, or dealer network issue. These lost sales would be coupled with losses Mirak would feel by the addition of a franchise at the Location. Such a result is unacceptable to Mirak and a violation of M.G.L. c. 93B.

Beyond discontinuing a popular model vehicle for the RMA and unilaterally cancelling orders for same, GM's reliance on a lack of franchises in Massachusetts as grounds to put a new franchise at the Location is not credible . It was GM that took it upon itself in 2008/2009 to reduce the number of Chevrolet franchises in the state. At that time, GM insisted that a reduction in Chevrolet franchises was needed to boost throughput. During its bankruptcy proceedings, GM justified its decision to take millions of dollars in loans from the Federal government based upon promises that a more consolidated dealer network would improve profitability for the remaining dealers, thereby increasing each dealer's ability to perform more effective marketing. GM claimed that a reduction of rooftops would result in a stronger dealer network, especially in metro markets.  GM knows full well that adding another dealer into this metro market will negatively impact Mirak's new vehicle sales and its profitability.

Now, GM is attempting to rely on a lack of franchises to support adding one at the Location. GM cannot have it both ways. The simple fact of the matter is that Chevrolet, as a brand, simply has not returned to pre-2009 levels that GM targeted. This is not a Mirak issue, or dealer-level issue, and does not support the addition of a franchise at the Location.

Mirak is confident that its preliminary analysis of this issue supports its position that market conditions do not support the addition of a Chevrolet franchise at the Location. Furthermore, the addition of a Chevrolet franchise at the Location will have a material negative impact on the market size and Mirak's sales, also in violation of M.G.L. c. 93B. As such, GM does not have good cause to establish Chevrolet dealership operations at the Location, and any such establishment of a dealership thereon will be done in bad faith or will be arbitrary or unconscionable.

**Mirak hereby demands that GM withdraw its Notice dated February 27, 2025 and further confirm in writing that it will not proceed with this proposed add-point.  If GM intends to proceed with establishing Chevrolet dealership operations at the Location in spite of this protest, Mirak hereby demands a meet and confer in accordance with M.G.L. c. 93B, § 15(b) on or before April 25, 2025.**



This Protest is based upon information known and available to Mirak at this time, in light of the grounds set forth in GM's Notice. Nothing herein shall be construed to limit Mirak's ability to raise additional grounds for protest should addition information become available. Mirak reserves all rights, claims, and defenses.

We look forward to your response to this protest.

Very truly yours,

Sara D. Judge

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                                  SUPERIOR COURT DEPARTMENT
                                               CIVIL ACTION NO. 25CV131

| | |
|---|---|
| MIRAK CHEVROLET, INC., | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) |
| | ) |
| GENERAL MOTORS LLC, | ) |
| *Defendant,* | ) **RECEIVED**   5/27/25   tc |
| and | ) |
| | ) |
| MATTHEW MCGOVERN, | ) |
| *Interested Party/Defendant.* | ) |

## AFFIDAVIT OF EDWARD M. STOCKTON IN SUPPORT OF PLAINTIFF MIRAK'S MOTION FOR PRELIMINARY INJUNCTION

I, Edward M. Stockton, hereby depose and state:

1.      I am the Vice President and Director of Economic Services at The Fontana Group,

Inc. The Fontana Group provides economic consulting services and expert testimony regarding

the retail motor vehicle industry throughout the United States and Canada. I am submitting this

Affidavit in support of Plaintiff Mirak Chevrolet, Inc.'s ("Mirak's") Motion for a Preliminary

Injunction.

2.      I have been retained by Mirak and its legal counsel to analyze various market

factors relevant to GM's proposed addition of a new Chevrolet brand dealership at 34 Bear Hill

Road, Waltham, Massachusetts (hereafter, the "Add Point Location.") I have also been retained

to analyze GM's specific grounds forming its basis for the appointment as articulated in GM's

letter to Mirak dated February 27, 2025 (the "Notice Letter").

1

3. The scope of my engagement and testimony may be expanded depending on information and data later produced in this litigation. However, to date, I have performed a preliminary investigation of GM's claims that Chevrolet brand market share in the "Metro Boston Chevrolet market" (a terms utilized by GM in its Notice Letter) justifies the appointment of a new Chevrolet dealer at the Add Point Location.

4. It is my opinion that local market conditions do not reliably support the need for an additional Chevrolet franchise at the Add Point Location.

5. GM's reliance upon allegedly low Chevrolet brand market share performance in the "Metro Boston area" to justify the new add point is misplaced and the product of assumptions, not sound analysis. Much more evidence exists that the allegedly low registration effectiveness in the "Metro Boston area" is attributable to factors not under the control of the local dealer network, and therefore the low registration effectiveness does not reliably provide good cause to add a new Chevrolet franchise at the Add Point Location.

6. At trial, I expect to demonstrate that factors outside the control of the local dealership network and/or manufacturer can explain most if not all of any alleged deficient local brand performance.

7. Furthermore, my preliminary analysis indicates that the proposed add point will have a materially negative impact on the market size and sales of Mirak.

[Signature Page to Follow]

2

Signed under the pains and penalties of perjury this 27th day of May 2025.

/s/ *Edward M. Stockton*

Edward M. Stockton

- 4

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                          SUPERIOR COURT DEPARTMENT
                                        CIVIL ACTION NO. 25CV131̲

MIRAK CHEVROLET, INC.,              )        *Middlesex, ss.*          Superior Cc.
      *Plaintiff,*                  )    The within matter is set down for hearing o ˑ
                                    )    *June 18, 2025* in Courtroom
v.                                  )    *740* at *2:00*
                                    )    *Catherine Degiulimo*
GENERAL MOTORS LLC,                 )    Assistant Clerk
      *Defendant,*                  )
and                                 )    *Sisitsky*         **RECEIVED**    5/27/25      tc
                                    )
MATTHEW MCGOVERN,                   )
      *Interested Party/Defendant.* )

## PLAINTIFF MIRAK'S MOTION FOR PRELIMINARY INJUNCTION

Mirak Chevrolet, Inc., d/b/a Mirak Chevrolet (hereafter, "Mirak"), respectfully submits this Motion for Preliminary Injunction against Defendant General Motors LLC ("GM") and Interested Party/Defendant, Matthew McGovern (hereafter, "Mr. McGovern"), which seeks an Order temporarily staying the appointment of any new Chevrolet brand authorized motor vehicle dealer at 34 Bear Hill Road, Waltham, Massachusetts, (hereafter, the "Add Point Location") pending a final judgment of this matter (or agreed upon settlement / dismissal with prejudice by the parties.

Mirak is a duly authorized Chevrolet dealer which operates pursuant to its Dealer Sales and Service Agreement with Defendant GM. GM has given written notice to Mirak that it intends to appoint a new franchised Chevrolet dealer within Mirak's relevant market area. The Massachusetts dealer protection statute expressly allows Mirak to protest this new appointment. In addition, the statute allows this Court to issue an injunction to temporarily stay the appointment until trial of a protest action may be heard on the merits. M.G.L. c. 93B, §§ 6(a) and 15(a).

1